UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
SUFFERN PARTNERS LLC,

                            Plaintiff,

    -against-

OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY, GILBERT BACKENROTH, STEPHEN
GRABLE, HAHN & HESSEN LLP, and ISAAC
LEFKOWITZ,

                          Defendants.
--------------------------------------------------------------------X
OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY,

                   Third-Party Plaintiff,

     -against-

THOMAS LANDRIGAN and COHEN, LABARBERA &
LANDRIGAN, LLP,

               Third-Party Defendants.
--------------------------------------------------------------------X

Civil Action No. 20-cv-08905-CS

**AFFIRMATION IN SUPPORT OF
OLD REPUBLIC NATIONAL
TITLE INSURANCE COMPANY'S
RENEWED MOTION FOR A
PRELIMINARY INJUNCTION**

        David K. Fiveson, an attorney admitted before the Courts of the State of New York

and this Court, affirms under the penalties of perjury, as follows:

        1.     I am a member of the Bar of this Court and a principal of the firm Butler,

Fitzgerald, Fiveson & McCarthy, P.C., attorneys for defendant Old Republic National Title

Insurance Company ("ORNTIC").  I have knowledge of the facts stated herein.  I make this

affirmation in support of ORNTIC's renewed motion for a preliminary injunction prohibiting and

restraining plaintiff, Suffern Partners LLC ("Suffern")'s transferring, dissipation, hypothecation,

secreting, disbursement or encumbrance of $1,484,483.86 previously deposited by ORNTIC in

escrow to resolve a title dispute on behalf of Suffern by ORNTIC, and representing a partial refund

of such monies, but paid to Suffern because of the wrongful acts of co-defendants Hahn & Hessen LLP, Gilbert Backenroth, and Stephen Grable as ORNTIC's escrow agents of such funds.[1]

2.       ORNTIC's renewed motion should be granted in all respects.  There is no dispute the $1,484,483.86 is a partial refund of ORNTIC's monies previously held in escrow, that the monies were paid to Suffern in breach of the escrow agreement with defendants Hahn & Hessen, Gilbert Backenroth and Stephen Grable both as escrow agents and as counsel for Suffern, and that Suffern had actual or at least constructive notice of said breach, and was wrongfully withholding the monies subject to its alleged right to "offset" potential claims of Suffern against ORNTIC but is claiming, as of December 28, 2020, title to the monies.  Further, Suffern is insolvent.  There is a $150,000 judgment docketed against Suffern.  Suffern is a straw company that had been used by undisclosed principals to perpetrate multiple frauds which underlie the claims and counterclaims.  It's currently disclosed contact person is co-defendant, Isaac Lefkowitz, as its CEO.  The current sole member of Suffern is a corporation.  The principals of Suffern and of its member corporation are still undisclosed.  Both Suffern and Isaac Lefkowitz are defendants in multiple actions to collect monies owed for goods and services rendered.  Since ORNTIC has equitable title to the $1,484,483.86, Suffern received the monies in breach of a confidential relation with its attorneys, and Suffern would be unjustly enriched by its continued retention of the monies, a preliminary injunction is appropriate exercise of the Court's equity jurisdiction to thwart Suffern from making a judgment uncollectable and to assist in an equitable remedy on ORNTIC's constructive trust claim.

---

[1] Pursuant to docket minute entry dated January 11, 2021, ORNTIC was granted leave to amend its answer with cross-claims by February 12, 2021 and to renew its motion for a preliminary injunction by March 5, 2021.

**BACKGROUND FACTS**

3.      On or about November 28, 2016, RS Old Mill, LLC ("Old Mill") contracted to purchase from Novartis Corporation ("Novartis") for $18 million, three parcels of property situated in the County of Rockland and State of New York: (1) 25 Old Mill Road, Suffern, NY 10901 (Section: 55.22, Block: 1, Lot: 1); (2) 19 Hemion Road, Montebello, NY 10901 (Section: 55.06, Block: 1, Lot: 1); and (3) Route 59 Suffern, NY 10901(Section: 55.37, Block: 1, Lot: 31) ("Premises").  Old Mill deposited $2.5 million to bind the contract with Novartis.

4.      On or about February 13, 2017, Old Mill filed for Chapter 11 Bankruptcy Protection in the United States Bankruptcy Court for the Southern District of New York, In re: RS OLD MILL, LLC, Case No. 17-22218-RDD.  On or about June 2, 2017, the Bankruptcy Court approved Old Mill's purchase of the Premises from Novartis for $18 million.  Annexed hereto as **Exhibit A** is a true and correct copy of the Order Directing Assumption or Rejection of the Agreement of Sale filed on June 2, 2017 as CM/ECF 38, In re: RS OLD MILL, LLC, Case No. 17-22218.

5.      On or about September 6, 2017, in a collapsed transaction Novartis conveyed the Premises to Old Mill for $18 million dollars, Old Mill conveyed the Premises to RS Old Mills Rd, LLC ("RD") for no consideration and RD conveyed the Premises to Suffern for stated consideration of $30 million.[2]  Old Mill and RD are sometimes referred to as the "Sellers."  Old Mill did not seek or obtain Bankruptcy Court approval for its conveyance of the Premises to RD prior to the transfer.  See Filippelli Dec., ¶ 7.

---

[2] Annexed hereto as **Exhibit B** is a true and correct copy of the September 1, 2017 deed conveying the Premises from Novartis to Old Mill for $18 million.

Annexed hereto as **Exhibit C** is a true and correct copy of the September 5, 2017 bargain and sale deed with covenant against grantor's acts, conveying the Premises from Old Mill to RD, for no consideration.

Annexed hereto as **Exhibit D** is a true and correct copy of the September 5, 2017 bargain and sale deed with covenant against grantor's acts, conveying the Premises from RD to Suffern, for $30 million.

6.      The sole member of Old Mill is Yehuda Salamon.  The principal of RD is Avrohom Kaufman.  Yehuda Salamon is the brother-in-law of Avrohom Kaufman.

7.      The sale from RD to Suffern was financed with a $33 million loan from CPIF Lending LLC ("CPIF").  As one condition to CPIF financing the purchase by Suffern, CPIF required Suffern to have $12.5 million in capital on deposit.  See **Exhibit E** (transcript May 19, 2020), p. 13, lines 15-21.[3] On September 5, 2017, Suffern borrowed $12.5 million from Treff & Lowy, PLLC ("Treff & Lowy"), to satisfy the condition of CPIF to finance the purchase.  See **Exhibit F**, p. 107 (Fleischmann dep transcript).[4]

8.      The sale of the Premises to Suffern, and Suffern's financing with CPIF, closed on September 6, 2017. Annexed hereto as **Exhibit G** is a true and correct copy of David Fleischmann's closing statement for the September 2017 conveyances. Annexed hereto as **Exhibit H** is a true and correct copy of the HUD-1 for the September 2017 conveyances, signed by Goldie Reisman as member of Suffern.

9.      Prior to and at the September 6, 2017 closing, upon information and belief, Suffern knew Old Mill had not obtained Bankruptcy Court approval of the conveyance of the Premises by Old Mill to RD.

10.      Old Mill and RD were represented by third-party defendant, Thomas Landrigan, Esq. ("Landrigan") at the closing.  See **Exhibit I** annexed hereto, a true and correct copy of the Declaration of Thomas C. Landrigan filed on June 19, 2019 as CM/ECF 111 in In re: RS OLD MILL, LLC, Case No. 17-22218.

---

[3] Annexed hereto as **Exhibit E** is a true and correct copy of the transcript of the May 19, 2020 argument in file in the action RS Old Mills Rd, LLC v. Suffern Partners, LLC under Index No. 031809/2020 in the Supreme Court of the State of New York, Rockland County.

[4] Annexed hereto as **Exhibit F** is a true and correct copy of the transcript of the deposition testimony of David Fleischmann, Esq. dated July 15, 2019.

11.     Riverside Abstract acted as settlement agent at the closing.  Riverside Abstract was paid $10,000 to act as settlement agent separate and apart from any premium received to issue a title policy.

12.     As consideration for its conveyance of the Premises to Old Mill, $15,940,324.51 of loan proceeds were transmitted by Riverside Abstract to Commonwealth Land Title Insurance Company ("Commonwealth") as agent for Novartis. See **Exhibit G** (Fleischmann's closing statement); **Exhibit H** (HUD-1).  The $15,940,324.51 payment to Commonwealth was reported on the closing statement.  See **Exhibit G** (Fleischmann's closing statement). Loan proceeds in the amount of $13,763,840.88 were transmitted by Riverside Abstract to Landrigan, as counsel and escrow agent for the Sellers.  See **Exhibit I** (Landrigan declaration).  See also **Exhibit J**, a true and correct copy of David Fleischmann's September 6, 2017 wire instructions to Landrigan. The $13,763,840.88 payment to Landrigan was reported on the closing statement.  See **Exhibit G** (Fleischmann's closing statement).  The transfers were further authorized by Suffern's (then) member Goldie Reisman signing the HUD-1 at the closing. See **Exhibit H** (HUD-1). Upon authorizing these transfers set forth on the HUD-1, Suffern released ORNTIC and agreed to hold ORNTIC harmless from all claims and causes of action relative to the accuracy of the transfers.  See **Exhibit H** (HUD-1).  See also ¶¶ 30-31, *infra*.

13.     On September 6, 2017, ORNTIC through its limited policy-issuing title agent Riverside Abstract, issued owner's title policy no. OX-11894013 (the "Policy") insuring Suffern's fee interest in the Premises in the amount of $30,000,000 subject to the exceptions, conditions and exclusions in the Policy.  See Filippelli Dec. ¶ 6, **Exhibit B** (Policy).

14.     After the closing and unbeknownst to ORNTIC, Suffern provided wire instructions for Landrigan to divert payment of $12.5 million in loan proceeds received in his account for the Sellers, to Treff & Lowy, to satisfy Suffern's loan from Treff & Lowy, as opposed

to paying the Sellers these monies as consideration for the sale to Suffern.  See **Exhibit J** (Fleischmann's wire instructions);[5] **Exhibit F** (Fleischmann dep trans).  Landrigan complied with Suffern's directive and paid $12.5 million in loan proceeds to Treff & Lowy in satisfaction of its obligation to Treff & Lowy.  See **Exhibit I** (Landrigan declaration). See also ¶ 34, *infra*).

### SUFFERN'S FIRST TITLE CLAIM SUBMITTED TO ORNTIC UNDER THE POLICY AND THE RESOLUTION THEREOF

15.     On March 29, 2019, Old Mill commenced an adversary proceeding in the United States Bankruptcy Court for the Southern District of New York, Docket No. 19-08243-RDD by filing an adversary complaint seeking to vacate the September 6, 2017 no-consideration deed from itself (Old Mill) to RD, on the basis Old Mill (the debtor) had never obtained Bankruptcy Court approval of the transfer ("Adversary Proceeding").  Annexed hereto as **Exhibit K** is a true and correct copy of the Adversary Complaint.  ORNTIC was not a party in the adversary proceeding.

16.     Suffern submitted a title claim under the Policy based on the claims set forth in the Adversary Proceeding.  Pursuant to its obligations under the Policy, ORNTIC retained Hahn & Hessen LLP to represent Suffern to defend the challenge to the insured title in the Adversary Proceeding.

17.     Old Mill's Chapter 11 case was converted to a Chapter 7 pursuant to the Order filed on June 5, 2019 as CM/ECF 102 in In re: RS OLD MILL, LLC, Case No. 17-22218, a true and correct copy of which is annexed hereto as **Exhibit L**.

18.     On August 19, 2019, a settlement agreement between Suffern and the Chapter 7 Trustee ("Settlement Agreement") was signed subject to the Bankruptcy Court approval, authorizing the September 6, 2017 transfer of the Premises from Old Mill (the debtor) to RD nunc

---

[5] Annexed hereto as **Exhibit J**, a true and correct copy of David Fleischmann's September 6, 2017 wire instructions to Landrigan.

pro tunc, in exchange for the deposit of $2.5 million into a claim fund with the Chapter 7 Trustee

to satisfy all approved claims and allowed administrative expenses of Old Mill's bankruptcy estate

("Claim Fund").  ORNTIC was not a party to the Settlement Agreement which was between the

Chapter 7 Trustee and Suffern only.

19.     The Settlement Agreement also provided that the Claim Fund was to be

deposited in a segregated account maintained by the Trustee and that any portion of the Claim

Fund not expended to satisfy allowed claims and expenses would be refunded to Suffern **c/o Hahn**

**& Hessen LLP** ("Claim Refund").  <u>See</u> **Exhibit M** (Order approving settlement).[6]

20.     As verified in the annexed declaration of Maria Filippelli of ORNTIC, on

August 15, 2019, **prior** to the signing of the August 19, 2019 Settlement Agreement, ORNTIC

agreed to deposit $2 million and Suffern agreed to deposit $500,000 into the Claim Fund.  <u>See</u>

Filippelli Dec. ¶¶ 9-10.  These monies were deposited to resolve Suffern's title claim presented by

Old Mill's failure to get bankruptcy court approval for its transfer to Rd (which in turn transferred

to Suffern).  Ms. Filippelli declares it was agreed the $2 million would be wired into the Iola

account of Hahn & Hessen and that Defendants, Gilbert Backenroth and Stephen Grable both as

escrow agents of the $2 million and as counsel representing Suffern, represented and agreed with

Maria Filippelli of ORNTIC on August 15, 2019 that ORNTIC would be paid its portion of the

Claim Refund.  Defendants, Gilbert Backenroth and Stephen Grable are both members of

defendant, Hahn & Hessen, LLP.  <u>See</u> Filippelli Dec. ¶ 9.

21.     Annexed as **Exhibit N** is Hahn & Hessen's itemized statement for services

rendered Suffern in August 2019 submitted to ORNTIC.  The August 16, 2019 entry records .6

hours for teleconferences with and e-mails to Maria Filippelli and the Hahn & Hessen accounting

---

[6] Annexed hereto as **Exhibit M** is a true and correct copy of the Order Approving Settlement and Sale of the
Properties in Accordance with the Stipulation of Settlement filed on January 14, 2020 as CM/ECF 253, In re: RS
OLD MILL, LLC, Case No. 17-22218.

department re: "consideration of receipt of $2MM from Old Republic and next steps for finalizing settlement with Trustee".

22.     Mr. Grable provided Ms. Filippelli wire instructions to the Iola account for Hahn & Hessan on August 16, 2019.  In reliance on Gilbert Backenroth's and Stephen Grable's agreement and representation as escrow agents and as counsel for Suffern, on August 16, 2019 ORNTIC wired $2 million to Hahn & Hessen's Iola account.  See Filippelli Dec. ¶¶ 9-10, **Exhibit C** (wire to HH). Gilbert Backenroth, Stephen Grable, and Hahn & Hessen, LLP received as escrow agents, ORNTIC's $2 million which was, in turn, paid into the Claim Fund with Suffern's $500,000 contribution.  See Filippelli Dec. ¶¶ 11-12.

23.     Messrs. Backenroth and Grable have denied any agreement with Ms. Filippelli to repay ORNTIC its portion of the Claim Refund.  It is difficult to believe they spoke with Ms. Filippelli for up to 36 minutes on August 19, 2019 and this issue was not addressed or, conversely, if they did not agree to pay ORNTIC its Claim Refund, that ORNTIC would wire $2 million to an Iola account nonetheless and make a gift to its insured Suffern of its portion of the Claim Refund.

24.     The implementation of the Settlement Agreement resolved Suffern's title claim under the Policy.

### THE CHAPTER 7 TRUSTEE REFUSES TO ISSUE THE CLAIM REFUND CHECK PAYABLE TO HAHN & HESSEN'S IOLA ACCOUNT

25.     In or about early August 2020, the parties learned the Chapter 7 Trustee was to issue a Claim Refund by check payable to Suffern and deliver the check to Hahn & Hessen.

26.     In anticipation of receipt of the Claim Refund, on August 21, 2020, Gilbert Backenroth provided ORNTIC with a draft escrow agreement which acknowledged ORNTIC and Suffern each retained the right to the refund of the amounts each paid to the Claim Fund.  A copy

of the recitals to the draft agreement is annexed as **Exhibit O**.  This recital in paragraph I confirms the agreement reached with Ms. Filippelli on August 15 and 16, 2019.[7]

27.     After efforts to agree to escrow terms could not be concluded, upon information and belief, on or about August 26, 2020, Messrs. Grable and Backenroth requested counsel for the Chapter 7 Trustee Holly Holecek, Esq., to cause the Claim Refund check be issued to the Iola account of Hahn & Hessen and not to Suffern.  I believe this to be true because I had teleconferences with Messrs. Backenroth and Grable where they conceded they requested the trustee issue the Claim Refund to the Iola account, and she refused.  I also spoke with counsel for the Trustee on August 27, 2020 who stated she advised Messrs. Backenroth and Grable she would not issue the Claim Refund to Hahn & Hessen's Iola account.

28.     If, in fact, Hahn & Hessen did not act as escrow agents for the $2 million and there was no agreement to repay ORNTIC, there would be no reason for Messrs. Backenroth and Grable to request the check be issued to their Iola and not to Suffern.  Furthermore, after Ms. Holocek refused to issue the Claim Refund to Iola, Messrs. Backenroth and Grable and I discussed whether their bank could accept for deposit into the Iola account the Claim Refund check double endorsed by Suffern and then Hahn & Hessen.  See **Exhibit P** for e-mail dated August 26, 2020 with Messrs. Backenroth and Grable referencing this inquiry.

29.     In September 2020, the Chapter 7 Trustee delivered to Gilbert Backenroth and Stephen Grable a check payable to Suffern in the amount of $1,984,483.86 representing the Claim Refund ("Claim Refund Check").  See Filippelli Dec. ¶ 9. $1,484,483.86 of said monies represents a partial refund of ORNTIC's $2 million previously deposited into escrow with Hahn

---

[7] The terms of the proposed escrow agreement are redacted.  The terms of the escrow agreement were not agreed upon.

& Hessen LLP on the agreement and representation that ORNTIC be re-paid its portion of the Claim Refund.[8]

30.     Over the objection of ORNTIC, Gilbert Backenroth and Stephen Grable delivered the Claim Refund Check to Suffern, which deposited the Claim Refund Check into its account.  See Filippelli Dec. ¶ 12.  Suffern received the Claim Refund check with actual or, at least, imputed notice of the agreement of Messrs. Grable and Backenroth as escrow agents and as counsel for Suffern to pay ORNTIC its portion of the Claim Refund.

31.     Defendant Isaac Lefkowitz is the CEO of Suffern.  Suffern has refused to pay ORNTIC its $1,484,483.86, which represents ORNTIC's portion of the Claim Refund.  See Filippelli Dec. ¶12, **Exhibit D** (email from Lefkowitz).  Defendant, Isaac Lefkowitz stated in an e-mail dated October 6, 2020, as follows:

> We received the surplus funds from the trustee as per the settlement agreement Suffern executed with the trustee.  **We undertake to refund to Old Republic any monies due to them once we are certain that we have no other claims against Old Republic,** however, if you wish to fly off the handle and not give us that chance but to start litigation sooner, then we might as well litigate on all the open matters we have with Old Republic and Riverside Abstract.[9]

(Emphasis added).

### THE RS OLD MILLS RD STATE ACTION UNDERLYING SUFFERN'S SECOND CLAIM AGAINST ORNTIC UNDER THE POLICY

32.     On April 14, 2020 (prior to the issuance of the Claim Refund in September 2020), RD commenced an action against Suffern in the Supreme Court, County of Rockland under

---

[8] There is no dispute the amount of $1,484,483.86 is ORNTIC's portion of the Claim Refund, because this amount accounts for a 100% refund to Suffern of the $500,000 it deposited into the Claim Fund.

[9] Suffern has no right, as a matter of law, to offset unliquidated claims against ORNTIC against the $1,484,483.86. See the accompanying memorandum of law.

Index No. 031809/2020 ("RS Old Mills Rd State Action").[10]  In the RS Old Mills Rd State Action,

RD alleges that Suffern did not pay consideration for the September 6, 2017 deed conveying the

Premises.  See **Exhibit Q** (Complaint in RS Old Mills Rd State Action). The pertinent allegations

in the RS Old Mills Rd State Action are as follows:

> 5.   On or about September 6, 2017, Plaintiff entered into a written contract of sale with Defendant whereby Defendant agreed to purchase from Plaintiff the developed real property situated in Villages of Suffern, New York and Montebello, New York, comprised of three parcels described as follows: (i) Parcel A – three plots of land; (ii) Parcel B – four plots of land; and (iii) Parcel C – two plots of land, having the addresses of 25 Old Mill Road, in the Town of Ramapo, Village of Suffern and 19 Hemion Road in the Village of Montebello (collectively hereinafter referred to as the "RS Old Mill Road Property").
>
> 6.   The purchase price of the property was Thirty Million Dollars ($30,000,000).
>
> 7.   Despite the passage of nearly three years, Defendant has never paid Plaintiff a single penny of this purchase price.
>
> 8.   Instead, Defendant has taken possession, ownership and control of the Plaintiff's property, without granting any consideration for the conveyance of this property.
>
> 9.   Plaintiff therefore brings this action seeking recovery of its property.
>
> *       *       *
>
> 16.  As set forth above, Plaintiff agreed to sell the RS Old Mill Road Property to the Defendant for Thirty Million Dollars ($30,000,000).
>
> 17.  Defendant has not paid any of the purchase price to the Plaintiff, instead taking over possession of the Plaintiff's property without giving a dollar in return.
>
> 18.  Defendant's failure to pay the any part of the $30,000,000 purchase price to Plaintiff, while maintaining control over the Plaintiff's property was both material and willful.

---

[10] Annexed hereto as **Exhibit Q** is a true and correct copy of the commencement documents filed on April 14, 2020 in the RS Old Mills Rd State Action.

19.   Plaintiff has received no other benefit from Defendant in exchange for the Plaintiff's property.

*     *     *

23.  Plaintiff obtained ownership of these properties on September 5, 2017 as the result of a deed transfer of these properties to Plaintiff from an entity named RS Old Mill, LLC.

24.  As set forth above, Plaintiff agreed to sell the RS Old Mill Road Property to the Defendant for Thirty Million Dollars ($30,000,000).

25.  Defendant has not paid any of the purchase price to the Plaintiff, instead taking over possession of the Plaintiff's property without giving a dollar in return.

26.  Despite not paying a dollar of the agreed purchase price, Defendant claims that it is now the owner of the RS Old Mill Road property.

*     *     *

30.  Defendant breached this agreement, by failing to pay a single dollar of this purchase price.

See **Exhibit Q**.

33.      The first cause of action claims Suffern converted the Premises.  The second cause of action seeks to rescind the September 6, 2017 deed from RD to Suffern.  The third cause of action seeks to quiet title in RD.  The fourth cause of action seeks damages against Suffern for breach of contract. Id.

34.      RD also filed a lis pendens against the Premises in connection with the RS Old Mills Rd State Action.

### SUFFERN'S SECOND TITLE CLAIM UNDER THE POLICY

35.      On April 20, 2020, Suffern submitted to ORNTIC a claim for ORNTIC to defend Suffern against the allegations in the RS Old Mills Rd State Action.  See Filippelli Dec., ¶ 14. ORNTIC disclaimed any obligation to defend or indemnify Suffern against the title claims asserted in the second and third causes of action in RS Old Mills Rd State Action based on Policy

Exclusions 3(a) and (e).  See Filippelli Dec., ¶ 14, **Exhibit E** (ORNTIC disclaimer of coverage).

ORNTIC disclaimed coverage of the conversion claim (first cause of action) and the breach of

contract claim (fourth cause of action) on the basis these claims did not fall within the covered

risks insured under the Policy.  See Filippelli Dec., ¶ 14, **Exhibit E**

### THE PERTINENT POLICY PROVISIONS

36.     The Policy provides, in pertinent part, as follows:

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE
EXCEPTIONS FROM COVERAGE CONTAINED IN
SCHEDULE B, AND THE CONDITIONS, OLD REPUBLIC
NATIONAL TITLE INSURANCE COMPANY, a Florida
corporation (the "Company") insures, as of Date of Policy and, to
the extent stated in Covered Risks 9 and 10, after Date of Policy,
against loss or damage, not exceeding the Amount of Insurance,
sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.

2.  Any defect in or lien or encumbrance on the Title.  This
Covered Risk includes but is not limited to insurance against loss
from:

(a) A defect in the Title caused by

(i) forgery, fraud, undue influence, duress, incompetency,
incapacity, or impersonation;

(ii) failure of any person or Entity to have authorized a
transfer or conveyance;

(iii) a document affecting Title not properly created,
executed, witnessed, sealed, acknowledged, notarized, or
delivered;

(iv) failure to perform those acts necessary to create a
document by electronic means authorized by law;

(v) a document executed under a falsified, expired, or
otherwise invalid power of attorney;

(vi) a document not properly filed, recorded, or indexed in
the Public Records including failure to perform those acts by
electronic means authorized by law; or

(vii) a defective judicial or administrative proceeding.

\*       \*       \*

3.  Unmarketable Title.

\*       \*       \*

## EXCLUSIONS FROM COVERAGE

**The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:**

\*       \*       \*

**3.  Defects, liens, encumbrances, adverse claims, or other matters**

**(a) created, suffered, assumed, or agreed to by the Insured Claimant;**

\*       \*       \*

**(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.**

(Emphasis added).[11]

37.     Suffern moved to dismiss the RS Old Mills State Action and vacate the lis pendens.  That motion was denied on August 20, 2020.

### SUFFERN'S CLAIMS AGAINST ORNTIC AND ORNTIC'S COUNTERCLAIMS IN THIS ACTION

38.     Suffern commenced this action on October 23, 2020.[12]  Suffern's claims arise out of ORNTIC's disclaimer of coverage under the Policy for the RS Old Mills Rd State Action and for an alleged breach of the Escrow Agreement and negligence.  The first cause of action seeks $2,000,000 for the cost of defending the RS Old Mills Rd State Action.

---

[11] See Filippelli Dec. ¶ 6, **Exhibit B** (Policy).

[12] A true and correct copy of the complaint filed on October 23, 2020 as CM/ECF 1 is annexed hereto as **Exhibit R**.

39.     The Second Cause of Action claims ORNTIC breached the Policy by failing to provide plaintiff a defense to the RS Old Mills Rd State Action.

40.     The Third Cause of Action claims Suffern and ORNTIC entered into the Escrow Agreement through the title agent Riverside and that ORNTIC breached the Escrow Agreement. [13]

41.     The Fourth Cause of Action seeks consequential damages for breach of the Policy, and the Escrow Agreement, and based on negligence.

42.     ORNTIC filed a Second Amended Answer with Counterclaims and Cross-claims on February 5, 2021 as CM/ECF 57, a true and correct copy of which is annexed hereto as **Exhibit S**.  The second counterclaim seeks the declaration that Suffern holds the $1,484,483.86 as a constructive trustee for ORNTIC and should be directed to pay the monies to ORNTIC.  The third counterclaim seeks an order directing Suffern to deposit the $1,484,483.86 with the Court or an escrow agent pending further order of the Court.

43.     A true and correct copy of Suffern's Amended Answer with Defenses to Counterclaims filed on February 26, 2021 as CM/ECF (64) is annexed hereto as **Exhibit T**.

**SUFFERN RELEASED AND AGREED TO HOLD ORNTIC
HARMLESS FROM ALL CLAIMS OR CAUSES OF ACTION
RELATIVE TO THE $13,763,840.88 WIRED TO LANDRIGAN
AND DISCLOSED ON THE CLOSING STATEMENT**

44.     The closing statement identified Landrigan as counsel for the Sellers.  See **Exhibit G** (Fleischmann's closing statement).  The closing statement also reported $13,763,840.88

---

[13] Riverside Abstract is a limited policy-issuing title agent of ORNTIC and had no authority under its agency agreement to act as the settlement agent for the sale proceeds paid to Old Mill and RD by wire to their counsel, Landrigan.  A copy of the agency agreement is annexed as **Exhibit A** to the Filippelli Dec.  Indeed, based on Riverside Abstract's invoice (see **Exhibit G**) it was paid $10,000 at closing as a "settlement fee," which suggests Riverside was retained independently to act as the settlement agent, in addition to Riverside Abstract acting as title agent for ORNTIC.  Stephen Grable twice represented in the RS Old Mills Rd State Action that Riverside Abstract acted as **the Lender's** escrow agent.  See **Exhibit E**, p. 13, 46.

being disbursed to Landrigan's law firm, defendant Cohen, Labarbera & Landrigan, LLP.  Goldie

Reisman, as member of Suffern, signed the HUD-1 on behalf of Suffern, and agreed as follows:

> . . . Seller and Purchaser hereby approve the settlement statement
> and authorize disbursement of funds accordingly.  In the event that
> the figures included herein are in error and/or do not reflect the terms
> of the Purchase Agreement between Seller and Purchaser then the
> parties agree that adjustments, including but not limited to additional
> funds paid or reimbursed as appropriate, will be made post-closing.
> **Seller and Purchaser hereby release and agree to hold Riverside
> Abstract, LLC and Old Republic National Title Insurance
> Company harmless from any and all claims or causes of action
> relative to the accuracy of the closing figures.**

(Emphasis added).  <u>See</u> **Exhibit H** (HUD-1).

**RD'S CLAIM THAT IT WAS NOT PAID FOR THE
SEPTEMBER 6, 2017 DEED TO SUFFERN ARISES OUT OF
<u>SUFFERN'S FRAUD UPON ITS LENDER, CPIF</u>**

45.     David Fleischmann was deposed by Suffern on July 15, 2019, in the

Adversary Proceeding.  <u>See</u> **Exhibit F** (Fleischmann dep trans).  Mr. Fleischmann represented

Suffern and Goldie Reisman at the September 6, 2017 closing.[14]  <u>See</u> **Exhibit F**, p. 17, 20, 24).

Mr. Fleischmann testified there was $12,500,000 in "equity" received by the Seller (**Exhibit F**, p.

41, 107), which amount is reported on the closing statement.  <u>See</u> **Exhibit G** (Fleischmann closing

statement).  He testified the loan amount from CPIF was $33 million.  (<u>See</u> **Exhibit F**, p. 42).  Mr.

Fleischmann stated $15,940,000 in CPIF loan proceeds was paid to Commonwealth as agent for

Novartis, and $13,763,840.68 in CPIF loan proceeds was paid to Landrigan, who represented the

Seller. <u>See</u> **Exhibit F**, p. 29, 53).

46.     Stephen Grable represents Suffern in the RS Old Mills Rd State Action.  At

a May 19, 2020 oral argument in the RS Old Mills Rd State Action, Stephen Grable represented

to that Court, that in order for CPIF to fund its loan (which required Suffern to satisfy CPIF's "paid

---

[14] He also represented Suffern's undisclosed principal, Isaac Genuth.  <u>See</u> ¶ 34, *infra*.

in capital" requirements ), a second unsecured loan of $12.5 million  was obtained by Suffern.  See

**Exhibit E**, p. 13 (May 19, 2020 hearing transcripts). Stephen Grable stated to the Court, as follows:

> There's an **additional** $12.5 million that comes into this transaction, and that is borrowed and immediately repaid.  It's literally a **round-robin** that comes in on September 5, 2017, and **that was to satisfy a requirement of CPIF Lending, that it showed that there was additional monies available.  It came in and it went immediately out.**

(Emphasis added).  See **Exhibit E**, p. 13.

47.    David Fleischmann authenticated his September 6, 2017 email (**Exhibit J**),

where he (as counsel for Suffern) provided wire instructions to Landrigan, after the closing, which

instructed Landrigan to wire $12,500,000 of the $13,763.840.68 in CPIF loan proceeds (previously

paid Landrigan), to Treff & Lowy.  See **Exhibit F** (Fleischmann deposition transcript); **Exhibit J**

(Fleischmann wire instructions to Landrigan). Essentially, Suffern provided the wire instructions

for Landrigan to divert the loan proceeds to pay Suffern's creditor, Treff & Lowy, instead of paying

the Sellers for the conveyance of the Premises to Suffern.[15]

48.    In an October 14, 2019 colloquy between the Honorable Robert D. Drain of

the United States Bankruptcy Court for the Southern District of New York and the Chapter 7

trustee in Old Mill's underlying bankruptcy,[16] that Court characterized this "round-robin" as a

fraud committed by Suffern on its lender, CPIF, as follows:

> MR. LAMONICA: From what we've been told, Your Honor, the lender would not close the transaction if it didn't have additional collateral posted and this equity show.
>
> THE COURT: I understand that, but that's a loan to Suffern.

---

[15] The September 6, 2017 e-mails (**Exhibit J**) are between David Fleischmann, Thomas Landrigan, Mark Yunger, and Suffern's undisclosed principal (Isaac Genuth), wherein Isaac Genuth approved the wire instructions directing Landrigan to wire $12,500,000 of the $13,763.840.68 in CPIF loan proceeds (previously paid Landrigan), to Treff & Lowy.  As explained herein, it is believed Mr. Genuth is one principal of Suffern.

[16] Annexed hereto as **Exhibit U** is a true and correct copy of the transcript of the October 14, 2019 argument held in In re: RS Old Mill, LLC, Docket No. 17-22218-RDD.

*     *     *

MS. O'TOOLE: Your Honor, if I may?  The lender wouldn't loan to the debtor –

THE COURT: Right.

*     *     *

MS. O'TOOLE: . . . The lender was making a thirty-million-dollar loan.  It required that there be a show of equity. . . .

And so, what happened is there's a transaction for a short period of time where money is borrowed from a party, about $12.5 million, and then returned to that party in a matter of three to five days or a week.

THE COURT: So, the equity show is just a complete sham?

MS. O'TOOLE: If anything, it's a fraud on the lender.

THE COURT: Right.

See **Exhibit U**, p. 16, line 16.

**SUFFERN HAS AND IS OPERATING BEHIND STRAW
PRINCIPALS TO DEFRAUD, AND IS INSOLVENT**

49.    Goldie Reisman was Suffern's member who signed the September 6, 2017, $33 million mortgage, as president of RSOM Corp. ("RSOM").  Suffern's managing member on September 6, 2017 was RSOM.  RSOM was also the holder of a 1% interest in Suffern.  Goldie Reisman was the holder of a 99% membership interest in Suffern.

50.    In the action commenced by CPIF in the New York County Supreme Court, Index No. 653568/2019 against Goldie Reisman on CPIF's promissory note,  Goldie Reisman filed an affidavit on October 20, 2019 as NYSCEF 25, a true and correct copy of which is annexed hereto as **Exhibit V**.  In this affidavit, Goldie Reisman verified that persons named Isaac Genuth and Mark Yunger requested she act as the "face" for RSOM and Suffern.  See **Exhibit V**, ¶ 8.  She verifies she had no control over these entities.  See **Exhibit V**, ¶¶ 10, 13, 17.  She claims she signed the loan documents on the promises of Genuth and Yunger that she would be relieved of liability

18

in 90 days.  See **Exhibit V**, ¶¶ 11.  She claimed her signatures on a forbearance agreement relating to the note was forged.  See **Exhibit V**, ¶¶ 14.  She claimed Suffern's closing lawyer David Fleischmann took instructions from Genuth and Yunger. See **Exhibit V**, ¶ 17.[17]

51.    Goldie Reisman is the sole guarantor of the $33 million CPIF mortgage. Annexed hereto as **Exhibit W** is a true and correct copy of the September 6, 2017 Guaranty Agreement executed by Goldie Reisman as "Guarantor" of the $33 million loan from CPIF to Suffern.

52.    On March 25, 2019, RSOM and Goldie Reisman assigned their membership interests in Suffern to GoldmanRx, Inc., a New York Corporation, for $500,000.  A true and correct copy of the Assignment of Membership Interest signed by Goldie Reisman is annexed hereto as **Exhibit X**. Isaac Lefkowitz signed the Assignment of Membership Interest as president of GoldmanRx, Inc.  See **Exhibit X**.

53.    Suffern was organized on August 9, 2017 and designated GoldmanRx, Inc. as its agent for service of process.  Annexed hereto as Exhibit W is a true and correct copy of the NYS Department of State Division of Corporations, Entities Information, for Suffern. However, GoldmanRx, Inc. was not organized until August 22, 2017.  See **Exhibit Y** annexed hereto, a true and correct copy of the NYS Department of State Division of Corporations, Entities Information, for GoldmanRx, Inc.  Moreover, Suffern and GoldmanRx, Inc. maintain offices at the same address 1449 57th Street, Brooklyn, New York 11219.  See **Exhibit Z**;[18] **Exhibit Y**. The shareholders or principals of GoldmanRx, Inc. are unknown to counsel.  It is likely Genuth and Yunger are the

---

[17] David Fleischmann conceded at his deposition that he represented Genuth to the extent Genuth was involved with Goldie Reisman's side of the transaction.  See **Exhibit F** (Fleischmann dep trans), p. 89, 90, 93, 101).  Messrs. Genuth and Yunger also approved the emails with wire instructions to Landrigan, therein directing Landrigan's payment of the $12,500,000 in CPIF loan proceeds to Treff & Lowy, as opposed to payment to the Seller (RD).  See **Exhibit J** (wire instructions).

[18] Annexed hereto as **Exhibit Z** is a true and correct copy of the NYS Department of State Division of Corporations, Entities Information, for Suffern Partners, LLC.

principals of GoldmanRx, Inc., just operating under different straw company.  Isaac Lefkowitz is

the only contact person disclosed for Suffern and GoldmanRx, Inc.  Isaac Lefkowitz claims to be

the CEO of Suffern. He does not claim to be a member or manager of Suffern as a shareholder of

GoldmanRx.

54.     Goldie Reisman remains the only person that guaranteed the $33 million

note to CPIF Lending.  See **Exhibit W** (Goldie Reisman/CPIF Guaranty Agreement).  Isaac

Lefkowitz, the President of GoldmanRx, did not guaranty the $33 million note to CPIF. Id.

55.     Upon information and belief, Suffern is in default on its payments on its $33

million mortgage to CPIF.  Upon information and belief, Suffern is delinquent in the payment of

the Premises' property taxes in the amount of $2,210,380.39.  See **Exhibit AA**.  Also, a judgment

in the amount of $150,000 had been docketed against Suffern on June 18, 2019.  See **Exhibit BB**.

56.     Upon information and belief, Suffern is insolvent.  Isaac Lefkowitz verified

on April 19, 2019 to Judge Drain that Suffern's carrying costs for the Premises on the CPIF loan,

utilities, taxes and other costs exceed $1 million per month.  See **Exhibit CC**, a true and correct

copy of the Declaration of Isaac Lefkowitz filed on April 19, 2019 as CM/ECF 86 in In re: RS

OLD MILL, LLC, Case No. 17-22218.

57.     Stephen Grable represented to the Court in the RS Old Mills Rd State Action

on May 19, 2020, as follows: [19]

> Suffern remains on the hook for a $33 million debt, plus the
> mortgage servicing costs alone, plus taxes, plus care for the facility,
> it's more than a million dollars per month.
>
> *        *        *
>
> We have a property that we have a huge debt on, we have huge
> carrying costs on and we have no ability to finance.  **We have no
> ability to sell.  We have no ability to lease to sufficient tenants.**

---

[19] See **Exhibit E**, p. 15, lines 7-10, 15-20 (May 19, 2020 hearing transcripts).

**We can't do anything because there's been a Notice of Pendency
on file for more than 12 months now.**

(Emphasis added)

58.     Suffern was sued on July 10, 2020, for $27,233.10 for non-payment of goods sold and delivered.  See **Exhibit DD**, a true and correct copy of the Summons and Verified Complaint filed on July 10, 2020 in the Supreme Court of the State of New York, County of Rockland, under Index No. 03264/2020 in the action Red Hawk Fire & Rescue v. Suffern Partner LLC.

59.     Suffern was sued on July 20, 2018 by Orange and Rockland Utilities, Inc. for $309,102.49 representing non-payment of electricity provided to the Premises between September 13, 2017 on May 14, 2018.  See **Exhibit EE**, a true and correct copy of the Summons and Verified Complaint filed on July 20, 2018 in the Supreme Court of the State of New York, County of Rockland, under Index No. 034348/2018 in the action Orange and Rockland Utilities, Inc. v. Suffern Partners LLC.

60.     Upon information and belief, collection actions have been commenced against Isaac Lefkowitz in September and October 2020 in Supreme Court of the State of New York, Rockland County, as follows: (1) American Express National Bank v. Isaac Lefkowitz, Index no. 034717/2020; (2) Citibank, N.A. v. Isaac Lefkowitz, Index No. 034962/2020; and  (3) Discover Bank v. Isaac Lefkowitz, Index No. 034363/2020.[20]

61.     The above evidence demonstrates Messrs. Genuth and Yunger are the "real" principals of Suffern and have a history of perpetuating frauds by operating behind straw companies.  They orchestrated a transaction where the Premises were purchased by a debtor (Old

---

[20] True and correct copies of the Summons and Complaints for: (1) American Express National Bank v. Isaac Lefkowitz, Index no. 034717/2020 are annexed hereto as **Exhibit FF**; (2) Citibank, N.A. v. Isaac Lefkowitz, Index No. 034962/2020 are annexed hereto as **Exhibit GG**; and (3) Discover Bank v. Isaac Lefkowitz, Index No. 034363/2020 are annexed hereto as **Exhibit HH**.

Mill) for $18 million and then re-sold to RD for $30 million on the same day **without bankruptcy court approval**.  It is respectfully submitted Novartis would not sell the Premises for $18 million if the Premises were valued at $30 million the very same day.  They then use Goldie Reisman as a straw member of Suffern to obtain a $33 million loan from CPIF, and perpetrated a fraud on CPIF by directing $12.5 million in sale proceeds be paid to Treff & Lowy, who loaned money to Suffern for a few days, just to satisfy CPIF's "paid in capital" requirement for closing; and not paid to the RD.  In so doing, they defrauded CPIF and RD.  The recent assignment of Reisman's and RSOM's membership interests in Suffern to GoldmanRx, Inc., in which Isaac Lefkowitz is the president, is another fraud.  Suffern and GoldmanRx, Inc. have the same office and were obviously organized by the same principals.

62.     Using this "shell-game" and these frauds by undisclosed principals as a background, and the fact Suffern is insolvent, it is clear absent an injunction to maintain the status quo, ORNTIC will not get return of its $1,484,483.86.  In light of the $150,000 judgment entered against Suffern, it is likely the judgment creditor will execute on ORNTIC's monies being held by Suffern.

63.     ORNTIC has demonstrated a probability of success on the merits of its constructive trust claim.  ORNTIC made a transfer of $2 million in reliance on the escrow agent's promise it would be paid its portion of the Claim Refund.  In breach of its agreement as escrow agent, Hahn & Hessen paid the monies to Suffern which concedes it is holding as ORNTIC's monies subject to a claim of offset.  There is no dispute Suffern has paid no consideration for the monies, and received the monies at the minimum, with notices of the facts imputed from its counsel.  Suffern is holding the Claim Refund under circumstances that on equity and good conscience it ought not to retain.

64.     It therefore follows ORNTIC has demonstrated its entitlement to a preliminary injunction because an injunction is required to preserve the status quo so the Court can fashion an appropriate equitable remedy on ORNITC's constructive trust claim upon final determination. Based on the legal authorities cited in the accompanying memorandum of law, the probability of success on the merits of the constructive trust claim in and of itself entitles ORNTIC to the requested preliminary injunction to preserve the property made the basis of the trust. In addition, the fact Suffern is insolvent any dissipation of its assets would constitute irreparable injury.

<u>**CONCLUSION**</u>

65.     Based on legal authorities and arguments set forth in the accompanying memorandum of law, this Court should grant ORNTIC's motion in all respects and issue a preliminary order restraining Suffern from disbursing, dissipating, hypothecating, encumbering, transferring or secreting any portion of ORNTIC's $1,484,483.86 Claim Refund, to preserve the status quo, pending further order of the Court.

66.     One prior application for the same or similar relief has been made to this Court on January 11, 2021.  Leave to renew the motion on or before March 5, 2021 was granted. No other such application has been made to any other court.  A copy of the transcript of the argument on January 11, 2021 is annexed as **Exhibit II**.

Dated: New York, New York
March 4, 2021

       **BUTLER, FITZGERALD, FIVESON
         & McCARTHY**
       A Professional Corporation
       *Attorneys for Defendant*
       *Old Republic National Title Insurance Company*


       By:   *S/ David K. Fiveson*
             David K. Fiveson, Esq.
       A Principal of the Firm
       9 East 45th Street, Ninth Floor
       New York, New York 10017
       dfiveson@bffmlaw.com
       (212) 615-2200