# EXHIBIT F

Civil Action No. 20-cv-08905-CS
Affirmation of David K. Fiveson, Esq.

Page 1

1       UNITED STATES DISTRICT COURT

2       SOUTHERN DISTRICT OF NEW YORK

3

4    ----------------------x

5    IN RE:                    :

6                              :

7    RS OLD MILL, LLC,         : Case No.

8            Debtor.           : 17-22218(RDD)

9                              :

10   ----------------------x

11

12      DEPOSITION OF DAVID FLEISCHMANN

13          New York, New York

14          July 15, 2019

15            1:00 p.m.

16

17

18

19

20

21

22   Reported by:

     Maureen Ratto, RPR, CCR

23

24

25

Page 2

1                     * * *

2

3        Deposition of David Fleischmann,

4    held at the offices of Wilson Elser

5    Moskowitz Edelman & Dicker, LLP, 150

6    East 42nd Street, New York, New York,

7    10017 pursuant to notice, before

8    Maureen Ratto, Certified Court

9    Reporter, License No. XI01165,

10   Registered Professional Reporter,

11   License No. 817125, and Notary Public.

12

13                    * * *

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

1    A P P E A R A N C E S:

2

3    Counsel for Suffern Partners:

4        HAHN & HESSEN, LLP

5        488 Madison Avenue

6        New York, New York 10022

7        (212) 478-7400

8        BY:   STEPHEN J. GRABLE, ESQ.

9              sgrable@hahnhessen.com

10

11   Counsel for David Fleischmann:

12       WILSON ELSER MOSKOWITZ EDELMAN

13       & DICKER, LLP

14       150 East 42nd Street

15       New York, New York 10017

16       (212) 490-3000

17       BY:  JOSEPH L. FRANCOEUR, ESQ.

18            joseph.francoeur@wilsonelser.com

19            TINA C. MA, ESQ.

20            tina.ma@wilsonelser.com

21

22

23

24

25

```
                                              Page 4
 1    A P P E A R A N C E S, continued:

 2

 3    Counsel for Chapter 7 Trustee Marianne

 4    O'Toole:

 5       LAMONICA HERBST & MANISCALCO, LLP

 6       3305 Jerusalem Avenue

 7       Wantagh, New York 11793

 8       (516) 826-6500

 9       BY:  SALVATORE LaMONICA, ESQ.

10            sl@lhmlawfirm.com

11

12    Counsel for CPIF Lenders:

13       BUTLER FITZGERALD FIVESON

14       & McCARTHY, PC

15       Nine East 45th Street

16       New York, New York 10017

17       (212) 615-2200

18       BY:  DAVID K. FIVESON, ESQ.

19            dfiveson@bffmlaw.com

20

21

22

23

24

25
```

Page 5

1    A P P E A R A N C E S, continued:

2

3    Former Counsel to the Debtor:

4        PICK & ZABICKI, LLP

5        369 Lexington Avenue

6        New York, New York 10017

7        (212) 695-6007

8        BY:   DOUGLAS J. PICK, ESQ.

9              dpick@picklaw.net

10

11   Counsel for Thomas Landrigan:

12       LEWIS BRISBOIS, LLP

13       77 Water Street, Suite 2100

14       New York, New York 10005

15       (212) 232-1305

16       BY: CHRISTOPHER J. RADOS, ESQ.

17       christopher.rados@lewisbrisbois.com

18            MARK ANESH, ESQ.(Telephonically)

19            mark.anesh@lewisbrisbois.com

20

21

22

23

24

25

Page 6

1   A P P E A R A N C E S:

2

3   Counsel for RS Old Mill and Yehuda

4   Salamon:

5        LEVINE & ASSOCIATES, P.C.

6        15 Barclay Road

7        Scarsdale, New York 10583

8        (914) 600-4288

9        BY:   MICHAEL LEVINE, ESQ.

10            ml@LevLaw.org

11

12   ALSO PRESENT:

13   MATTHEW BEBE, ESQ., (Telephonically)

14   CPIF Lending

15   NICHOLAS KACUBA, Hahn & Hessen, LLP

16   KYLE S. BUCHOFF, U.S. Trustee's Office

17

18

19

20

21

22

23

24

25

1   DAVID FLEISCHMANN, having been first

2   duly sworn according to law by the

3   Officer, testifies as follows:

4   DIRECT EXAMINATION BY MR. GRABLE:

5           MR. GRABLE:  Good afternoon,

6       Mr. Fleischmann. My name is Stephen

7       Grable.  I'm with the law firm Hahn

8       & Hessen LLP and we represent

9       Suffern Partners, LLC.  Thank you

10      for coming this afternoon.

11          I'm just going to walk around

12      the room and ask everybody to just

13      give their appearance so that we

14      know who is here. We do have on the

15      phone Michael Bebe, who is

16      listening, of CPIF Lending.

17          Again, my name is Stephen

18      Grable.  I have with me my

19      colleague, Nick Kacuba,

20      K-a-c-u-b-a.

21          MR. LEVINE:  Michael Levine,

22      representing RS Old Mill and Yehuda

23      Salamon.

24          MR. BUCHOFF: Kyle Buchoff,

25      intern with the U.S. Trustee's

Page 8

1    Office.

2            MR. RADOS:  Christopher Rados,

3    for Thomas Landrigan.

4            MS. O'TOOLE: Maryann O'Toole,

5    Chapter 7 Trustee.

6            MR. LaMONICA:  Salvatore

7    LaMonica, attorney for the Chapter

8    7 Trustee.

9            MR. PICK:  Douglas Pick,

10   former counsel to the Debtor.

11           MS. MA:  Tina Ma, from Wilson

12   Elser, on behalf of

13   Mr. Fleischmann.

14           MR. FRANCOEUR:  Joseph

15   Francoeur, Wilson Elser, on behalf

16   of Mr. Fleischmann.

17           Did somebody just join the

18   call?

19           MR. ANESH:  Yes.  Mark Anesh,

20   Lewis Brisbois.

21           MR. FRANCOEUR:  We're all

22   here.  Stephen Grable is about to

23   start the questioning.

24           MR. GRABLE:  First, I just

25   want to note for the record that

1       Michael Levine did file a notice of

2       appearance today on behalf of two

3       individuals or entities; one being

4       the Debtor RS Old Mill; the other

5       being an individual named Yehuda

6       Salamon, who is the principal of RS

7       Old Mill.

8              The parties have not yet had

9       an opportunity to challenge that

10      appearance, challenge the fact that

11      there is very much indeed a

12      conflict between representing the

13      Debtor and representing the

14      Debtor's principal and I do believe

15      that is an issue that will be

16      addressed in due course.

17             Nonetheless, Mr. Levine is

18      welcome to listen in today and I do

19      not have an issue with that.

20             MR. LEVINE:  I intend to

21      cross.

22             MR. FRANCOEUR:  There is no

23      questioning other than by

24      Mr. Grable and the Trustee's

25      counsel.

Page 10

```
 1              MR. LEVINE:  I disagree.
 2              MR. FRANCOEUR:  You can
 3         disagree all you want.
 4              MR. LEVINE:  You are not going
 5         to allow me ask questions, and I
 6         want to put that on the record.
 7              MR. FRANCOEUR:  You can make
 8         whatever record you want.
 9              MR. LEVINE:  I intend to
10         cross-examine.
11              MR. FRANCOEUR:  That's very
12         nice.
13              MR. GRABLE:  Just a few more
14         preliminaries. This deposition is
15         proceeding pursuant to my subpoena
16         in a Chapter 7 contested matter. I
17         am, in fact, the only individual
18         who is a party to that contested
19         matter, the only party that has
20         filed papers in support of that
21         motion to approve a sale.
22              This is my subpoena and there
23         is a Court Order that says that
24         myself, as well as the Chapter 7
25         Trustee and her counsel are to take
```

```
 1            DAVID FLEISCHMANN
 2      this deposition today.
 3            So I anticipate that questions
 4      may be coming certainly from myself
 5      as well as by the Chapter 7 Trustee
 6      and I also agree that no other
 7      party in this room has a right to
 8      ask any questions today.
 9            If you'd like to depose
10      Mr. Fleischmann, serve a subpoena.
11      That's my suggestion.
12            MR. LEVINE:  Thank you. I
13      intend to cross-examine.
14  BY MR. GRABLE:
15      Q.    With that, just a couple of
16  groundrules.  First of all,
17  Mr. Fleischmann, could you just state
18  your name for the record and your
19  business address?
20      A.    David Fleischmann, 2233
21  Nostrand Avenue, third floor, Brooklyn,
22  New York, 11210.
23      Q.    Couple of groundrules very
24  quick.  Number one, obviously, I have a
25  court reporter sitting to your right. She
```

1          DAVID FLEISCHMANN
2    will be transcribing the deposition. It's
3    important that everything be said
4    verbally so a nod of the head cannot be
5    recorded.  So we need answers in yes or
6    no.
7         A.    Understood.
8         Q.    Number two, if there is a
9    question I ask that you don't understand,
10   please just ask me to clarify or let me
11   know you don't understand. Otherwise, if
12   you answer a question it will be assumed
13   that you understood the question. Okay?
14        A.    Okay.
15        Q.    Number three, one person talks
16   at a time. Very important for the benefit
17   of the reporter.  As is clear, there are
18   a lot of parties in the room today. I
19   expect there may be some objections
20   lodged on the record. It's just important
21   that we try not to speak over each other
22   and that's true as to you and myself as
23   well.  Okay?
24        A.    Okay.
25        Q.    Number four, I would ask that

1            DAVID FLEISCHMANN

2    you answer any questions that are posed

3    to you, unless your counsel directs you

4    not to answer the question.  And we'll

5    work through those issues as we go but,

6    generally speaking, absent a privilege or

7    some other reason directed by your

8    counsel you do need to answer the

9    questions asked today.

10            And number five, I guess, if

11   you need a break at any point just let me

12   know and we'll take a break.  You know,

13   we're not here to make you tired, we're

14   here to get your truthful answers and

15   understand certain facts, just let me

16   know and we'll work through that.

17            MR. FRANCOEUR:  Just before

18       you begin, on an issue of

19       privilege, my office received

20       several documents indicating that

21       privilege on behalf of your client,

22       Suffern and other parties,

23       Bridgewater, Reisman have waived

24       their privilege.  We're operating

25       that all of those waivers are

```
 1              DAVID FLEISCHMANN
 2      effective.
 3              To the extent they're not
 4      we'll reserve our rights in the
 5      future, but it's our understanding
 6      that any privilege by Suffern and
 7      related entities has been waived
 8      and we are proceeding with that
 9      understanding.
10           MR. LEVINE:  Are you saying
11      Bridgewater and Suffern are
12      related?
13           MR. FRANCOEUR:  I'm sorry?
14           MR. LEVINE:  Are you saying
15      Bridgewater and Suffern are
16      related?
17           MR. GRABLE:  Mr. Levine,
18      you're not asking questions here
19      and Mr. Francoeur is not under
20      oath.  This is my deposition.
21      Mr. Freancoeur asked me a question.
22      I'm happy to answer it.
23           MR. LEVINE:  We haven't seen
24      any waivers and we reserve our
25      right to object to them, if
```

```
 1              DAVID  FLEISCHMANN
 2      necessary.
 3              MR.  GRABLE:   Waivers  were
 4      provided  by  my  office  on  behalf  of
 5      Suffern  Partners  and  various
 6      related  individuals  and  entities.
 7      Those  are  absolutely  accurate,
 8      correct,  in  force  for  purposes  of
 9      this  deposition.   I  confirm  that,
10      you've  seen  that  and  there  is  no
11      issue  there.
12              MR.  LEVINE:   Who  supplied
13      waivers?
14              MR.  LaMONICA:   I'd  like  to
15      know  who  gave  the  waivers.
16              MR.  GRABLE:   So  waivers  were
17      given  on  behalf  of  the  following
18      individuals  and  entities;  Suffern
19      Partners  LLC,  North  14th  Street
20      Realty  Associates,  LLC,  RSOM  Corp.,
21      Goldie  Reisman,  Moses  Reisman,
22      Bridgewater  Capital  Partners,  LLC
23      Isaac  Genuth,  and  Mark  Yunger,  and
24      copies  have  been  provided  to  Mr.
25      Francoeur  as  well  as  to  the  Chapter
```

Page 16

1              DAVID FLEISCHMANN

2        7 Trustee's office by e-mail.

3  BY MR. GRABLE:

4        Q.    Mr. Fleischmann, are you on

5  any medications or other substances that

6  might affect your ability to testify

7  truthfully today?

8        A.    No.

9        Q.    I just want to run through

10  your background real quick.

11              You're an attorney licensed to

12  practice law?

13        A.    Correct.

14        Q.    In the State of New York?

15        A.    Yes.

16        Q.    Are you familiar with the

17  Debtor RS Old Mill, LLC?

18        A.    Yes.

19        Q.    And how are you familiar with

20  RS Old Mill, LLC?

21        A.    Pursuant to this lawsuit.

22        Q.    Were you involved in a

23  transaction that occurred around

24  September, 2017 concerning certain

25  property in Rockland County, New York?

Page 17

1                DAVID FLEISCHMANN

2        A.      Yes.

3        Q.      Who did you represent in

4    connection with that transaction?

5        A.      Suffern Partners, Goldie

6    Reisman.

7        Q.      Did you represent North 14th

8    Street Realty, LLC?

9        A.      I believe so.

10       Q.      Do you know an individual by

11   the name of Moses Reisman?

12       A.      Yes.

13               MR. LEVINE:   Objection to the

14        leading questions.

15       Q.      And the name RSOM Corp.?

16       A.      I believe so.

17       Q.      I just wanted to get a general

18   sense of the structure of that

19   transaction.

20               Are you aware of a purchase of

21   sale agreement between an entity called

22   Novartis and RS Old Mill, LLC?

23       A.      Yes.

24       Q.      Mr. Fleischmann, I'm going to

25   be marking several documents and they're

1               DAVID FLEISCHMANN

2    going to be shown to you.  Many of these

3    are just for background purposes and just

4    as a point of reference to ask you some

5    questions. I'm hopeful that we'll work

6    through them fairly quickly.  All right?

7               (Fleischmann Exhibit 1,

8          Agreement of Sale, dated November

9          28, 2016, was received and marked

10         on this date for identification.)

11              (Fleischmann Exhibit 2,

12         Agreement of Assignment, dated

13         November 29, 2016 was received and

14         marked on this date for

15         identification.)

16              (Fleischmann Exhibit 3,

17         Contract of Sale was received and

18         marked on this date for

19         identification.)

20         Q.    Mr. Fleischmann, just take a

21   minute and thumb through those documents

22   while the other counsel are waiting for

23   them.

24              (Deponent reviews the

25   document.)

Page 19

1                DAVID FLEISCHMANN

2        Q.      Are you ready, Mr.

3   Fleischmann?

4        A.      Yes.

5        Q.      I put before you three

6   documents, the first one identified as

7   Fleischmann 1 is an Agreement of Sale

8   dated as of November 28, 2016. Do you see

9   that?

10        A.      Yes.

11        Q.      And second one is an Agreement

12   of Assignment, entered into the 29th day

13   of November, 2016. Do you see that?

14        A.      Yes.

15        Q.      And Fleischmann 3 is a

16   Contract of Sale between RS Old Mills RD,

17   LLC and Suffern Partners, LLC, dated

18   December 16, 2016. Do you see that?

19        A.      Yes.

20        Q.      Have you seen these documents

21   before today?

22        A.      I think so, yes.

23        Q.      Turning to Fleischmann 1, do

24   you understand this document to be an

25   Agreement of Sale of certain property

Page 20

```
 1                 DAVID FLEISCHMANN
 2    from Novartis Corporation to RS Old Mill,
 3    LLC?
 4              MR. LEVINE:   Objection to the
 5         leading question.
 6         A.    It appears to be.
 7         Q.    Were you involved in this
 8    transaction in November, 2016?
 9         A.    Yes.
10         Q.    And what was your involvement
11    in November, 2016?
12         A.    I represented Suffern
13    Partners, which took title to this
14    property.
15         Q.    If you can turn to page 4 of
16    the Section 2.2 states Purchase Price. Do
17    you see that?
18         A.    Yes.
19         Q.    It reads the, "Aggregate
20    purchase price for the property is $18
21    million." Do you see that?
22         A.    Yes.
23         Q.    Are you familiar with a $18
24    million purchase price for certain
25    property from Novartis to RS Old Mill,
```

Page 21

```
 1              DAVID FLEISCHMANN
 2   LLC?
 3        A.    Yes.
 4        Q.    And Section 2.3 talks about a
 5   sum of $2.5 million being paid into an
 6   escrow agent. Did you have any
 7   involvement with that transaction?
 8        A.    I did not, no.
 9        Q.    Thank you. If you can turn to
10   page 32 of the document, there is a
11   signature below RS Old Mill, LLC, it says
12   Yehuda Salamon. Are you familiar with
13   Mr. Salamon?
14        A.    Yes.
15        Q.    And what is Mr. Salamon's
16   relationship to this transaction, if you
17   know?
18        A.    It says here that he's a
19   manager of RS Old Mill, LLC.
20        Q.    Have you ever met Yehuda
21   Salamon?
22        A.    I don't recall.
23        Q.    Let's turn to Fleischmann 2.
24   Have you seen this document before,
25   Mr. Fleischmann?
```

Page 22

1                    DAVID FLEISCHMANN
2         A.    I believe so.
3         Q.    Do you understand this to be
4    an assignment dated November 29, 2016
5    from an entity called RS Old Mill, LLC to
6    RS Old Mills RD, LLC?
7              MR. LEVINE:  Objection to the
8         leading question.
9         A.    Yes.
10        Q.    If you can turn to the last
11   page of that document, who is the
12   assignor on this document?
13        A.    It says assignor is RS Old
14   Mill, LLC, signed by Yehuda Salamon.
15        Q.    And the assignee?
16        A.    RS Old Mills RD LLC and it's
17   signed by Avroham Kaufman.
18        Q.    Do you know Avroham Kaufman?
19        A.    Not that I recall.
20        Q.    You've never met Mr. Kaufman?
21        A.    I'm not sure. I don't think
22   so.
23        Q.    Do you know whether or not
24   Avroham Kaufman is the brother-in-law of
25   Yehuda Salamon?

```
 1              DAVID FLEISCHMANN
 2      A.    I've been told that but I
 3  don't know that firsthand.
 4            MR. FRANCOEUR:  Don't guess.
 5            THE WITNESS: Okay.
 6      Q.    Turning to Fleischmann 3, a
 7  Contract of Sale, this is a Contract of
 8  Sale dated December 16, 2016, from RS Old
 9  Mills Road, LLC to Suffern Partners, LLC.
10            You said you've seen this
11  document before?
12      A.    I believe so.
13      Q.    If you can turn to page 18 of
14  this document, who signed for the seller?
15      A.    It's RS Old Mills RD LLC
16  signed by Avroham Kaufman.
17      Q.    And the purchaser is unsigned
18  but are you familiar with the name Goldie
19  Reisman?
20      A.    Yes.
21      Q.    And she was, indeed, your
22  client, correct?
23      A.    Correct.
24      Q.    Is Ms. Reisman an principal of
25  Suffern Partners, LLC?
```

Page 24

1              DAVID  FLEISCHMANN

2       A.      Yes.

3       Q.      Strike  that  question.

4               Was  Ms.  Reisman  a  principal  of

5  Suffern  Partners,  LLC  when  you  were

6  involved  in  this  transaction?

7       A.      Yes.

8       Q.      If  you  can  just  turn  back  to

9  the  third  page  of  the  document,  it's

10  actually  page  1.  Sorry.  Thanks.  Section  2

11  identifies  a  purchase  price  for  this

12  transaction,  and  if  you  turn  to  the  next

13  page,  between  that  page  and  the  next  page

14  there  is  two  numbers,  there  is  a  $2.5

15  million  number  and  a  $27,500,000  number,

16  for  a  total  of  $30  million.

17               Were  you  involved  in  a

18  transaction  where  RS  Old  Mills  Road,  LLC

19  sold  certain  property  to  Suffern  Partners

20  LLC?

21       A.      I  was.

22       Q.      And  was  the  price  of  that  sale

23  $30  million?

24       A.      I  believe  so.

25       Q.      On  that  same  page,  page  2  of

Page 25

```
 1              DAVID FLEISCHMANN
 2   the document, there is a provision that
 3   says "down payment in escrow."
 4            Have you ever heard of the
 5   entity Riverside Abstract?
 6        A.    Yes.
 7        Q.    Were they involved in this
 8   transaction?
 9        A.    They were the title agent.
10        Q.    They were the title agent for
11   what purpose?
12        A.    To issue title insurance.
13        Q.    And who were they the title
14   agent for?
15        A.    I don't remember the
16   underwriter's name.
17              (Fleischmann Exhibit 4,
18        Bargain and Sale Deed from Novartis
19        Corporation to RS Old Mill, LLC,
20        September 1, 2017, was received and
21        marked on this date for
22        identification.)
23              (Fleischmann Exhibit 5,
24        Bargain and Sale Deed from RS Old
25        Mill, LLC to RS Old Mills RD LLC,
```

Page 26

```
 1              DAVID FLEISCHMANN
 2      dated as of September 5, 2017, was
 3      received and marked on this date
 4      for identification.)
 5              (Fleischmann Exhibit 6,
 6      Bargain and Sale Deed from RS Old
 7      Mills RD, LLC to Suffern Partners
 8      LLC, September 5, 2017, was
 9      received and marked on this date
10      for identification.)
11      Q.   Mr. Fleischmann, if you can
12 just take a moment to peruse those three
13 documents I put in front of you?
14              (Deponent reviews the
15 documents.)
16      Q.   Mr. Fleischmann, I put in
17 front of you three documents.
18              Fleischmann 4 is a recording
19 cover sheet and Bargain and Sale Deed
20 from Novartis Corporation to RS Old Mill,
21 LLC dated as of September 1, 2017.
22              Fleischmann 5 is a recording
23 cover sheet and Bargain and Sale Deed
24 from RS Old Mill, LLC to RS Old Mills RD
25 LLC, dated as of September 5, 2017.
```

```
                                            Page 27
 1              DAVID FLEISCHMANN
 2              And Fleischmann 6 is a
 3   recording cover sheet and Bargain and
 4   Sale Deed from RS Old Mills RD LLC to
 5   Suffern Partners LLC. Also dated as of
 6   September 5, 2017.
 7              Have you seen these documents
 8   before?
 9        A.    I believe so.
10        Q.    I'm trying to get an
11   understanding of this transaction and
12   exactly what happened here, so maybe you
13   can just walk us through your involvement
14   in the process of serving as counsel to
15   Suffern Partners and acquiring this
16   property and the process of it going from
17   Novartis Corporation to RS Old Mill to RS
18   Old Mills RD to Suffern?
19        A.    I represent Suffern Partners,
20   which was the ultimate purchaser, the end
21   buyer.  I represented them as far as
22   negotiating loan documents and as far as
23   making sure the title passed
24   appropriately. Title was at the time held
25   by Novartis Corporation, who sold it to
```

```
 1              DAVID FLEISCHMANN
 2   RS Old Mill, LLC. RS Old Mill then did a
 3   transfer to RS Old Mill RD, LLC, which
 4   then transferred ultimately to Suffern
 5   Partners.
 6        Q.    And the purchase price that
 7   Suffern Partners paid for the property?
 8        A.    It says here the deed amount
 9   is $30 million.
10        Q.    So Fleischmann 4, which is the
11   first --
12             MR. LEVINE:  Object and move
13        to strike as non-responsive, to the
14        last answer.
15        Q.    Fleischmann 4, the first
16   Bargain and Sale Deed from Novartis to RS
17   Old Mill, LLC, this said to record and
18   return to Cohen, LaBarbera & Landrigan
19   LLP. Are you familiar with that law firm?
20        A.    I am.
21        Q.    And what is your familiarity
22   with that firm?
23        A.    It was an attorney, Tom
24   Landrigan, that was involved in this
25   transaction.
```

1                  DAVID FLEISCHMANN
2         Q.    What was Mr. Landrigan's
3    involvement in the transaction?
4         A.    I believe he represented RS
5    Old Mill, LLC in the transaction.
6         Q.    And Fleischmann 5, the Bargain
7    and Sale Deed from RS Old Mill to RS Old
8    Mill RD, that says record and return to
9    David Fleischmann, you.
10             Why is that Bargain and Sale
11   Deed being returned to you?
12        A.    I guess I'm the end purchaser,
13   they might have decided to send all the
14   originals to me. I'm not sure.
15        Q.    Is that your handwriting that
16   wrote in, David Fleischmann, Esquire?
17        A.    I don't believe so.
18        Q.    And Fleischmann 6, the Bargain
19   and Sale Deed from RS Old Mills RD to
20   Suffern Partners, again, that indicates
21   it was recorded and returned to you.
22             What would be the reason,
23   again, that this Bargain and Sale Deed
24   would be returned to you after recording?
25        A.    I represented the purchaser.

Page 30

1                    DAVID FLEISCHMANN

2           Q.     Do you know if Suffern's

3    purchase of this -- by the way, just for

4    the record, I apologize, the property

5    that we're talking about that Suffern

6    purchased, do you recall where that

7    property is located?

8           A.     I don't recall the exact

9    address. I can read it off the deed for

10   you.

11          Q.     If we look at one of the

12   Bargain and Sale Deeds, there is three

13   parcels, 25 Old Mill Road, Suffern, 19

14   Hemion, H-e-m-i-o-n, Road, Montebello and

15   Route 59, Suffern. Those are the

16   properties that you were counsel to

17   Suffern in acquiring?

18          A.     Yes.

19          Q.     Did Suffern properties finance

20   the purchase of those properties?

21          A.     Yes.

22          Q.     And were you involved as

23   attorney for them?

24          A.     Yes.

25          Q.     Attorney for Suffern --

Page 31

```
 1              DAVID FLEISCHMANN
 2              MR. FRANCOEUR:   Wait for the
 3      question.
 4      Q.     -- in connection with securing
 5   that financing?
 6      A.     I was.
 7      Q.     Did you negotiate any of the
 8   financing documents?
 9      A.     I did.
10              (Fleischmann Exhibit 7, Loan
11      Agreement, September 6, 2017,
12      between CPIF Lending LLC, Suffern
13      Partners, LLC and North 14th Street
14      Realty Associates, LLC, was
15      received and marked on this date
16      for identification.)
17              (Fleischmann Exhibit 8,
18      Amended Restated and Consolidated
19      Promissory Note, was received and
20      marked on this date for
21      identification.)
22              (Fleischmann Exhibit 9,
23      Amended Restated and Consolidated
24      Mortgage Assignment of Leases and
25      Rents, Security Agreement and
```

Page 32

1              DAVID FLEISCHMANN
2        Fixture Filing, was received and
3        marked on this date for
4        identification.)
5        Q.    Mr. Fleischmann, there is
6    three documents in front of you and I'm
7    just going to go through them to make
8    sure counsel has the right 7, 8, 9.
9              The first marked as
10   Fleischmann 7 is a Loan Agreement made
11   September 6, 2017, between CPIF Lending
12   LLC, Suffern Partners, LLC and North 14th
13   Street Realty Associates, LLC.
14             Fleischmann 8 is an Amended
15   Restated and Consolidated Promissory Note
16   in connection with that loan agreement.
17             Fleischmann 9 is an Amended
18   Restated and Consolidated Mortgage
19   Assignment of Leases and Rents Security
20   Agreement and Fixture Filing, also dated
21   as of September 6, 2017 in connection
22   with that same loan.
23             Have you seen these three
24   documents before?
25        A.    I believe so.

Page 33

1              DAVID FLEISCHMANN
2        Q.     Were you involved in
3    negotiating these documents?
4        A.     Yes.
5        Q.     Do you recall how much the
6    loan was that Suffern Partners took in
7    connection with this?
8        A.     I believe off memory it was
9    $33 million.
10       Q.     And the first recital indeed
11   indicates that. So your memory is quite
12   good.
13            MR. LEVINE:  We'll see.
14            MR. GRABLE:  Mr. Levine, I
15        would ask you not to put wasteful
16        things on the record.
17            MR. LEVINE:  Everything you've
18        done is so far but I will try to
19        adhere to that.
20            MR. GRABLE:  I find that hard
21        to believe that you are going to
22        try to adhere to anything.
23       Q.     Looking at page 3 of the Loan
24   Agreement, paragraph 2, Conditions to
25   Closing, "Closing shall take place on

```
 1              DAVID FLEISCHMANN
 2   September 6, 2017 or as may thereafter be
 3   determined by Lender through an escrow
 4   closing with Borrower and Riverside
 5   Abstract, as an agent for Old Republic
 6   National Title Insurance Company."
 7              Do you see that?
 8        A.    Yes.
 9        Q.    Again, who was Riverside
10   Abstract in connection with this
11   financing transaction?
12        A.    They were the title agent.
13        Q.    If you can turn to, it's
14   actually not numbered but it would be
15   page 35 of this document.  Are you there?
16        A.    Yes.
17        Q.    I just want to go through
18   these parties and understand who they
19   are. The borrower is indicated as Suffern
20   Partners LLC, by RSOM Corp.  Are you
21   familiar with RSOM Corp.?
22        A.    Yes.
23        Q.    What was RSOM Corp. in
24   connection to Suffern Partners, LLC?
25        A.    I believe it was the managing
```

Page 35

1                    DAVID FLEISCHMANN
2     member of the entity.
3          Q.     And it indicates that Goldie
4     Reisman was President of RSOM Corp.  Do
5     you recall that?
6          A.     Yes.
7          Q.     The other borrower is an
8     entity called North 14th Street Realty
9     Associates, LLC.  Do you recall
10    Ms. Reisman being a managing member of
11    that entity?
12         A.     Yes.
13         Q.     And again, you were counsel to
14    those entities and Ms. Reisman, correct?
15         A.     Yes.
16         Q.     Do you recall who represented
17    the lender in connection with this
18    transaction?
19         A.     It was firm called Cassin &
20    Cassin, C-a-s-s-i-n.
21              (Fleischmann Exhibit 10,
22         Closing Escrow Agreement, dated
23         September 1, 2017, was received and
24         marked on this date for
25         identification.)

Page 36

1                    DAVID FLEISCHMANN
2          Q.     Mr. Fleischmann, I put in
3     front of you as Fleischmann 10 a Closing
4     Escrow Agreement, dated September 1,
5     2017.
6                    Have you seen this document
7     before?
8          A.     I believe so.
9          Q.     Turning to page 3, paragraph
10    2A it says Conditions to Closing, "Escrow
11    Agent has received a final, completed
12    copy of the mortgage loan closing
13    statement which Escrow Agent shall attach
14    hereto as Exhibit A."
15                   I want you to thumb through
16    the document and find that Exhibit A if
17    you could, please?
18         A.     Okay.
19         Q.     Have you seen this closing
20    statement before?
21         A.     I believe so.
22         Q.     And do you recall when you saw
23    it?
24         A.     Most likely in connection with
25    closing.

1          DAVID FLEISCHMANN

2       Q.    So just to take a step back,

3   and I apologize that I put a lot of

4   documents in front of you, but I want to

5   make sure that your memory is right

6   because I know there is a lot here.

7            This closing appears to have

8   occurred in or about September of 2017.

9   Would you agree with me --

10      A.    Yes.

11      Q.    -- based on the documents?

12            The first document we looked

13   at was an Agreement of Sale from Novartis

14   Corporation to RS Old Mill, LLC dated

15   November, 2016, so almost a full year

16   earlier.

17            I'm just trying to figure out

18   when you, indeed, became involved in this

19   transaction.

20      A.    Probably about a month prior

21   to the closing, to the September closing.

22      Q.    A month prior to September,

23   2017 closing; is that correct?

24      A.    Yes.

25      Q.    Okay. Thank you. I'm going to

```
 1              DAVID FLEISCHMANN
 2   spend some time now walking through the
 3   closing statement. I'm going to mark
 4   additional copies for us.
 5              (Fleischmann Exhibit 11,
 6         Riverside Abstract Closing
 7         Statement, was received and marked
 8         on this date for identification.)
 9              (Fleischmann Exhibit 12, DF
10         Closing Statement, was received and
11         marked on this date for
12         identification.)
13         Q.    11 is Riverside Abstract and
14   12 says DF.
15              Mr. Fleischmann, I put before
16   you the statements, Fleischmann 11 is
17   identified as Riverside Abstract Closing
18   Statement. I might call it a HUD, H-U-D.
19              MR. LEVINE:  Objection to the
20         characterization.
21         Q.    And Fleischmann 12 is another
22   closing statement that says DF, Law
23   Offices of David Fleischmann at the top.
24              Have you seen these
25   documents before?
```

1              DAVID FLEISCHMANN

2      A.     I believe so.

3      Q.     Okay. Just to confirm the

4   Fleischmann 11, the Riverside Abstract

5   statement, that's the same final

6   statement that we saw in the Closing

7   Escrow Agreement that's Fleischmann 10?

8              MR. LEVINE:  Objection to

9        form.

10              MR. FRANCOEUR:  Compare them.

11              (Deponent reviews the

12   document.)

13      A.     Yes.  They're the same.

14      Q.     Thank you, Mr. Fleischmann.

15   Let's focus on Fleischmann 11 and 12. I

16   think it will just be easier.

17              What is the purpose of these

18   statements?

19      A.     To lay out all costs of the

20   closing and all disbursements.

21      Q.     And who prepared each of

22   these?

23      A.      Riverside Abstract was

24   prepared by Riverside and Exhibit 12 is

25   prepared by my office.

Page 40

1                    DAVID FLEISCHMANN
2          Q.    In the case of Fleischmann 12,
3     the one prepared by your office, what
4     purpose or utility does preparation of
5     this statement have?
6          A.    It's generally just like a
7     post-closing document sent to the client
8     to lay out the costs.
9          Q.    I want to walk through these
10    and they're virtually identical with the
11    exception of a few items, so I just want
12    to highlight those and better understand
13    them.
14              MR. LEVINE:  Objection to
15         counsel's comment.
16         Q.    Looking at the Riverside
17    Abstract statement in the section called
18    Settlement Statement, it indicates a
19    contract price of $30 million. Do you see
20    that?
21         A.    Yes.
22         Q.    What does that mean or what
23    does that concern?
24         A.    That's the purchase price of
25    the transaction.

1              DAVID FLEISCHMANN

2        Q.    And then there's a line Down

3   Payment zero.   And then Equity Received

4   By Seller. Do you see that?

5        A.    Yes.

6        Q.    What is that amount?

7        A.    Equity received by seller, it

8   says $12,500,000.

9        Q.    Who did you understand the

10  seller to be in this transaction?

11       A.    There were two sellers; there

12  is Novartis, which is the underlying

13  seller; and then there's RS Old Mill,

14  which is the intervening seller.

15       Q.    Who does your client purchase

16  from?

17       A.    RS Old Mill.

18       Q.    The initial entity?

19            MR. LEVINE:   Objection to

20       form.

21       A.    There is two deeds.

22  Technically, we purchased it from the

23  second deed, but it was done

24  simultaneously.

25       Q.    So you consider the transfer

Page 42

1                    DAVID FLEISCHMANN

2     that we spoke about earlier from RS Old

3     Mill to RS Old Mill RD to Suffern to be

4     one collapsed transaction, effectively?

5                    MR. LEVINE:   Objection to the

6          leading question.

7          A.    They were simultaneous, yes.

8          Q.    And then continuing down this

9     Riverside Abstract statement, I see a new

10    loan amount of $33 million. Do you see

11    that?

12         A.    Yes.

13         Q.    And that, indeed, was the

14    amount that we saw on the loan documents,

15    correct?

16         A.    Yes.

17         Q.    Okay. Skipping down a few

18    lines there is a Net Wire to Title of

19    $25,799,000. Do you see that?

20         A.    Yes.

21         Q.    What does that number

22    represent or reflect?

23         A.    That's the net loan amount

24    after the lender takes off its reserves

25    and other costs.

Page 43

1              DAVID FLEISCHMANN
2        Q.    So $25,799,000 is the actual
3   amount that CPIF Lending funded in
4   connection with this transaction?
5        A.    It's the actual amount that it
6   wired towards the purchase.
7        Q.    Do you know where it wired
8   those funds to?
9        A.    To the title agent.
10       Q.    And you stated earlier that
11  was Riverside, correct?
12       A.    Yes.
13       Q.    I just want to look at
14  Fleischmann 12, the closing statement you
15  prepared for a moment.
16             Here I see about two-thirds of
17  the down Net Loan Amount wired to
18  Riverside of $25,536,833.33.  Do you see
19  that?
20       A.    I do.
21       Q.    And that's less than what we
22  saw on the Riverside statement, correct?
23       A.    Yes.
24       Q.    Just above that there is a
25  line in red that says Interest Reserve

Page 44

1              DAVID FLEISCHMANN
2    Taken in Error. Do you know what that
3    reflected?
4         A.   I believe that at the time of
5    closing there was a mistake in the
6    interest amounts that were taken and I
7    believe there were certain interest
8    reserves that called for in the loan
9    agreement that was not reflected in the
10   wire.  So I think through an adjustment
11   post-closing.
12        Q.   So your understanding is that
13   CPIF actually funded to Riverside the
14   number identified on Fleischmann 12,
15   $25,536,833.33?
16             MR. LEVINE:  Objection to
17        form.
18        A.   I'm not sure. I'm not sure
19   what was actually wired and what was
20   fixed post-closing.
21        Q.   I will represent to you, by
22   the way, that if we add those two numbers
23   up, the $25,536,833.33 plus $262,166.67
24   that, indeed, equals the $25,799,000
25   represented on the Riverside Abstract

1                  DAVID  FLEISCHMANN

2    statement.

3                  Let's  go  next  to  the  next

4    category  of  items  on  this  document,  back

5    to  Fleischmann  12  and  Riverside  Abstract

6    statement.  We  have  a  number  of  headings

7    Description,  Payee  and  then  Paid  By

8    Purchaser  and  Paid  By  Seller.

9                  What  are  these  line  items

10   following  those  headings  represent?

11                  MR.  FRANCOEUR:   Just  for  the

12           record,  this  is  an  Exhibit  11.  I

13           think  you  said  12.

14                  MR.  GRABLE:   Thank  you.

15           Fleischmann  11.

16           A.    It's  various  closing  costs

17   that  are  paid  out  simultaneous  with

18   closing.

19           Q.    So  the  above  number  that  we

20   saw,  the  25  million  and  change,  those  are

21   monies  that  paid  into  the  escrow  agent,

22   correct?

23           A.    25,799  is  what  the  lender

24   wired  into  title.  The  rest  are

25   disbursements  that  title  makes.

Page 46

1              DAVID FLEISCHMANN
2        Q.     And now this next section that
3    we're focused on, those are the actual
4    disbursements that the title agent makes,
5    correct?
6        A.     Yes.
7        Q.     I just want to walk through
8    these and hopefully you can help us
9    understand what some of these are and
10   what they represent.
11             The first is a payoff to TD
12   Bank indicated it was paid by purchaser.
13   Do you know what that represented?
14       A.     There was an additional
15   property, North 14th Street in Brooklyn,
16   that had a loan and CPIF wanted to be
17   first position so they took an assignment
18   of that loan and they had to pay off the
19   existing loan amount.
20             MR. LEVINE:  We're on Exhibit
21        12 now?
22             MR. LaMONICA:  Are you on 12
23        or 11?
24             MR. GRABLE:  I'm on 11. I
25        apologize.

```
 1              DAVID FLEISCHMANN
 2          MR. LaMONICA:  Where does it
 3     say payoff?
 4          MR. FIVESON:  Where it says
 5     Payoffs, middle of the page.
 6          MR. GRABLE:  I apologize.  I
 7     did misspeak.  So everybody may
 8     have been confused. I'm on
 9     Fleischmann 11, the Riverside
10     Abstract statement.
11     Q.    Mr. Fleischmann, the answers
12 to the last couple of questions you were
13 looking at the Riverside Abstract
14 statement, correct?
15     A.    Yes.
16     Q.    So you indicated there was a
17 payment or at least this document
18 indicates there was a payment to TD Bank
19 of $4.8 million and change in connection
20 with another property.
21          Can you describe what the role
22 of that other property was in this
23 transaction?
24     A.    The lender, CPIF, decided they
25 wanted additional collateral, so Goldie
```

Page 48

                    DAVID FLEISCHMANN
1
2    Reisman owned additional property and
3    that was taken as additional collateral.
4         Q.    Is it correct that at the
5    time, before this transaction, TD Bank or
6    at least it was represented to you had a
7    priority interest in that property, a
8    mortgage?
9         A.    Yes.
10        Q.    And they were being taken out
11   and CPIF was being given a priority in
12   that property, correct?
13             MR. LEVINE:   Objection.
14        A.    They did an assignment of the
15   mortgage.
16        Q.    Thank you. I just want to go
17   down this list; miscellaneous charges,
18   title fees to Riverside Abstract,
19   $1,338,936.72. Do you know what that
20   number reflected?
21        A.    I don't know specifically. It
22   generally reflects the title cost, the
23   title insurance, transfer tax, things
24   that title must may in order to insure.
25        Q.    And in that same line there is

Page 49

```
 1              DAVID FLEISCHMANN
 2    another column Paid By Seller
 3    $149,298.72.  Why are there two
 4    independent numbers for title fees paid
 5    to live side?
 6         A.      So purchaser generally pays
 7    the mortgage recording tax and the seller
 8    pays the transfer tax.
 9         Q.      So there is a sharing of the
10    expenses here?
11         A.      Correct.
12         Q.      And next line is ECBs, paid by
13    the seller do you know what ECBs
14    reflected?
15         A.      They are different violations
16    on the property that needed to be paid in
17    order for there to be clean title, the
18    City will put a lien on it.
19         Q.      And then the next line is
20    Closer, Alan Hirsch. Do you know who
21    Mr. Hirsch is?
22         A.      I know generally he's a title
23    closer.  He probably notarized some
24    signatures and charged a fee for it.
25         Q.      Key Bank National Association,
```

1              DAVID FLEISCHMANN

2    do you know what that payment was for?

3         A.    I don't.

4         Q.    Borrower legal fees, Law

5    Office of David Fleischmann $40,000, what

6    was that for?

7         A.    That's for me for my legal.

8         Q.    For your services in

9    documenting this transaction, correct?

10        A.    Yes.

11             MR. LEVINE:   Objection to the

12        leading question.

13        Q.    The next line Reis Sheppe,

14   R-e-i-s-s, S-h-e-p-p-e, $48,500.  Do you

15   recall working with Reiss Sheppe in

16   connection with this transaction?

17        A.    Yes.  There was another

18   attorney Stephen Friedman.

19        Q.    And who is Mr. Friedman

20   representing?

21        A.    I don't recall.

22        Q.    Were you co-counsel with

23   Mr. Friedman?

24             MR. FRANCOEUR:   Objection to

25        form.  You can answer.

Page 51

1               DAVID FLEISCHMANN
2        A.      I'm not sure.
3        Q.      Watermark Associates broker
4   fee, what would those payments be for, if
5   you recall?
6        A.      Probably a mortgage broker fee
7   or a real estate broker fee.
8        Q.      And then there's a number of
9   entities or number of entries, excuse me,
10  IM Insurance Brokerage, Inc. and they
11  included environmental insurance cost,
12  boiler and machinery, liability, property
13  and umbrella. Do you know what those
14  payments would be for?
15       A.      Those usually are for the
16  property, you know, various insurances
17  required by the lender.
18       Q.      Cassin & Cassin, you testified
19  before who that reflects. Would you just
20  remind us?
21       A.      That was lender's counsel.
22       Q.      Law office of Shaul C.
23  Greenwald, Esquire in the amount of
24  $25,000. Do you recall who Mr. Greenwald
25  was representing?

Page 52

1                DAVID FLEISCHMANN

2        A.    I don't.

3        Q.    Corporation Service Company in

4   the amount of $4,000.  Do you know what

5   that would reflect?

6        A.    Usually it's for the

7   independent director services.  There's a

8   requirement of independent directors, so

9   you pay for the services.

10       Q.    Elie Basch, are you familiar

11  with that name?

12       A.    Also a title closer, probably

13  notarized somebody's signature and

14  charged for it.

15       Q.    Vcorp Services, LLC?

16       A.    That's a service that opens up

17  entities, so they probably opened up an

18  entity and charged for their services.

19       Q.    When you say opened up an

20  entity, you mean filing initiating

21  paperwork to form a corporate entity,

22  like a limited liability company or a

23  corporation?

24       A.    Exactly.

25       Q.    And there's two line items

Page 53

1               DAVID FLEISCHMANN

2      Bridgewater Capital Partners, LLC.  Why

3      would they have been receiving payments

4      in connection with this closing?

5           A.    I don't know.

6           Q.    Commonwealth Land Title in the

7      amount of $15,940,000 that was made by

8      the seller. Do you know what that number

9      reflects?

10          A.    I mean, I think that's the

11     balance of the purchase price, and

12     Commonwealth represented -- Commonwealth

13     was the escrow agent for the seller's

14     side of the transaction.

15          Q.    And when you say the purchase

16     price, you are talking about the original

17     $18 million purchase for the property

18     from Novartis?

19               MR. LEVINE:  Objection to

20          form.  Objection to the leading

21          question.

22          A.    Correct.

23          Q.    And then below that there was

24     $13,763,840.88 paid to Cohen, LaBarbera &

25     Landrigan, LLP. Do you know what that

1              DAVID FLEISCHMANN
2   payment reflected?
3        A.      That would be the payment for
4   the RS Old Mill part of the transaction.
5        Q.      If we look at the last two
6   lines, Total Settlement Charges Paid, how
7   much was paid on behalf of the purchaser?
8        A.      It says here $7,536,833.33.
9        Q.      And $30 million was paid on
10  behalf of the seller?
11       A.      That's what it says.
12       Q.      And then there's a net amount
13  due from purchaser. What does that number
14  reflect?
15       A.      Well, since it's in
16  parenthesis it's a credit but it
17  generally would reflect how much the
18  seller -- how much the purchaser has to
19  wire into title to fund the transaction.
20       Q.      If we can turn to the next
21  page of Fleischmann 11, it's identified
22  as Flow of Funds and I apologize for the
23  size of the font.  Hopefully you're able
24  to read it.
25              Have you seen this page

Page 55

1                    DAVID FLEISCHMANN
2    before?
3         A.     I believe so.
4         Q.     Okay. I want to walk through
5    the incoming funds and the outgoing
6    funds.
7              Incoming funds we see an
8    amount of $25,536,833.33. Just for your
9    point of reference, that's the same
10   number that appears on your closing
11   statement at Fleischmann 12, correct?
12        A.     Yes.
13        Q.     Below that is a number of
14   entries, $2.1 million, there are five
15   entries for $2.1 million to what is
16   described as F & Lowy, PLLC and then at
17   the end it says Treff & Lowy, T-r-e-f-f,
18   L-o-w-y, PLLC.  Are you familiar with
19   Treff & Lowy?
20        A.     It's a law firm in Brooklyn.
21        Q.     Do you recall Treff & Lowy's
22   involvement in this transaction?
23        A.     I do not.
24        Q.     You don't know why in excess
25   of $10 million came in from Treff & Lowy,

Page 56

1                    DAVID FLEISCHMANN
2     PLLC?
3          A.     I now know. I did not know at
4     the time.
5          Q.     What do you now know those
6     monies to reflect?
7          A.     I understood it was equity for
8     the purchase.
9          Q.     And the last line in that
10    section Incoming Funds is $2 million from
11    N. Ganz or Simon Ganz, if you look
12    towards the end. Do you know Mr. Ganz?
13         A.     I do not.
14         Q.     Do you know what that $2
15    million incoming wire reflected?
16         A.     I now know that it's equity
17    for the purchase.
18         Q.     This Flow of Funds sheet, it
19    reflects or it reflects multiple
20    descriptions as incoming wire reference
21    number. Are these wire transfer
22    confirmation numbers?
23         A.     It appears that way.
24         Q.     And then outgoing funds, let's
25    just walk through this column.

Page 57

```
 1                 DAVID FLEISCHMANN
 2             The first is a $15 million
 3    payment to Commonwealth Land, and that's
 4    consistent with the number we saw on the
 5    first page of Fleischmann 11, which you
 6    believe or recalled was payment for the
 7    Novartis purchase price.  Just bear with
 8    me one minute.
 9             MR. FRANCOEUR:  Can you read
10        that?
11             THE WITNESS: Yes.
12             MR. GRABLE:  I apologize.
13        Q.    If we can skip down to the
14    fifth line on this document, it's
15    $500,000 payment to the Law Offices of
16    David Fleischmann. Do you see that?
17        A.    I do.
18        Q.    Do you recall why you received
19    a wire of $500,000 in connection with
20    this transaction?
21        A.    I do not.
22        Q.    Would you have banking records
23    related to your receipt of that $500,000
24    transaction?
25        A.    Most likely.
```

Page 58

DAVID FLEISCHMANN

```
1                    DAVID FLEISCHMANN
2         Q.    Is it possible that was a
3    legal fee you received in connection with
4    your work?
5              MR. LEVINE:  Objection to
6         form.  Objection to the leading
7         question.
8         A.    No.
9              (Fleischmann Exhibit 13,
10        Promissory Note, $12,500,000 dated
11        September 5, 2017, was received and
12        marked on this date for
13        identification.)
14             (Fleischmann Exhibit 14,
15        Affidavit of Confession of
16        Judgment, was received and marked
17        on this date for identification.)
18        Q.    Mr. Fleischmann, you've been
19   handed two documents identified as
20   Fleischmann 13 and Fleischmann 14.  Please
21   take a look at those while they go around
22   the room.
23             (Deponent reviews the
24   document.)
25        Q.    Mr. Fleischmann, you have two
```

Page 59

1                    DAVID FLEISCHMANN
2    documents in front of you, the first is
3    identified as Fleischmann 13, which is a
4    Promissory Note in the amount of
5    $12,500,000 dated as of September 5,
6    2017, and the second is Fleischmann 14,
7    which is a related Affidavit of
8    Confession of Judgment.
9              Have you ever seen these
10   documents before?
11        A.    I have not.
12        Q.    Are you familiar with an
13   individual by the name of Michael Bleich?
14        A.    I am not.
15        Q.    You did testify earlier you
16   are familiar with a law firm by the name
17   of Treff & Lowy, correct?
18        A.    Yes.
19        Q.    And we saw that Treff & Lowy
20   wired in in excess of $10 million in
21   connection with this transaction,
22   correct?
23        A.    Yes.
24        Q.    Do these documents at all
25   refresh your recollection as to why Treff

Page 60

1                    DAVID FLEISCHMANN
2    & Lowy would have wired in excess of $10
3    million into Riverside Abstract for
4    purposes of this transaction?
5         A.    No.
6              MR. LEVINE:  Objection, form.
7         Q.    If we go back to Fleischmann
8    11, the Riverside Abstract statement,
9    focusing on the line that says Equity
10   Received By Seller, $12,500,000, do you
11   know whether this Promissory Note and
12   Confession of Judgment, in Fleischmann 13
13   and Fleischmann 14, relate to that
14   $12,500,000 that came into this
15   transaction?
16              MR. FRANCOEUR:  Objection to
17         form. You may want to take a closer
18         look at the document.
19              THE WITNESS: You want to
20         reread the question.
21              (Pending question is read back
22         by the reporter.)
23         A.    I do not know that.
24              (Fleischmann Exhibit 15, Deal
25         Terms, was received and marked on

Page 61

```
1              DAVID FLEISCHMANN
2       this date for identification.)
3              (Fleischmann Exhibit 16,
4       Agreement, dated August 24, 2017
5       was received and marked on this
6       date for identification.)
7              (Fleischmann Exhibit 17,
8       Agreement dated August 31, 2017,
9       was received and marked on this
10      date for identification.)
11             MR. GRABLE:  Let's take a
12      break now.
13             (Recess is taken.)
14      Q.    Mr. Fleischmann, I know we
15  just had a break, but did you have an
16  opportunity to take a look at Fleischmann
17  15, Fleischmann 16 and Fleischmann 17?
18      A.    I have not. I'm doing it now.
19      Q.    Just take a couple of minutes
20  and quickly thumb through those.
21             (Deponent reviews the
22  document.)
23      A.    Okay.
24      Q.    Mr. Fleischmann, for the
25  benefit of counsel, there are three
```

Page 62

```
 1                DAVID FLEISCHMANN
 2   documents, the first Fleischmann 15 has a
 3   heading at the top identified as Deal
 4   Terms, the second is a document that has
 5   the heading -- second document
 6   Fleischmann 16 is a document that has the
 7   heading Agreement and it's dated made
 8   effective August 24, 2017, and
 9   Fleischmann 17 is another document with
10   the heading Agreement dated effective
11   August 31, 2017. None of these documents
12   are fully signed but, nonetheless, I want
13   to speak with you about them.
14             Have you ever seen any of
15   these documents before?
16        A.    I think some of them. I'm not
17   sure which ones, exactly.
18        Q.    Do you recall if you saw them
19   around September, 2017 when the financing
20   transaction closed or at another period
21   of time?
22             MR. FRANCOEUR:  Objection to
23        form. You can answer.
24        A.    Most likely it would have been
25   around the closing, day before type of
```

```
 1              DAVID FLEISCHMANN
 2   thing.
 3        Q.    Are you familiar with --
 4   strike that.
 5              Let's look at Fleischmann 15
 6   for a moment. Looking at the third page
 7   of that document, IG Suffern Partners is
 8   a signatory by Isaac Genuth.  Are you
 9   familiar with that entity?
10        A.    No.
11        Q.    Below that is MY Suffern
12   Partners, it's not signed but it's
13   indicated to be signed by Mark Yunger.
14   Are you familiar with that entity?
15        A.    I don't believe so.
16        Q.    How about Lone Pine Partners
17   Investments, LLC?
18        A.    I recall an entity, I don't if
19   it's this specific name, something with
20   the name Lone Pine, that was involved in
21   this deal.
22        Q.    Do you know who David Salamon
23   is?
24        A.    I do not.
25        Q.    Have you ever heard the name
```

Page 64

```
 1                DAVID FLEISCHMANN
 2   before?
 3        A.    It rings a bell. I don't know
 4   when.
 5        Q.    Do you know who Moshe Stern
 6   is?
 7        A.    Yes.
 8        Q.    And what is your familiarity
 9   with Mr. Stern?
10        A.    I understood that he -- he was
11   directing, I guess, the Salamon side of
12   the transaction.
13              MR. FIVESON:  Could you speak
14        louder, please?
15        A.    Mr. Stern was directing the
16   Salamon side of the transaction.
17        Q.    Who did you consider to be on
18   the Salamon side of the transaction?
19        A.    I would consider my side to
20   be --
21              MR. LEVINE:  Objection to
22        form.
23        A.    -- to be Suffern, Goldie
24   Reisman, Bridgewater, Yunger and Genuth.
25        Q.    And the other side of the
```

Page 65

```
 1            DAVID FLEISCHMANN
 2   transaction, Mr. Stern?
 3        A.    Would be everybody else.
 4        Q.    Would that have included
 5   Yehuda Salamon?
 6        A.    Yes.
 7        Q.    David Salamon?
 8        A.    Yes.
 9        Q.    We saw a name earlier, Avroham
10   Kaufman?
11        A.    Yes.
12        Q.    And you don't recall if Lone
13   Pine Partners was on that side of the
14   transaction as well?
15        A.    I believe it was on their
16   side.
17        Q.    Did you have any role in
18   negotiating this joint venture, for lack
19   of a better word?
20        A.    I was involved in discussions,
21   yes.
22        Q.    Turning to page 1.
23        A.    Which one are you on?
24        Q.    On Fleischmann 15.
25        A.    Okay.
```

Page 66

1              DAVID FLEISCHMANN

2       Q.     There is an indication about

3    two-thirds of the way down, paragraph

4    starts, "Mr. Moshe Stern has $2.5 million

5    initial contribution."  Do you see that?

6       A.     Yes.

7       Q.     And then next line, "All

8    additional capital calls would be the

9    obligation of Mr. Moshe Stern." Do you

10   know what that meant?

11      A.     Without reading the entire

12   document, I could guess. I don't know.

13      Q.     Turning to Fleischmann 16 --

14            MR. LaMONICA:  What is the

15        date of that agreement?

16            MR. GRABLE:  16 is August 24,

17        2017. I apologize. Let's actually

18        go to Fleischmann 17.

19            MR. LEVINE:  Where do you see

20        that? Are you talking about 15?

21            MR. GRABLE:  For

22        clarification --

23            MR. LEVINE:  I thought you

24        were talking about 15.

25            MR. LaMONICA:  15 says Deal

```
1              DAVID FLEISCHMANN
2        Terms and 16 is August 24th.
3              MR. GRABLE:  Correct.
4              MR. LaMONICA:  And 17 is
5        August 3rd.
6              MR. GRABLE:  Correct.
7              MR. LaMONICA:  I want to make
8        sure we're all on the same page.
9        Q.    Let's look at Fleischmann 17,
10   since that one appears to have the most
11   recent date or at least a date.
12              I want to turn to the
13   signature page of this document and it's
14   not numbered, so I apologize. It starts
15   at the top "In witness whereof".  Do you
16   see that?
17        A.    Yes.
18        Q.    So Suffern Partners was to
19   sign by RSOM Corp. and Goldie Reisman.
20   You indicated earlier those were your
21   clients, correct?
22        A.    Yes.
23        Q.    And then the next signature
24   block is RS Old Mills Road, LLC.  Do you
25   see that?
```

Page 68

1                    DAVID FLEISCHMANN
2          A.     Yes.
3          Q.     And below that, Lone Pine
4    Associates, LLC?
5          A.     Yes.
6          Q.     And then RSOM Corp., by Goldie
7    Reisman again.  Do you see that?
8          A.     Yes.
9          Q.     And then below that Cohen
10   LaBarbera & Landrigan, LLP.  Remind us
11   again, what was Mr. Landrigan's role in
12   this transaction?
13         A.     He was counsel for RS.
14         Q.     Turning back one page, at the
15   top it says -- there is a paragraph vi,
16   6, "If to Escrow Agent:  Thomas
17   Landrigan." Do you recall Mr. Landrigan
18   serving as an escrow agent in connection
19   with any part of this transaction?
20         A.     Which transaction? This
21   particular or the Suffern, in general?
22         Q.     The transaction that this
23   agreement that is Fleischmann 17 speaks
24   to.
25         A.     I have to read the agreement

Page 69

```
 1              DAVID FLEISCHMANN
 2   before I could tell you what the
 3   transaction is.
 4        Q.    Do you recall Mr. Landrigan
 5   serving as an escrow agent in connection
 6   with any part of the purchase of the
 7   properties in Suffern?
 8        A.    Yes. He was escrow agent for
 9   RS, to receive their funds and send it
10   out.
11              MR. LEVINE:  I didn't hear
12        that. Sorry.  Could you read it
13        back?
14              (Deponent's answer is read
15        back by the reporter.)
16        Q.    Still on Fleischmann 17, there
17   is a section that's probably the fifth
18   page of the document at the bottom it
19   says Capital Call Procedure, if you could
20   find that for me?
21        A.    Okay.
22        Q.    You're there?
23              MR. LaMONICA:  What page?
24              MR. GRABLE:  It's probably
25        about the fifth page in, and very
```

```
                                        Page 70
 1                    DAVID FLEISCHMANN
 2         close to the bottom says Capital
 3         Call Procedure.
 4              MR. FRANCOEUR:   There's
 5         actually two sections on that. Is
 6         it the one that has initial on the
 7         page 5 or page 6?  Which one are
 8         you looking at?
 9              MR. GRABLE:   Thank you. So
10         there are two references to Capital
11         Call, one is ownership/membership
12         of Suffern/Capital Call Procedure
13         and then the page after that is a
14         iii, Capital Call Procedure.
15         Q.    Do you see that,
16    Mr. Fleischmann?
17         A.    Yes.
18         Q.    So I'm on the iii, Capital
19    Call Procedure.
20         A.    Okay. Thank you.
21         Q.    This reads, "In the event that
22    an expenditure necessitated by a force
23    majeure, managing Member capital call or
24    Lender capital call, which expenditure is
25    not covered by insurance or the Capital
```

Page 71

1                DAVID FLEISCHMANN
2    Expenditure escrow fund or the Tenant
3    Improvement escrow fund, (the 'Capital
4    Call Outlay') such Capital Call Outlay
5    shall be the sole reimbursable
6    responsibility of LPA.  LPA shall have 90
7    days to make the capital call outlay."
8              Do you know what LPA refers?
9         A.    My guess would be Lone Pine
10   Associates.
11        Q.    Do you recall negotiating or
12   were you involved in the negotiation of
13   this document?
14        A.    I believe so.
15        Q.    Do you recall negotiations
16   around this capital call provision?
17        A.    Not particularly.
18        Q.    Turning to the next page there
19   is a heading Liability of Escrow Agent.
20   Do you see that?
21        A.    Yes.
22        Q.    "Cohen, LaBarbera & Landrigan
23   LLP, ('Escrow Agent'), shall act as
24   escrow Agent under this Agreement."
25              Does that help you to remember

1                    DAVID FLEISCHMANN

2    whether or not Mr. Landrigan was serving

3    as an escrow agent in connection with

4    this agreement?

5                    MR. FRANCOEUR:  Objection to

6         form. You can answer.

7                    MR. LEVINE:  Objection, form.

8         A.    According to the documents

9    he's acting as escrow agent. That's what

10   it says. I don't remember it

11   particularly.

12        Q.    Turning to the next page of

13   the document, section 9.5, I just want to

14   confirm who is representing who in this

15   document.

16                    Suffern Partners LLC, you're

17   on notice as their attorney, correct?

18        A.    Yes.

19        Q.    And the same is true of Goldie

20   Reisman, correct?

21        A.    Yes.

22        Q.    RS Old Mill, LLC is

23   Mr. Landrigan, correct?

24        A.    Yes.

25        Q.    LPA, which you understood was

```
 1                DAVID FLEISCHMANN
 2    to be Lone Pine Associates, is care of
 3    Levine & Associates, PC, correct?
 4         A.    Yes.
 5         Q.    And RSOM Corp., again, is you,
 6    Mr. Fleischmann, correct?
 7         A.    Yes.
 8         Q.    And we saw --
 9              MR. PICK:  Sorry.  If you look
10         at the caption it says RS Old Mill
11         and someone wrote in "Mills Road"
12         LLC.
13              MR. GRABLE:  Yes.
14              MR. PICK:  That might have
15         been an error in typing where it
16         says RS Old Mill, LLC.
17              MR. GRABLE:  Thank you,
18         Mr. Pick.
19         Q.    Mr. Fleischmann, going back to
20    the first page of this document, you see
21    there are several references to -- typed
22    references to RS Old Mill, LLC, correct?
23         A.    Yes.
24         Q.    And then they seem to be
25    corrected in hand by RS Old Mills Road,
```

Page 74

1                DAVID FLEISCHMANN

2   LLC. There are two instances on that

3   first page. Do you see that?

4        A.    There is three, yes.

5        Q.    Three. I apologize. Thank you.

6   There are three on that first page. We

7   saw on the signature page earlier there

8   is another correction where it's written

9   in hand RS Old Mills Road, LLC.

10               Do you recall whether there

11  was a change in the structure of the

12  transaction where RS Old Mills Road, LLC

13  came in as an intermediary in this

14  structure?

15       A.    I don't think there was a

16  change. I think that was the plan all

17  along, to have an intervening party.

18       Q.    Do you know whether this

19  agreement in any way relates to the $12.5

20  million that we saw at Fleischmann 13?

21               MR. LEVINE:  Objection, form.

22       A.    I know that today. I didn't

23  know that at the time.

24               MR. FIVESON:  I didn't hear

25       that.

Page 75

1              DAVID FLEISCHMANN
2              (Witness' answer is read back
3         by the reporter.)
4              MR. FRANCOEUR:   Did somebody
5         just join the call?
6              (No response.)
7              (Fleischmann Exhibit 18,
8         e-mail chain, dated September 6,
9         2017 was received and marked on
10        this date for identification.)
11        Q.    We're up to Fleischmann 18.
12   Mr. Fleischmann, I put in front of you an
13   e-mail chain designated as Fleischmann
14   18.   At the top is the name Thomas C.
15   Landrigan.
16             Do you have that in front of
17   you?
18        A.    I do.
19        Q.    I'm going to work from back to
20   forward, since it's an e-mail chain. The
21   first e-mail is from David Fleischmann to
22   Tom Landrigan, dated September 6, 2017 at
23   2:04 p.m.  Do you see that?
24        A.    I do.
25        Q.    Do you recall sending this

Page 76

1                    DAVID FLEISCHMANN
2    e-mail?
3          A.    I do not.
4          Q.    It appears that you are
5    sending wire instructions. Would you
6    agree with that?
7          A.    Yes.
8          Q.    Do you recall why you were
9    sending these wire instructions to
10   Mr. Landrigan on September 6, 2017?
11         A.    I do not.
12         Q.    Above this e-mail is an e-mail
13   from Tom Landrigan, dated September 6,
14   2017 at 3:35 p.m.  It reads as follows:
15   "I am in receipt of wired funds in the
16   amount of $13,763,840.88.  Please confirm
17   that $12,500,000 is to be wired to Treff
18   & Lowy per the below instructions
19   provided by David Fleischmann. Thank you,
20   Tom."
21               Do you see that e-mail?
22         A.    I do.
23         Q.    Were you instructing the wire
24   to be sent to Treff & Lowy by your
25   earlier e-mail?

Page 77

```
 1              DAVID FLEISCHMANN
 2       A.    I don't know.
 3              MR. FRANCOEUR:  Objection to
 4       form. You can answer.
 5       A.    I don't know.
 6       Q.    Looking at the e-mail above
 7  that from an individual named Marty S.
 8  Do you recognize that e-mail address?
 9       A.    I believe it's Marty Stern,
10  but I don't know for sure.
11       Q.    And then the cc, I just want
12  to go through them.  Hopefully you can
13  help us out. Moses40600. Do you know who
14  that is?
15       A.    I don't recall.
16       Q.    Duvis 110?
17       A.    I believe it's David Salamon
18  but it's a guess. I don't know for sure.
19       Q.    Salamonduvid?
20       A.    That's probably David Salamon,
21  I don't know who the other Duvis is. I'm
22  not sure. I'm just going off memory.
23       Q.    Isaac Genuth, Mark Yunger and
24  then David Fleischmann.  You were still
25  on this e-mail chain, correct?
```

Page 78

1              DAVID FLEISCHMANN

2       A.    Yes.

3       Q.    So below that Mr. Landrigan

4  asks the parties to confirm that

5  $12,500,000 needs to be wired to Treff &

6  Lowy. The first e-mail we see Marty S

7  writing "Agreed".

8              MR. LEVINE:   Objection to

9       form.

10      Q.    Correct?

11             MR. LEVINE:   Objection to

12      form.

13      A.    That's what the e-mail says.

14      Q.    And then the e-mail above that

15  that is igenuth@Bridgewater who also

16  writes "Agreed". Do you see that?

17      A.    Yes.

18      Q.    And then above Mr. Genuth is

19  Mark Yunger who also writes "Agreed".  Do

20  you see that?

21      A.    Yes.

22      Q.    And above that is Moses40600

23  also writes "Agreed". Do you see that?

24      A.    Yes.

25      Q.    And lastly, DSalamon who also

Page 79

1              DAVID FLEISCHMANN

2    writes "Agreed". Do you see that?

3         A.    Yes.

4         Q.    And you're on that last e-mail

5    on this e-mail chain, correct?

6         A.    Yeah.

7         Q.    Do you know why Mr. Yunger and

8    Mr. Genuth, Mr. Stern, Mr. Salamon were

9    required to agree to this $12,500,000 to

10   Treff & Lowy?

11              MR. FRANCOEUR:  Objection.

12              MR. LEVINE:  Objection, form.

13        A.    It's likely because of the

14   agreement that the parties had.

15              MR. LEVINE:  Objection. Move

16        to strike.

17              (Fleischmann Exhibit 19,

18        Irrevocable Letter of Direction,

19        dated September 5, 2017 was

20        received and marked on this date

21        for identification.)

22        Q.    Mr. Fleischmann, you have a

23   document in front of you designated

24   Fleischmann 19 with the header

25   Irrevocable Letter of Direction, dated

Page 80

1                    DAVID FLEISCHMANN
2     September 5th, 2017. Do you see that?
3          A.     I do.
4          Q.     Have you ever seen this
5     document before today?
6          A.     Yes.
7          Q.     Did you see this document in
8     or around September, 2017?
9          A.     I don't recall.
10         Q.     Do you recall if you saw this
11    document -- strike that.
12                Do you recall seeing this
13    document in connection with the deal that
14    occurred in September, 2017?
15         A.     Yes.
16         Q.     Did you have any involvement
17    in drafting this document?
18         A.     I'm not sure. I don't
19    remember.
20         Q.     Do you recall why you would
21    have seen this document in September,
22    2017?
23         A.     It would have been in
24    connection with the agreement that you
25    showed me with Lone Pine Associates.

1              DAVID FLEISCHMANN
2         Q.    Looking at the second
3    paragraph that begins with, "The
4    undersigned RS Old Mills RD, LLC", could
5    you read that to yourself for a moment,
6    including the handwritten portion?
7              (Deponent reviews the
8    document.)
9         A.    Okay.
10        Q.    Do you recall a dispute
11   occurring between Suffern Partners, LLC
12   and Lone Pine Associates, LLC as to a 65%
13   equity interest in Suffern Partners, LLC?
14             MR. FRANCOEUR:   Objection to
15        form.
16        A.    I don't think there was a
17   dispute. I think there is an agreement as
18   to what should have happened, which
19   didn't happen and the agreement is over.
20        Q.    And what did you understand
21   that agreement to be?
22        A.    I understood that they
23   would -- "they" as in Mr. Yehuda Salamon,
24   Lone Pine Associates' side of the
25   transaction -- would give $12,500,000 to

Page 82

1                    DAVID FLEISCHMANN

2     my client's side of the transaction to

3     buy an option, to buy into the property

4     for 65% but there were condition

5     precedents for that option being

6     exercised, such as removing Goldie

7     Reisman as guarantor, removing the

8     Brooklyn property and payment of money.

9          Q.    And that interest that they

10    had the option to purchase, that was in

11    Suffern Partners, LLC, correct?

12         A.    I believe so.

13              MR. FIVESON:  Could you read

14         his answer back?

15              (Pending question is read back

16         by the reporter.)

17         Q.    I just want to go back to

18    Fleischmann 13 and 14 for a moment, and

19    you can set that other document aside.

20    We're done with that.

21              MR. LaMONICA:  Sorry, Steve.

22         The numbers, just so I don't get

23         screwed up, the Irrevocable Letter,

24         is that 19?

25              MR. FIVESON:  Yes.

```
 1              DAVID FLEISCHMANN
 2              MR. LaMONICA:  Thank you,
 3        Mr. Fiveson.
 4              MR. FIVESON:  You're welcome.
 5        Q.    If you could also have in
 6   front of you Fleischmann 11, please. Just
 7   for everybody's benefit that's the
 8   Riverside Abstract statement.
 9              MR. LEVINE:  Proposed
10        statement.
11        Q.    Mr. Fleischmann, we've had an
12   opportunity to look at some additional
13   documents now and I want to come back to
14   this $12,500,000 that was indicated as
15   equity received by seller on the
16   Riverside Abstract statement, that's
17   Fleischmann 11, and more importantly,
18   page 2 of that statement that shows the
19   incoming funds, outgoing funds
20   $13,763,840.88 went to Cohen, LaBarbera &
21   Landrigan, LLP.
22              Do you recall if, as we just
23   saw in -- as we just saw in Fleischmann
24   18, do you recall whether that payment
25   covered a $12,500,000 loan that needed to
```

Page 84

1              DAVID FLEISCHMANN

2    be repaid?

3              MR. LEVINE:  Objection to

4         form. Objection to the leading

5         question.

6              MR. FRANCOEUR:  I object to

7         the form too. Can I have the

8         question read back?

9              (Pending question is read back

10        by the reporter.)

11             MR. FRANCOEUR:  Could you

12        clarify which payment you are

13        referring to?

14             MR. GRABLE:  Sure. I

15        apologize. Let me ask the question

16        again.  Could we put Fleischmann 18

17        in front of him too?

18             MR. FRANCOEUR:  Yes.

19        Q.    So I'm trying to understand,

20   Mr. Fleischmann, the $13 million that was

21   paid out to Cohen, LaBarbera & Landrigan,

22   LLP and whether that in some way relates

23   to the e-mail chain at Fleischmann 18,

24   and the direction for Mr. Fleischmann to

25   distribute $12,500,000.

Page 85

1                    DAVID FLEISCHMANN
2                    Do you know if those two
3       numbers are connected in some way?
4                    MR. LEVINE:   Objection to
5           form.
6           A.       I didn't give any direction to
7       distribute money.
8           Q.       I understand you didn't give
9       any direction to distribute money. I'm
10      trying to understand if you know whether
11      or not that $12,500,000 was paid back to
12      a Mr. Bleich out of funds that were
13      delivered to Cohen, LaBarbera &
14      Landrigan?
15                   MR. FRANCOEUR:   Objection to
16          form.
17                   MR. LEVINE:   Objection.
18          A.       It seems that way but I don't
19      know that myself.
20                   MR. LEVINE:   Move to strike.
21          Q.       And looking at Fleischmann 11
22      again, the Riverside statement, the
23      $500,000 payment or wire transfer to your
24      office, has anything we've looked at
25      refreshed your recollection as to what

Page 86

```
 1              DAVID FLEISCHMANN
 2   that wire transfer related to?
 3        A.    It does not.
 4        Q.    Are you still holding $500,000
 5   related to this transaction?
 6        A.    I am not.
 7        Q.    Do you recall what you did
 8   with those monies?
 9        A.    That was sent to Treff & Lowy.
10              MR. LEVINE:  Who?
11              THE WITNESS:  Treff & Lowy.
12        Q.    So you received the $500,000
13   and you distributed it to Treff & Lowy,
14   correct?
15        A.    Correct.
16        Q.    Do you recall why you did
17   that?
18        A.    Pursuant to my client's
19   direction.
20              MR. GRABLE:  I'm just going to
21        take a quick break. I think I'm
22        just about done here. I just want
23        to go over my notes. Thank you.
24              (Recess is taken.)
25              MR. GRABLE:  We're back on the
```

Page 87

```
 1              DAVID FLEISCHMANN
 2      record. So Mr. Fleischmann, I am
 3      closing my examination for the time
 4      being. Thank you, again, for
 5      accommodating us and your counsel
 6      on a short schedule.  We do reserve
 7      all rights to call you back if that
 8      becomes necessary at some point in
 9      time. Thank you.
10  CROSS-EXAMINATION BY MR. LaMONICA:
11      Q.   Mr. Fleischmann, thank you
12  very much.  My name is Salvatore
13  LaMonica.  I'm the attorney for Marianne
14  O'Toole, the Trustee of RS Old Mill, LLC.
15  I thank you for your time today. I just
16  had a few followup questions and I'll go
17  as quickly as I can.
18           Did you produce any documents
19  today in connection with this
20  examination?
21      A.   I did not.
22      Q.   Is there a reason why you did
23  not?
24      A.   I did not believe I was asked
25  to produce document.
```

Page 88

1                    DAVID FLEISCHMANN
2              MR. LaMONICA:  Did you ask for
3         the production of documents?
4              MR. GRABLE:  My subpoena did
5         not request any documents, only
6         testimony.
7         Q.    Okay. Just let me get to --
8    you previously testified that you
9    received $500,000 into your escrow
10   account and you then disbursed it to
11   Treff & Lowy. Do you recall that
12   testimony?
13        A.    Yes.
14        Q.    Do you recall that you
15   mentioned that you did that at the
16   direction of your client?
17        A.    Correct.
18        Q.    Who did you actually have the
19   conversation with?
20        A.    I believe I'd have to check my
21   records.  There is a call from Isaac
22   Genuth.
23        Q.    So Isaac Genuth is your
24   client?
25              MR. FRANCOEUR:  Objection to

Page 89

1                  DAVID FLEISCHMANN

2          form.

3          Q.    Is Isaac Genuth your client?

4                MR. FRANCOEUR:   Let me just

5          make a quick record. To the extent

6          that calls for a legal conclusion,

7          I'll direct him not to answer, but

8          you can tell him what your

9          understanding is as to whether he

10         was one of your clients.

11         A.     Isaac Genuth and Mr. Yunger

12    were working on behalf of Goldie Reisman,

13    as far as the financial details of the

14    transaction.

15         Q.    So did -- what was Goldie

16    Reisman's relationship to Suffern, LLC?

17         A.    I believe she was the 99%

18    owner and the 1% managing member of the

19    1% corporation. She owned the entity. I

20    don't remember the structure.

21         Q.    It was her entity?

22         A.    Yes. Suffern Partners, yes.

23         Q.    Did she -- did she suggest to

24    you that you take direction from Isaac

25    Genuth and Mark Yunger?

Page 90

1                    DAVID FLEISCHMANN

2        A.      That was my understanding,

3   yes.

4        Q.      So during the course of this

5   transaction, in that September, 2017

6   timeframe, you were working with Genuth

7   and Yunger?

8        A.      Correct.

9        Q.      Would you have an objection to

10  producing for me the bank records from

11  your escrow account, of course, redacting

12  everything that doesn't apply to this, to

13  show the transfer to Treff & Lowy?

14              MR. FRANCOEUR:   We'll take it

15       under advisement.

16       Q.      Did you discuss your testimony

17  here today with anybody?

18       A.      With my attorneys.

19       Q.      Other than your attorneys, did

20  you discuss your testimony with any of

21  the parties?

22       A.      I did not.

23       Q.      Did you discuss this with

24  Mr. Landrigan?

25       A.      I did not.

Page 91

1               DAVID FLEISCHMANN

2      Q.     How about Mr. Genuth?

3      A.     I did not.

4      Q.     How about Mr. Yunger?

5      A.     I did not.

6      Q.     I'm going to refer you to

7   what's been marked as Fleischmann 17.

8            MR. FRANCOEUR:   They should be

9      in order.

10     Q.     And you recall that you

11   previously testified about the language

12   there concerning LPA being Lone Pine

13   Associates; is that correct?

14     A.     I believe it to be.

15     Q.     Okay. Did you have any role in

16   the negotiation or drafting of this

17   agreement?

18     A.     I was definitely involved in

19   the discussions.  I don't know if I

20   particularly drafted this agreement.

21     Q.     When you say you were

22   "involved with the discussions", who were

23   you having these discussions with?

24     A.     With my clients, with other

25   attorneys, with Mr. Levine, who is

Page 92

1                    DAVID FLEISCHMANN
2    present today.
3         Q.    Did Mr. Levine draft this
4    document?
5         A.    It's possible.
6         Q.    Well, who could be the
7    possible parties who drafted this? Who
8    are we dealing with? It was you --
9         A.    Me, myself, Mr. Landrigan,
10   Mr. Levine or possibly Stephen Friedman,
11   that's who I would think would be the
12   possible parties that drafted it.
13        Q.    Okay. Now, in your -- in your
14   firm's records would there be documents
15   that you have to show who actually
16   drafted this agreement?
17        A.    Possibly there is an e-mail. I
18   don't know.
19             MR. LaMONICA:  Counsel, would
20        you object to me asking for the
21        production of any e-mails
22        concerning this Fleischmann 17?
23             MR. FRANCOEUR:  We'll take it
24        under advisement.
25        Q.    In connection with the

Page 93

1              DAVID FLEISCHMANN
2   discussion that you referred to, who were
3   you representing in connection with this?
4        A.    Goldie Reisman.
5        Q.    At that time were you
6   representing Genuth?
7              MR. FRANCOEUR:  Objection to
8        form. You can answer.
9        A.    I believe I represented Genuth
10  as to the extent that he was involved in
11  the Goldie Reisman side of the
12  transaction.
13       Q.    Okay. And what is your
14  understanding as to who Mr. Levine was
15  representing?
16       A.    I don't know. I'm not sure
17  about that.
18       Q.    Excuse me?
19       A.    I'm not sure, based on memory.
20  I'd have to go back and look at my
21  e-mails.
22       Q.    So you think your e-mails
23  would refresh your recollection as to who
24  Mr. Levine was negotiating this agreement
25  on behalf of?

Page 94

1               DAVID FLEISCHMANN

2       A.      Likely, yes.

3       Q.      Now, Mr. Grable referred you

4   to a paragraph that's got the heading

5   Capital Call Procedure. Do you remember?

6   That's at the bottom of -- they're not

7   numbered?

8               MR. FRANCOEUR:   6.

9       Q.      Do you see that procedure?

10      A.      Okay.

11      Q.      Then it says, "In the event

12  LPA" -- which is Lone Pine Associates,

13  correct?

14      A.      It's on the first page of the

15  document, it says Lone Pine Associates.

16  With that I'm assuming it's yes.

17      Q.      -- "fails to make the Capital

18  Call Outlay within a 90 day period the

19  parties shall consult with Rabbi

20  Rottenberg who shall direct the parties

21  how to proceed."

22              Do you see that language?

23      A.      I see, yes.

24      Q.      Who is Rabbi Rottenberg?

25  Excuse my ignorance.

1              DAVID FLEISCHMANN
2        A.    I believe he is a rabbi in
3   Monsey somewhere that the parties agreed
4   to act as their leader, arbitrator, some
5   form of that.
6        Q.    Okay.  Do you know if the --
7   do you know what his first name is?
8        A.    I don't remember.
9        Q.    Did you ever have any
10  conversations with the Rabbi?
11       A.    I did.
12       Q.    When did you have those
13  conversations?
14       A.    Around the closing time.
15       Q.    And what was the nature of
16  those conversations?
17       A.    Likely about this agreement.
18       Q.    Was he participating in the
19  negotiations of the terms of the
20  agreement?
21       A.    I believe so.
22       Q.    How could I refresh your
23  recollection so that I can either get a
24  "yes" or "no" answer to that question?
25       A.    I can only go based on memory.

Page 96

1                    DAVID FLEISCHMANN
2     This transaction happened 18 months ago.
3          Q.    Would the Rabbi have e-mailed
4     you?
5          A.    Possibly. Possibly.
6              MR. LaMONICA:  Counsel, can I
7          ask if your client can check his
8          e-mails and provide us copies of
9          any correspondence with Rabbi
10         Rottenberg?
11             MR. FRANCOEUR:  We'll take
12         that under advisement.
13             MR. LaMONICA:  When you say
14         "take it under advisement", what
15         does that really mean?
16             MR. FRANCOEUR:  It means we'll
17         get back to you.
18             MR. LaMONICA:  How long will I
19         have to wait to hear back from you?
20             MR. FRANCOEUR:  When would you
21         like them?
22             MR. LaMONICA:  Tomorrow.
23             MR. FRANCOEUR:  Tomorrow?
24         You'll have to let us go.
25             MR. LaMONICA:  We're all in

1              DAVID FLEISCHMANN

2    court on Wednesday. So tomorrow

3    would be appropriate. If I get them

4    Thursday it's not going to help me

5    on Wednesday.

6          MR. FRANCOEUR:  Hold on a

7    second. Just give me a minute.

8          (Brief recess is taken.)

9          MR. FRANCOEUR:  Counsel, we

10   can get you the bank records right

11   away.  Mr. Fleischmann can call his

12   office like right away. His -- the

13   e-mails for tomorrow is not

14   realistic.  There's tens of

15   thousands of e-mails. So --

16          MR. LaMONICA:  Tens of

17   thousands of e-mails with regard

18   with the Rabbi?

19          MR. FRANCOEUR:  There's tens

20   of thousands of e-mails with regard

21   to this transaction. So finding an

22   e-mail is a needle in a haystack.

23   How many e-mails?

24          THE WITNESS: Probably 60,000 I

25   think I downloaded.

```
1              DAVID  FLEISCHMANN
2              MR.  FRANCOEUR:   60,000.
3              MR.  LaMONICA:   With  this
4         transaction?
5              THE  WITNESS:   Well,  you  do  a
6         search  by  keyword.   So  if  you  do  a
7         search  with  the  clients,  I
8         represent  them  on  other
9         transactions  and  things  like  that,
10        it  automatically  gets  caught  up  in
11        the  middle.   So  it's  hard  to  just
12        print  them  out  and  sort  them.  You
13        have  to  be  over-inclusive  and  one
14        by  one  by  hand  take  them  out.  So  it
15        is  going  to  be,  like,  60,000,  yes.
16             MR.  FRANCOEUR:   We're  happy  to
17        make  a  phone  call  right  now  to  try
18        to  get  the  bank  records  and  have
19        them,  keep  going  with  the
20        questioning,  if  that  makes  sense.
21        I  just  need  a  few  minutes  to  make  a
22        call.
23             MR.  LaMONICA:   Let's  proceed
24        that  way.
25             MR.  FRANCOEUR:   Let's  take
```

Page 99

                    DAVID FLEISCHMANN

1                   DAVID FLEISCHMANN

2        five.

3               (Recess is taken.)

4               MR. FRANCOEUR:  For a quick

5        record, in response to counsel's

6        request for the bank records I'm

7        handing him a two-page document

8        FLEISCHMANN1, FLEISCHMANN2 are the

9        Bates numbers. It's 14 copies. You

10       want to mark it?

11              MR. LaMONICA:  Sure. There's

12       14 copies of the same --

13              MR. FRANCOEUR:  It's all the

14       same thing, just a two-page

15       document, with copies for

16       everybody.

17              MR. LaMONICA:  I'm going to

18       take the original one and mark it

19       as Fleischmann 20.

20              (Fleischmann Exhibit 20,

21       redacted bank record of New York

22       IOLA Trust Account ending in -3806,

23       was received and marked on this

24       date for identification.)

25       Q.   Mr. Fleischmann, I'm going to

1                    DAVID FLEISCHMANN

2    show you what we've now marked as

3    Fleischmann Exhibit 20. I ask you to

4    please look at that.

5         A.    Sure.

6         Q.    Can you please state for the

7    record what this is, Fleischmann Exhibit

8    20?

9         A.    This is a copy of my bank

10   records. It's a -- looks like a page of a

11   bank statement from the IOLA Trust

12   Account.

13        Q.    This is for account ending in

14   -3806?

15        A.    Yes. That is my trust account.

16        Q.    Could you tell me, because

17   it's not readily apparent, what bank this

18   is with?

19        A.    Bank of America. It's Bank of

20   America.

21        Q.    You've redacted certain items

22   but the one item that is not redacted

23   dated September 6, 2017, do you see that?

24        A.    Yes. It's actually two. It's

25   actually two different transactions.

Page 101

1              DAVID FLEISCHMANN

2        Q.     So on page 2 is the wire

3   coming into your IOLA account; is that

4   correct?

5        A.     Yes.

6        Q.     And page 1 is the wire out?

7        A.     Correct.

8        Q.     So is it your testimony here

9   today that this was in connection with

10  the RS Old Mill transaction?

11       A.     It is my testimony that I sent

12  this on the day of the transaction.   I

13  sent it pursuant to my client, Isaac

14  Genuth.

15       Q.     At your client's direction,

16  Isaac Genuth?

17       A.     Yes.

18       Q.     Do you have any idea what this

19  was for?

20       A.     I do now. I don't know if I

21  knew at the time.

22       Q.     When did you come to learn

23  what the purpose of this was for?

24       A.     In connection with this

25  litigation.

Page 102

1                    DAVID FLEISCHMANN

2           Q.     When did this litigation

3      start, that you know of?

4           A.     I don't know, two months ago.

5      When was I served? I don't know.

6           Q.     Let me ask you this, Exhibit

7      17 references Rabbi Rottenberg. Do you

8      know, since the closing in September of

9      '17 until today, whether the Rabbi has

10     been involved in attempting to resolve

11     this?

12          A.     I don't have firsthand

13     knowledge. The clients have mentioned to

14     me that's he's involved but I'm not

15     involved in those conversations.

16          Q.     You have no part in those at

17     all?

18          A.     I did when it was closer to

19     the closing. Since then I am not.

20          Q.     When was that? What time

21     period was that?

22          A.     I would say a week before,

23     week after, maybe couple weeks after

24     closing. After a certain point it dropped

25     out of my radar.

Page 103

```
 1              DAVID FLEISCHMANN
 2      Q.    Do you know if the parties
 3  were proceeding in the Rabbinical Court?
 4      A.    Not to my knowledge.
 5      Q.    Do you know who would know the
 6  answer to that?
 7      A.    The clients.
 8      Q.    Your clients, Mr. Genuth?
 9      A.    Probably.
10      Q.    I'm going to show you, please
11  look once again at Exhibit 17. I am
12  directing you to the page that talks
13  about the giving of notices in paragraph
14  9.5.
15      A.    Okay.
16      Q.    Now, it says at the bottom of
17  the page that notices to RSOM were to go
18  to you and Mr. Levine.
19      A.    Okay.
20      Q.    Could you please explain to me
21  why you were both representing the same
22  parties?
23            MR. FRANCOEUR:  Objection to
24      form. You can answer.
25      A.    We were not both representing
```

Page 104

1              DAVID FLEISCHMANN
2    the same parties. I believe, I'm only
3    guessing based on my expectation, is that
4    pursuant to this agreement should the
5    option go through he would represent --
6    Mr. Levine would represent a certain
7    percentage of the ownership and would
8    want to have notice in the event there is
9    any defaults, but I don't believe he
10   represents this entity.
11        Q.   So he -- at the time he didn't
12   but this was in anticipation of the --
13        A.   This agreement being executed
14   and all the condition precedents being,
15   you know, completed.
16        Q.   Okay.  Could you please look
17   at that Riverside Abstract, Exhibit 11.
18   You see the entry at the top where it
19   says Transaction Summary?
20        A.   Which page?
21             MR. FRANCOEUR:  Are you
22        looking at the same thing?
23             MR. LaMONICA:  Exhibit 11.
24        A.   Yes. Okay.
25        Q.   Could you tell me where on

Page 105

```
1                DAVID FLEISCHMANN
2    this transaction the $500,000 that you
3    received is shown?
4         A.    I don't see it here.
5         Q.    Is there a reason why?
6         A.    I don't know.
7         Q.    I'm going to ask you to look
8    at Exhibit 12 and ask you to point to me
9    where on Exhibit 12 the $500,000 that you
10   received is disclosed?
11        A.    I don't see it here.
12        Q.    Did you prepare this Exhibit
13   12?
14        A.    My office prepared it, yes.
15        Q.    Is there a reason why it's not
16   disclosed?
17        A.    My guess would be that it's
18   not part of the Suffern Partners primary
19   transaction. This has to do with the
20   purchase of the property. I don't know if
21   the $500,000 has to do with the purchase
22   of the property.
23        Q.    Was it a requirement of the
24   lender that the borrower show equity in
25   the transaction?
```

Page 106

1              DAVID FLEISCHMANN

2              MR. FRANCOEUR:  Objection to

3       form. You can answer.

4       A.     I don't recall anything in the

5    loan agreement stating that.

6       Q.     Other than the loan

7    agreements, were you aware of any

8    requirement by the lender that there be

9    an equity of $12.5 million?

10      A.     I recall e-mails the day --

11   days leading up to closing asking where

12   the money is to close the transaction.

13      Q.     From who?

14      A.     From all parties, including

15   lender's counsel.

16      Q.     So the lender's counsel was

17   looking for $12,500,000 to be on deposit?

18      A.     I don't know -- I don't

19   remember exactly the details of the

20   e-mails but I believe they were looking

21   for the money to close the transaction.

22   The money was needed to close. There

23   wasn't enough money to close without

24   $12,500,000.  So we want to close, where

25   is the money? That's what I recall the

```
 1                 DAVID FLEISCHMANN
 2   nature of the conversation being.
 3        Q.    And who provided that money,
 4   do you know?
 5        A.    I know it now from what was
 6   shown today, but I didn't prior.
 7        Q.    You had no idea at the time of
 8   the closing where it came from?
 9        A.    I did not know, no.
10        Q.    If you look at the Transaction
11   Summary --
12             MR. FRANCOEUR:  Which
13        document, counsel?
14             MR. LaMONICA:  Back to Exhibit
15        11.
16        Q.    -- it says Equity Received By
17   Seller.  Do you see that $12.5 million?
18        A.    Yes.
19        Q.    Did the seller actually
20   receive that money?
21        A.    I believe there was a wire to
22   Tom Landrigan, that is counsel for
23   seller.
24        Q.    Do you know who the owners of
25   Riverside Abstract are?
```

Page 108

```
 1                  DAVID FLEISCHMANN
 2         A.    It's an individual Shaul
 3    Greenwald and somebody Mr. Siegelbaum, as
 4    far as I know. There could be other
 5    partners but those two I know.
 6         Q.    Do you have any interest in
 7    Riverside Abstract?
 8         A.    I do not.
 9         Q.    You mentioned Shaul Greenwald?
10         A.    Yes.
11         Q.    Is that the same person that
12    received proceeds of this transaction?
13         A.    Most likely.
14         Q.    Why would they individually be
15    getting money from this transaction,
16    $25,000?
17         A.    I don't know.
18         Q.    So looking at Exhibit 11,
19    where -- page 2, where it says Outgoing
20    Funds, is that -- is that $25,000
21    transfer -- do you see that, about --
22         A.    Yes.
23         Q.    -- ten down, wire transfer to
24    Shaul Greenwald?
25         A.    Yes.
```

Page 109

1                    DAVID FLEISCHMANN
2          Q.     Do you have any idea why he
3     was receiving any of the proceeds?
4          A.     I don't.
5          Q.     Do you know if any of the
6     other parties to this transaction have an
7     interest in Riverside Abstract?
8          A.     Not to my knowledge.
9          Q.     Do you deal with him often?
10         A.     Sometimes.  They're a mix of
11    many companies.
12         Q.     I'm going to show you what we
13    marked as Exhibit 19. Do you know who
14    prepared Exhibit 19?
15         A.     I do not.
16         Q.     Did you have any involvement
17    in reviewing it and approving it before
18    your client, Ms. Reisman, signed it?
19         A.     I don't recall specifically
20    this document. It was definitely in
21    contemplation of the overall discussions.
22    I don't know if I specifically reviewed
23    this, approved this.  I don't know the
24    answer.
25         Q.     Do you recall the first time

1                 DAVID FLEISCHMANN

2    you had a discussion, if any, about this?

3         A.    About the option agreement?

4    Probably a week before closing, few days

5    before closing, sometime in the period

6    right before it.

7         Q.    Can you, in your own words,

8    give me a description of what the option

9    agreement was?

10        A.    The option agreement was for

11   Lone Pine, or whoever the members,

12   entities were, to have the right to take

13   ownership 65% of the property provided

14   that certain condition precedents were

15   met; first one being payment of money,

16   number one; number two is removal of the

17   Brooklyn North 14th property as

18   collateral; and number three was to

19   remove Goldie Reisman as lender and get

20   themselves approved as the lender's new

21   guarantor.

22        Q.    So if Lone Pine --

23        A.    Right, whoever that is.

24        Q.    -- whoever that is, would be

25   able to meet those three conditions

```
 1              DAVID FLEISCHMANN
 2    precedent, they could then get 65% of the
 3    equity of Suffern Partners?
 4         A.    Of the membership interest,
 5    yes.
 6         Q.    Membership interest.  Do you
 7    know if that ever came true?
 8         A.    To my knowledge, it did not.  I
 9    know that Goldie Reisman is still
10    guarantor today.  So it couldn't possibly
11    happen.
12         Q.    How do you know that she's
13    still the guarantor today?
14         A.    Because there is an active
15    litigation against her as guarantor.
16         Q.    There is an active litigation?
17         A.    Yes.
18         Q.    Who brought that?
19         A.    CPIF.
20         Q.    CPIF has sued her as the
21    guarantor?
22         A.    Yes.
23         Q.    How do you know?
24         A.    I get notices.
25         Q.    You get notices from the
```

Page 112

```
 1              DAVID FLEISCHMANN
 2   lender?
 3        A.    Yes.  From litigation, yes.
 4        Q.    Are you the attorney of record
 5   in the foreclosure action or the action
 6   against Reisman or under the loan
 7   documents?
 8        A.    Just under the loan
 9   agreements, I get notice pursuant to loan
10   documents. I'm not an attorney for any
11   party at this time.
12        Q.    Back on the Exhibit 12, which
13   is the Riverside Abstract Closing
14   Statement referencing --
15             MR. FRANCOEUR:  It's 11,
16        counsel.
17             MR. LaMONICA:  Sorry.
18             MR. FRANCOEUR:  That's all
19        right.
20        Q.    Page 2 talks about Outgoing
21   Funds. Actually, page 3 is a lot bigger.
22             MR. GRABLE:  I realized that
23        after the fact. I apologize.
24        Q.    Do you see the $48,500
25   disbursement to Reiss Sheppe?
```

```
                                    Page 113

1                DAVID FLEISCHMANN

2         A.     I do.

3         Q.     Third page.  It's the same, I

4   think, but it's bigger. It doesn't strain

5   my eyes.

6                Do you know the reason why

7   Reiss Sheppe got paid any money?

8         A.     They were involved in the

9   acquisition. They were -- I'm refraining

10  from calling them co-counsel but they

11  were involved in the transaction

12  throughout.

13        Q.     Okay. Who there were you

14  dealing with?

15        A.     With Stephen Friedman.

16        Q.     Mr. Friedman.  And do you know

17  who he represented?

18        A.     I don't recall, if any.

19        Q.     How can we refresh your

20  recollection as to who he was to this

21  transaction?

22        A.     I'd have to go back to the

23  e-mails.

24                MR. LaMONICA:  Can I ask those

25        e-mails also be produced.
```

```
1              DAVID FLEISCHMANN
2              MR. FRANCOEUR:  Sure. We'll
3       take that under advisement.
4         Q.    Do you know if Mr. Friedman
5    had any relationship to Lone Pine?
6         A.    I don't know.
7         Q.    At the time of the transaction
8    in September of 2017 were you aware that
9    RS Old Mill was in bankruptcy?
10        A.    I was.
11        Q.    And did you ever inquire as to
12   the status of the creditors of RS Old
13   Mill?
14        A.    There were discussions with
15   various counsels as far as what to do as
16   far as there being a bankruptcy. We came
17   to the conclusion that there was a
18   Consent Order filed the day of or before
19   closing, I don't know exactly, around the
20   closing, by all creditors that they were
21   paid in full. So we understood that it
22   was okay to move forward.
23        Q.    Did you ever inquiry if, in
24   fact, those creditors were paid?
25        A.    I was not -- I was not
```

1                   DAVID FLEISCHMANN

2    involved in the bankruptcy, no.

3         Q.    Who did you have these

4    discussions with?

5         A.    I definitely had it for

6    bankruptcy counsel for RS with Tom

7    Landrigan, there was somebody, Heidi, I

8    don't know her name.

9         Q.    Does Heidi Sorvino ring a

10   bell?

11        A.    It sounds correct. I don't

12   remember offhand.

13        Q.    Anybody else?

14        A.    That's all I can recall.

15        Q.    Who was Heidi Sorvino

16   representing?

17        A.    I don't recall. I believe the

18   RS Old Mill side of the bankruptcy, but

19   just going off memory.  I'm not sure.

20             MR. LaMONICA:  I'm going to

21        take a five minute recess. We'll

22        come back and finish up.

23             MR. FRANCOEUR:  Okay.

24             (Recess is taken.)

25        Q.    I'm going to refer you back

1                 DAVID FLEISCHMANN

2    again to Fleischmann Exhibit 17, which is

3    the agreement dated August 31st.

4                 You previously talked about

5    the fact that there was handwritten

6    changes on the front page?

7         A.    There are, yes.

8         Q.    Okay. And it was changed from

9    RS Old Mill, LLC to RS Old Mills Road,

10   LLC, correct?

11        A.    It seems that way, yes.

12        Q.    Do you know who actually made

13   these handwritten changes?

14        A.    I don't.

15        Q.    Did you see a version of this

16   that did not have those changes?

17        A.    I don't know. I don't recall.

18        Q.    Did you have any discussions

19   with any of the parties to this agreement

20   regarding those handwritten changes?

21        A.    I don't recall.

22        Q.    I'm going to show you a

23   document -- I don't have copies, so I'm

24   going to show you a document that I'm

25   going to call Declaration of Isaac

```
 1              DAVID FLEISCHMANN
 2   Genuth. I don't have copies for
 3   everybody.
 4              MR. FRANCOEUR:  Would you like
 5        copies made?
 6              MR. LaMONICA:  I don't think
 7        it's necessary unless everybody
 8        else wants to see it.
 9              MR. LEVINE:  Can I have the
10        date of it?
11              MR. FRANCOEUR:  July 14, 2019.
12              MR. FIVESON:  Filed in this
13        case?
14              MR. FRANCOEUR:  RS Old Mills
15        22218.
16              MR. LaMONICA:  Give it back.
17        I don't need to document it.
18        Q.    Are you aware that Isaac
19   Genuth filed a declaration, submitted to
20   me as counsel to the Trustee, a
21   declaration waiving an attorney-client
22   privilege?
23        A.    Yes.
24        Q.    Are you aware that Mr. Yunger
25   submitted almost the exact -- to me
```

Page 118

1              DAVID FLEISCHMANN
2    almost the exact same document?
3        A.    I am, yes.
4        Q.    So in those documents they
5    reference that you served as
6    Bridgewater's attorney; is that correct?
7              MR. FRANCOEUR:  Objection to
8        form. You can answer.
9        A.    I was not involved in the
10   negotiation of that. I left it to my
11   attorneys and we actually discussed this
12   today.  My gut is they probably just copy
13   and pasted the form that Suffern Partners
14   filed. I don't believe that's
15   intentional.
16       Q.    Sitting here today, did you
17   represent Bridgewater?
18       A.    In this transaction I
19   represented Bridgewater to the extent
20   they were Goldie Reisman's agent, actor,
21   but not individually.  I do not believe
22   so. I have in other transactions, yes.
23       Q.    So as you sit here today, you
24   represented Bridgewater in other
25   transactions other than the RS Old Mill,

```
1                DAVID FLEISCHMANN
2    LLC transaction?
3         A.    Correct.
4         Q.    Okay. Have you ever
5    represented Mr. Genuth individually as
6    his personal attorney?
7         A.    Not that I recall.
8         Q.    All right. Same question with
9    regard to Mark Yunger, have you ever
10   represented Mr. Yunger in his individual
11   capacity?
12             MR. FRANCOEUR:  Objection to
13        form. You can answer.
14        A.    I don't think so.
15        Q.    Ms. Reisman also waived --
16   submitted a declaration to me regarding
17   North 14th Street and herself,
18   personally, waiving the attorney-client
19   privilege. Are you aware of that, sir?
20        A.    Yes.
21        Q.    Other than in connection with
22   this transaction, have you ever
23   represented North 14th Street LLC?
24        A.    I'm not sure. There might have
25   been a refinance but I'm not sure.  Prior
```

Page 120

```
 1              DAVID FLEISCHMANN
 2  to this, but I don't recall offhand.
 3       Q.    Have you ever represented
 4  Goldie Reisman, other than in connection
 5  with this RS Old Mill transaction?
 6       A.    Yes.
 7       Q.    In one or two other matters?
 8  Ten matters?  15? How many?
 9       A.    I would say under five.
10       Q.    Under five?
11       A.    Yes.
12       Q.    But you've done other -- were
13  they real estate transactions?
14       A.    Yes.
15       Q.    Are you aware that Moses
16  Reisman has submitted to me a declaration
17  waiving the attorney-client privilege?
18       A.    I am.
19       Q.    Who is Moses Reisman?
20       A.    He's Mrs. Reisman's husband.
21       Q.    Husband. Okay. And have you
22  represented Mr. Reisman in the past,
23  other than, I should say, with regard to
24  the RS Old Mill?
25       A.    I believe so.
```

Page 121

1          DAVID FLEISCHMANN

2     Q.    You believe so. Do you have

3  any recollection of whether this was five

4  or ten or fifteen transactions?

5     A.    Much less.  With him, maybe

6  once or two, maybe. I'm not even sure, if

7  at all.

8     Q.    Do you currently know who the

9  members are of Suffern Partners, LLC?

10          MR. FRANCOEUR:  Does he know

11     who the current members are?

12          MR. LaMONICA:  That's correct.

13          MR. FRANCOEUR:  Today who are

14     the members?

15     A.    I know from the court record

16  that Mr. Lefkowitz has signed on behalf

17  of Suffern, the last I know Goldie

18  Reisman was the 99% member and the

19  manager of the 1% corporation. I don't

20  know when that transition happened or who

21  was involved, aside from Mr. Lefkowitz.

22     Q.    Okay.  So that was my next

23  question.  Did you have anything -- any

24  role at all in connection with the

25  transfer of the equity interest of

Page 122

1                    DAVID  FLEISCHMANN
2    Suffern Partners, LLC?
3          A.     To Mr. Lefkowitz, no.
4          Q.     Do you know Mr. Lefkowitz?
5          A.     I do not.
6          Q.     Have you ever represented
7    Mr. Lefkowitz.
8          A.     I do not believe so.
9          Q.     Why is that "I do not believe
10   so" and the prior answer was "I did not"?
11         A.     I have five attorneys that
12   work for me.  I probably have 400 clients
13   and they all have similar names.  If I
14   run a conflict search on the name
15   Lefkowitz I might come up with 15 people,
16   so I can't tell you for sure.
17         Q.     It's like Smith, right?
18         A.     Exactly.
19         Q.     Okay.  Were you involved at
20   all in the transaction where Bridgewater
21   Capital purchased 30 or -- Bridgewater
22   Capital and Goldie Reisman purchased a
23   39-acre site on Staten Island?
24         A.     The transaction sounds
25   familiar. I don't think I represented

1               DAVID FLEISCHMANN
2    them in the purchase, possibly on the
3    refinance of it.
4         Q.    Were the same parties, Yunger,
5    Genuth and Ms. Reisman, involved in that?
6         A.    They were for sure, yes.
7         Q.    They were?
8         A.    There might have been others
9    but definitely those were.
10        Q.    How about Bridgewater Capital
11   Partners?
12        A.    I don't know if Yunger and
13   Genuth used that name or them,
14   individually.  They were involved. I
15   don't know which entity they used.
16        Q.    All right. So you were
17   involved in that in one way?
18        A.    I was involved in a
19   transaction. I don't know if it was the
20   purchase.
21        Q.    When you say you don't know,
22   does that mean you don't recall or --
23        A.    I don't recall. I definitely
24   handled a transaction related to that
25   property.  It's possible it was a

Page 124

1              DAVID FLEISCHMANN
2    purchase.  It was possibly a refinance.
3    There were a lot of options.  I don't
4    know.
5        Q.    How can we get you to refresh
6    your recollection?
7        A.    I have to search my records.
8              MR. LaMONICA:  Can I ask
9         counsel that you provide that to
10        us?
11             MR. FRANCOEUR:  I'll take that
12        under advisement. Yes.
13             MR. LaMONICA:  Thank you.  I
14        think I'm done with my questions. I
15        thank you for your time and I
16        appreciate that.
17             THE WITNESS:  Thank you.
18             MR. LEVINE:  I have some
19        cross-examination as well.
20             MR. GRABLE:  We object to
21        Mr. Levine asking any questions.
22        We are under court that allows
23        myself, Mr. Grable and the Chapter
24        7 Trustee to --
25             MR. LEVINE:  Mr. Fleischmann,

```
 1            DAVID FLEISCHMANN
 2      my name is --
 3            MR. GRABLE:  Excuse me.  One
 4      person at a time, Mr. Levine.  I'd
 5      like to make my record.
 6            We're under court order that
 7      allows myself, Mr. Grable, as well
 8      as the Chapter 7 Trustee to take
 9      this deposition of Mr. Fleischmann.
10      That deposition is concluded. We
11      are done. The Trustee has indicated
12      they are done and we are closing
13      the record. Thank you,
14      Ms. Reporter.
15            MR. LEVINE:  My name is
16      Michael Levine. I am representing
17      RS Old Mill and Yehuda Salamon --
18            MR. FRANCOEUR:  Ms. Reporter,
19      we're closed. This is not
20      transcribed.
21            MR. LEVINE:  Let the record
22      reflect the reporter has been
23      instructed to close the record,
24      despite my request for
25      cross-examination.
```

Page 126

1                    DAVID  FLEISCHMANN

2                    (The  proceedings  were

3       adjourned  at  4:30  p.m.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 127

1

2   STATE OF _____ )

3                                    )   :ss

4   COUNTY OF _____)

5

6

7            I, DAVID FLEISCHMANN, the witness

8   herein, having read the foregoing

9   testimony of the pages of this deposition,

10  do hereby certify it to be a true and

11  correct transcript, subject to the

12  corrections, if any, shown on the attached

13  page.

14

15                    _____

16                         DAVID FLEISCHMANN

17

18

19

20  Sworn and subscribed to before me,

21  this _____ day of _____, 2019.

22

23  _____

24         Notary Public

25

Page 128

```
 1              C E R T I F I C A T E
 2           I, MAUREEN M. RATTO, a
 3    Registered Professional Reporter, do
 4    hereby certify that prior to the
 5    commencement of the examination, David
 6    Fleischmann was sworn by me to testify
 7    the truth, the whole truth and nothing
 8    but the truth.
 9           I DO FURTHER CERTIFY that the
10    foregoing is a true and accurate
11    transcript of the proceedings as taken
12    stenographically by and before me at
13    the time, place and on the date
14    hereinbefore set forth.
15           I DO FURTHER CERTIFY that I am
16    neither a relative nor employee nor
17    attorney nor counsel of any of the
18    parties to this action, and that I am
19    neither a relative nor employee of such
20    attorney or counsel, and that I am not
21    financially interested in this action.
22
23
24           MAUREEN M. RATTO, RPR
25           License No. 817125
```

```
                                        Page 129
1               I N D E X
2      WITNESS: DAVID FLEISCHMANN          7
3      DIRECT EXAMINATION BY MR. GRABLE 7
4      CROSS-EXAMINATION BY              87
5      MR. LaMONICA
6           .
7               E X H I B I T S
8      Exhibit 1, Agreement              18
9      of Sale, dated November 28,
10     2016,
11     Exhibit 2, Agreement              18
12     of Assignment, dated November
13     29, 2016
14     Exhibit 3, Contract              18
15     of Sale
16     Exhibit 4, Bargain              25
17     and Sale Deed from Novartis
18     Corporation to RS Old Mill, LLC,
19     September 1, 2017,
20     Exhibit 5, Bargain              25
21     and Sale Deed from RS Old Mill,
22     LLC to RS Old Mills RD LLC,
23     dated as of September 5, 2017,
24     Exhibit 6, Bargain              26
25     and Sale Deed from RS Old Mills
```

Page 130

```
 1     RD, LLC to Suffern Partners LLC,
 2     September 5, 2017,
 3     Exhibit 7, Loan                    31
 4     Agreement, September 6, 2017,
 5     between CPIF Lending LLC,
 6     Suffern Partners, LLC and North
 7     14th Street Realty Associates,
 8     LLC,
 9     Exhibit 8, Amended                 31
10     Restated and Consolidated
11     Promissory Note,
12     Exhibit 9, Amended                 31
13     Restated and Consolidated
14     Mortgage Assignment of Leases
15     and Rents, Security Agreement
16     and Fixture Filing,
17     Exhibit 10, Closing                35
18     Escrow Agreement, dated
19     September 1, 2017,
20     Exhibit 11,                        38
21     Riverside Abstract Closing
22     Statement,
23     Exhibit 12, DF                     38
24     Closing Statement,
25     Exhibit 13,                        58
```

Page 131

1      Promissory Note, $12,500,000

2      dated September 5, 2017,

3      Exhibit 14,                           58

4      Affidavit of Confession of

5      Judgment,

6      Exhibit 15, Deal                      60

7      Terms,

8      Exhibit 16,                           61

9      Agreement, dated August 24, 2017

10     Exhibit 17,                           61

11     Agreement dated August 31, 2017,

12     Exhibit 18, e-mail                    75

13     chain, dated September 6, 2017

14     Exhibit 19,                           79

15     Irrevocable Letter of Direction,

16     dated September 5, 2017

17     Exhibit 20, redacted                  99

18     bank record of New York IOLA

19     Trust Account ending in -3806,

20

21

22

23

24

25

Page 132

1                    INSTRUCTIONS TO WITNESS

2

3        Please read your deposition over carefully

4   and make any necessary corrections. You should state

5   the reason in the appropriate space on the errata

6   sheet for any corrections that are made.

7        After doing so, please sign the errata sheet

8   and date it.

9        You are signing same subject to the changes

10  you have noted on the errata sheet, which will be

11  attached to your deposition.

12       It is imperative that you return the original

13  errata sheet to the deposing attorney within thirty

14  (30) days of receipt of the deposition transcript by

15  you. If you fail to do so, the deposition transcript

16  may be deemed to be accurate and may be used in court.

17

18

19

20

21

22

23

24

25

Page 133

```
1                    E R R A T A
2
3
4
5          I wish to make the following changes,
6       for the following reasons:
7
8       PAGE LINE
9       ____  ____  CHANGE:_____
10      REASON:_____
11      ____  ____  CHANGE:_____
12      REASON:_____
13      ____  ____  CHANGE:_____
14      REASON:_____
15      ____  ____  CHANGE:_____
16      REASON:_____
17      ____  ____  CHANGE:_____
18      REASON:_____
19
20      _____      _____
           DAVID FLEISCHMANN                  DATE
21
22      SUBSCRIBED AND SWORN TO BEFORE
23      ME THIS ____DAY OF_____, 201 .
24
25      _____        _____
        NOTARY PUBLIC                 COMMISSION EXPIRES
```

[& - 2a]

| & |
| --- |
| **&**  2:5 3:4,13 4:5 4:14 5:4 6:5,15 7:8 28:18 35:19 51:18 53:24 55:16 55:17,19,21,25 59:17,19 60:2 68:10 71:22 73:3 76:18,24 78:5 79:10 83:20 84:21 85:13 86:9,11,13 88:11 90:13 |

| 1 |
| --- |
| **1**  18:7 19:7,23 24:10 25:20 26:21 35:23 36:4 65:22 89:18,19 101:6 121:19 129:8,19 130:19 |
| **1,338,936.72.** 48:19 |
| **10**  35:21 36:3 39:7 55:25 59:20 60:2 130:17 |
| **10005**  5:14 |
| **10017**  2:7 3:15 4:16 5:6 |
| **10022**  3:6 |
| **10583**  6:7 |
| **11**  38:5,13,16 39:4 39:15 45:12,15 46:23,24 47:9 54:21 57:5 60:8 83:6,17 85:21 104:17,23 107:15 108:18 112:15 130:20 |
| **110**  77:16 |
| **11210**  11:22 |

**11793**  4:7
**12**  38:9,14,21 39:15,24 40:2 43:14 44:14 45:5 45:13 46:21,22 55:11 105:8,9,13 112:12 130:23
**12,500,000**  41:8 58:10 59:5 60:10 60:14 76:17 78:5 79:9 81:25 83:14 83:25 84:25 85:11 106:17,24 131:1
**12.5**  74:19 106:9 107:17
**13**  58:9,20 59:3 60:12 74:20 82:18 84:20 130:25
**13,763,840.88** 53:24 83:20
**13,763,840.88.** 76:16
**14**  58:14,20 59:6 60:13 82:18 99:9 99:12 117:11 131:3
**149,298.72.**  49:3
**14th**  15:19 17:7 31:13 32:12 35:8 46:15 110:17 119:17,23 130:7
**15**  1:14 6:6 57:2 60:24 61:17 62:2 63:5 65:24 66:20 66:24,25 120:8 122:15 131:6
**15,940,000**  53:7
**150**  2:5 3:14
**16**  19:18 23:8 61:3 61:17 62:6 66:13 66:16 67:2 131:8

**17**  61:7,17 62:9 66:18 67:4,9 68:23 69:16 91:7 92:22 102:7,9 103:11 116:2 131:10
**17-22218**  1:8
**17425**  128:23
**18**  20:20,23 23:13 53:17 75:7,11,14 83:24 84:16,23 96:2 129:8,11,14 131:12
**19**  30:13 79:17,24 82:24 109:13,14 131:14
**1:00**  1:15

| 2 |
| --- |
| **2**  18:11 21:23 24:10,25 33:24 56:10,14 83:18 101:2 108:19 112:20 129:11 |
| **2.1**  55:14,15 |
| **2.2**  20:16 |
| **2.3**  21:4 |
| **2.5**  21:5 24:14 66:4 |
| **20**  99:19,20 100:3 100:8 131:17 |
| **201**  133:23 |
| **2016**  18:9,13 19:8 19:13,18 20:8,11 22:4 23:8 37:15 129:10,13 |
| **2017**  16:24 25:20 26:2,8,21,25 27:6 31:11 32:11,21 34:2 35:23 36:5 37:8,23 58:11 59:6 61:4,8 62:8 |

62:11,19 66:17
75:9,22 76:10,14
79:19 80:2,8,14,22
90:5 100:23 114:8
129:19,23 130:2,4
130:19 131:2,9,11
131:13,16
**2019**  1:14 117:11 127:21
**2100**  5:13
**212**  3:7,16 4:17 5:7,15
**22218**  117:15
**2233**  11:20
**232-1305**  5:15
**24**  61:4 62:8 66:16 131:9
**24th**  67:2
**25**  30:13 45:20 129:16,20
**25,000**  51:24 108:16,20
**25,536,833.33** 44:15,23
**25,536,833.33.** 43:18 55:8
**25,799**  45:23
**25,799,000**  42:19 43:2 44:24
**26**  129:24
**262,166.67**  44:23
**27,500,000**  24:15
**28**  18:9 19:8 129:9
**29**  18:13 22:4 129:13
**29th**  19:12
**2:04**  75:23
**2a**  36:10

[3 - agreed]

| 3 |
| --- |
| **3**  18:16 19:15 23:6 |
| 33:23 36:9 112:21 |
| 129:14 |
| **30**  24:16,23 28:9 |
| 40:19 54:9 122:21 |
| 132:14 |
| **31**  61:8 62:11 |
| 130:3,9,12 131:11 |
| **31st**  116:3 |
| **32**  21:10 |
| **33**  33:9 42:10 |
| **3305**  4:6 |
| **35**  34:15 130:17 |
| **369**  5:5 |
| **38**  130:20,23 |
| **3806**  99:22 100:14 |
| 131:19 |
| **39**  122:23 |
| **3:35**  76:14 |
| **3rd**  67:5 |

| 4 |
| --- |
| **4**  20:15 25:17 |
| 26:18 28:10,15 |
| 129:16 |
| **4,000**  52:4 |
| **4.8**  47:19 |
| **40,000**  50:5 |
| **400**  122:12 |
| **42nd**  2:6 3:14 |
| **45th**  4:15 |
| **478-7400**  3:7 |
| **48,500**  50:14 |
| 112:24 |
| **488**  3:5 |
| **490-3000**  3:16 |
| **4:30**  126:3 |

| 5 |
| --- |
| **5**  25:23 26:2,8,22 |
| 26:25 27:6 29:6 |
| 58:11 59:5 70:7 |
| 79:19 129:20,23 |
| 130:2 131:2,16 |
| **500,000**  57:15,19 |
| 57:23 85:23 86:4 |
| 86:12 88:9 105:2 |
| 105:9,21 |
| **516**  4:8 |
| **58**  130:25 131:3 |
| **59**  30:15 |
| **5th**  80:2 |

| 6 |
| --- |
| **6**  26:5 27:2 29:18 |
| 31:11 32:11,21 |
| 34:2 68:16 70:7 |
| 75:8,22 76:10,13 |
| 94:8 100:23 |
| 129:24 130:4 |
| 131:13 |
| **60**  131:6 |
| **60,000**  97:24 98:2 |
| 98:15 |
| **600-4288**  6:8 |
| **61**  131:8,10 |
| **615-2200**  4:17 |
| **65**  81:12 82:4 |
| 110:13 111:2 |
| **695-6007**  5:7 |

| 7 |
| --- |
| **7**  4:3 8:5,8 10:16 |
| 10:24 11:5 16:2 |
| 31:10 32:8,10 |
| 124:24 125:8 |
| 129:2,3 130:3 |
| **7,536,833.33.**  54:8 |
| **75**  131:12 |

| 77 | 5:13 |
| --- | --- |
| **79**  131:14 | |

| 8 |
| --- |
| **8**  31:17 32:8,14 |
| 130:9 |
| **817125**  2:11 |
| 128:25 |
| **826-6500**  4:8 |
| **87**  129:4 |

| 9 |
| --- |
| **9**  31:22 32:8,17 |
| 130:12 |
| **9.5**  72:13 |
| **9.5.**  103:14 |
| **90**  71:6 94:18 |
| **914**  6:8 |
| **99**  89:17 121:18 |
| 131:17 |

| a |
| --- |
| **ability**  16:6 |
| **able**  54:23 110:25 |
| **absent**  13:6 |
| **absolutely**  15:7 |
| **abstract**  25:5 34:5 |
| 34:10 38:6,13,17 |
| 39:4,23 40:17 |
| 42:9 44:25 45:5 |
| 47:10,13 48:18 |
| 60:3,8 83:8,16 |
| 104:17 107:25 |
| 108:7 109:7 |
| 112:13 130:21 |
| **accommodating** |
| 87:5 |
| **account**  88:10 |
| 90:11 99:22 |
| 100:12,13,15 |
| 101:3 131:19 |
| **accurate**  15:7 |
| 128:10 132:16 |

| acquiring  27:15 |
| --- |
| 30:17 |
| **acquisition**  113:9 |
| **acre**  122:23 |
| **act**  71:23 95:4 |
| **acting**  72:9 |
| **action**  112:5,5 |
| 128:18,21 |
| **active**  111:14,16 |
| **actor**  118:20 |
| **actual**  43:2,5 46:3 |
| **add**  44:22 |
| **additional**  38:4 |
| 46:14 47:25 48:2 |
| 48:3 66:8 83:12 |
| **address**  11:19 |
| 30:9 77:8 |
| **addressed**  9:16 |
| **adhere**  33:19,22 |
| **adjourned**  126:3 |
| **adjustment**  44:10 |
| **advisement**  90:15 |
| 92:24 96:12,14 |
| 114:3 124:12 |
| **affect**  16:6 |
| **affidavit**  58:15 |
| 59:7 131:4 |
| **afternoon**  7:5,10 |
| **agent**  21:6 25:9,10 |
| 25:14 34:5,12 |
| 36:11,13 43:9 |
| 45:21 46:4 53:13 |
| 68:16,18 69:5,8 |
| 71:19,23,24 72:3,9 |
| 118:20 |
| **aggregate**  20:19 |
| **ago**  96:2 102:4 |
| **agree**  11:6 37:9 |
| 76:6 79:9 |
| **agreed**  78:7,16,19 |
| 78:23 79:2 95:3 |

**agreement** 17:21 18:8,12 19:7,11,25 31:11,25 32:10,16 32:20 33:24 35:22 36:4 37:13 39:7 44:9 61:4,8 62:7 62:10 66:15 68:23 68:25 71:24 72:4 74:19 79:14 80:24 81:17,19,21 91:17 91:20 92:16 93:24 95:17,20 104:4,13 106:5 110:3,9,10 116:3,19 129:8,11 130:4,15,18 131:9 131:11
**agreements** 106:7 112:9
**alan** 49:20
**allow** 10:5
**allows** 124:22 125:7
**amended** 31:18,23 32:14,17 130:9,12
**america** 100:19,20
**amount** 28:8 41:6 42:10,14,23 43:3,5 43:17 46:19 51:23 52:4 53:7 54:12 55:8 59:4 76:16
**amounts** 44:6
**anesh** 5:18 8:19,19
**answer** 12:12 13:2 13:4,8 14:22 28:14 50:25 62:23 69:14 72:6 75:2 77:4 82:14 89:7 93:8 95:24 103:6 103:24 106:3 109:24 118:8 119:13 122:10

**answers** 12:5 13:14 47:11
**anticipate** 11:3
**anticipation** 104:12
**anybody** 90:17 115:13
**apologize** 30:4 37:3 46:25 47:6 54:22 57:12 66:17 67:14 74:5 84:15 112:23
**apparent** 100:17
**appearance** 7:13 9:2,10
**appears** 20:6 37:7 55:10 56:23 67:10 76:4
**apply** 90:12
**appreciate** 124:16
**appropriate** 97:3 132:5
**appropriately** 27:24
**approve** 10:21
**approved** 109:23 110:20
**approving** 109:17
**arbitrator** 95:4
**aside** 82:19 121:21
**asked** 13:9 14:21 87:24
**asking** 14:18 92:20 106:11 124:21
**asks** 78:4
**assignee** 22:15
**assignment** 18:12 19:12 22:4 31:24 32:19 46:17 48:14 129:12 130:14

**assignor** 22:12,13
**associates** 6:5 15:20 31:14 32:13 35:9 51:3 68:4 71:10 73:2,3 80:25 81:12,24 91:13 94:12,15 130:7
**association** 49:25
**assumed** 12:12
**assuming** 94:16
**attach** 36:13
**attached** 127:12 132:11
**attempting** 102:10
**attorney** 8:7 16:11 28:23 30:23,25 50:18 72:17 87:13 112:4,10 117:21 118:6 119:6,18 120:17 128:17,20 132:13
**attorneys** 90:18,19 91:25 118:11 122:11
**august** 61:4,8 62:8 62:11 66:16 67:2 67:5 116:3 131:9 131:11
**automatically** 98:10
**avenue** 3:5 4:6 5:5 11:21
**avroham** 22:17,18 22:24 23:16 65:9
**aware** 17:20 106:7 114:8 117:18,24 119:19 120:15

**b**

**b** 7:20 129:7
**back** 24:8 37:2 45:4 60:7,21 68:14 69:13,15 73:19 75:2,19 82:14,15,17 83:13 84:8,9 85:11 86:25 87:7 93:20 96:17,19 107:14 112:12 113:22 115:22,25 117:16
**background** 16:10 18:3
**balance** 53:11
**bank** 46:12 47:18 48:5 49:25 90:10 97:10 98:18 99:6 99:21 100:9,11,17 100:19,19 131:18
**banking** 57:22
**bankruptcy** 114:9 114:16 115:2,6,18
**barclay** 6:6
**bargain** 25:18,24 26:6,19,23 27:3 28:16 29:6,10,18 29:23 30:12 129:16,20,24
**basch** 52:10
**based** 37:11 93:19 95:25 104:3
**bates** 99:9
**bear** 57:7
**bebe** 6:13 7:15
**begins** 81:3
**behalf** 8:12,15 9:2 13:21 15:4,17 54:7,10 89:12 93:25 121:16

**believe** 9:14 17:9
17:16 22:2 23:12
24:24 27:9 29:4
29:17 32:25 33:8
33:21 34:25 36:8
36:21 39:2 44:4,7
55:3 57:6 63:15
65:15 71:14 77:9
77:17 82:12 87:24
88:20 89:17 91:14
93:9 95:2,21
104:2,9 106:20
107:21 115:17
118:14,21 120:25
121:2 122:8,9
**bell** 64:3 115:10
**benefit** 12:16
61:25 83:7
**better** 40:12 65:19
**bffmlaw.com** 4:19
**bigger** 112:21
113:4
**bleich** 59:13 85:12
**block** 67:24
**boiler** 51:12
**borrower** 34:4,19
35:7 50:4 105:24
**bottom** 69:18 70:2
94:6 103:16
**break** 13:11,12
61:12,15 86:21
**bridgewater** 13:23
14:11,15 15:22
53:2 64:24 78:15
118:17,19,24
122:20,21 123:10
**bridgewater's**
118:6
**brief** 97:8
**brisbois** 5:12 8:20

**broker** 51:3,6,7
**brokerage** 51:10
**brooklyn** 11:21
46:15 55:20 82:8
110:17
**brother** 22:24
**brought** 111:18
**buchoff** 6:16 7:24
7:24
**business** 11:19
**butler** 4:13
**buy** 82:3,3
**buyer** 27:21

### c

**c** 3:1,19 4:1 5:1 6:1
7:20 35:20 51:22
75:14 128:1,1
**call** 8:18 38:18
69:19 70:3,11,12
70:14,19,23,24
71:4,4,7,16 75:5
87:7 88:21 94:5
94:18 97:11 98:17
98:22 116:25
**called** 17:21 22:5
35:8,19 40:17
44:8
**calling** 113:10
**calls** 66:8 89:6
**capacity** 119:11
**capital** 15:22 53:2
66:8 69:19 70:2
70:10,12,14,18,23
70:24,25 71:3,4,7
71:16 94:5,17
122:21,22 123:10
**caption** 73:10
**care** 73:2
**carefully** 132:3
**case** 1:7 40:2
117:13

**cassin** 35:19,20
51:18,18
**category** 45:4
**caught** 98:10
**cc** 77:11
**ccr** 1:22
**certain** 13:15
16:24 19:25 20:24
24:19 44:7 100:21
102:24 104:6
110:14
**certainly** 11:4
**certified** 2:8
**certify** 127:10
128:4,9,15
**chain** 75:8,13,20
77:25 79:5 84:23
131:13
**challenge** 9:9,10
**change** 45:20
47:19 74:11,16
133:9,11,13,15,17
**changed** 116:8
**changes** 116:6,13
116:16,20 132:9
133:5
**chapter** 4:3 8:5,7
10:16,24 11:5
15:25 124:23
125:8
**characterization**
38:20
**charged** 49:24
52:14,18
**charges** 48:17
54:6
**check** 88:20 96:7
**christopher** 5:16
8:2
**christopher.rados**
5:17

**city** 49:18
**clarification** 66:22
**clarify** 12:10
84:12
**clean** 49:17
**clear** 12:17
**client** 13:21 23:22
40:7 41:15 88:16
88:24 89:3 96:7
101:13 109:18
117:21 119:18
120:17
**client's** 82:2 86:18
101:15
**clients** 67:21 89:10
91:24 98:7 102:13
103:7,8 122:12
**close** 70:2 106:12
106:21,22,23,24
125:23
**closed** 62:20
125:19
**closer** 49:20,23
52:12 60:17
102:18
**closing** 33:25,25
34:4 35:22 36:3
36:10,12,19,25
37:7,21,21,23 38:3
38:6,10,17,22 39:6
39:20 40:7 43:14
44:5,11,20 45:16
45:18 53:4 55:10
62:25 87:3 95:14
102:8,19,24
106:11 107:8
110:4,5 112:13
114:19,20 125:12
130:17,21,24
**cohen** 28:18 53:24
68:9 71:22 83:20

| | | | |
|---|---|---|---|
| 84:21 85:13 | confused 47:8 | corp 15:20 17:15 | 92:19 96:6 97:9 |
| collapsed 42:4 | connected 85:3 | 34:20,21,23 35:4 | 106:15,16 107:13 |
| collateral 47:25 | connection 17:4 | 67:19 68:6 73:5 | 107:22 112:16 |
| 48:3 110:18 | 31:4 32:16,21 | corporate 52:21 | 113:10 115:6 |
| colleague 7:19 | 33:7 34:10,24 | corporation 20:2 | 117:20 124:9 |
| column 49:2 56:25 | 35:17 36:24 43:4 | 25:19 26:20 27:17 | 128:17,20 |
| come 83:13 101:22 | 47:19 50:16 53:4 | 27:25 37:14 52:3 | counsel's 40:15 |
| 115:22 122:15 | 57:19 58:3 59:21 | 52:23 89:19 | 99:5 |
| coming 7:10 11:4 | 68:18 69:5 72:3 | 121:19 129:18 | counsels 114:15 |
| 101:3 | 80:13,24 87:19 | correct 15:8 16:13 | county 16:25 |
| commencement | 92:25 93:3 101:9 | 23:22,23 35:14 | 127:4 |
| 128:5 | 101:24 119:21 | 37:23 42:15 43:11 | couple 11:15,23 |
| comment 40:15 | 120:4 121:24 | 43:22 45:22 46:5 | 47:12 61:19 |
| commission | consent 114:18 | 47:14 48:4,12 | 102:23 |
| 133:25 | consider 41:25 | 49:11 50:9 53:22 | course 9:16 90:4 |
| commonwealth | 64:17,19 | 55:11 59:17,22 | 90:11 |
| 53:6,12,12 57:3 | consistent 57:4 | 67:3,6,21 72:17,20 | court 1:1 2:8 |
| companies 109:11 | consolidated | 72:23 73:3,6,22 | 10:23 11:25 97:2 |
| company 34:6 | 31:18,23 32:15,18 | 77:25 78:10 79:5 | 103:3 121:15 |
| 52:3,22 | 130:10,13 | 82:11 86:14,15 | 124:22 125:6 |
| compare 39:10 | consult 94:19 | 88:17 90:8 91:13 | 132:16 |
| completed 36:11 | contemplation | 94:13 101:4,7 | cover 26:19,23 |
| 104:15 | 109:21 | 115:11 116:10 | 27:3 |
| concern 40:23 | contested 10:16,18 | 118:6 119:3 | covered 70:25 |
| concerning 16:24 | continued 4:1 5:1 | 121:12 127:11 | 83:25 |
| 91:12 92:22 | continuing 42:8 | corrected 73:25 | cpif 4:12 6:14 7:16 |
| concluded 125:10 | contract 18:17 | correction 74:8 | 31:12 32:11 43:3 |
| conclusion 89:6 | 19:16 23:7,7 | corrections 127:12 | 44:13 46:16 47:24 |
| 114:17 | 40:19 129:14 | 132:4,6 | 48:11 111:19,20 |
| condition 82:4 | contribution 66:5 | correspondence | 130:5 |
| 104:14 110:14 | conversation | 96:9 | credit 54:16 |
| conditions 33:24 | 88:19 107:2 | cost 48:22 51:11 | creditors 114:12 |
| 36:10 110:25 | conversations | costs 39:19 40:8 | 114:20,24 |
| confession 58:15 | 95:10,13,16 | 42:25 45:16 | cross 9:21 10:10 |
| 59:8 60:12 131:4 | 102:15 | counsel 3:3,11 4:3 | 11:13 87:10 |
| confirm 15:9 39:3 | copies 15:24 38:4 | 4:12 5:3,11 6:3 | 124:19 125:25 |
| 72:14 76:16 78:4 | 96:8 99:9,12,15 | 8:10 9:25 10:25 | 129:4 |
| confirmation | 116:23 117:2,5 | 13:3,8 18:22 | current 121:11 |
| 56:22 | copy 36:12 100:9 | 27:14 30:16 32:8 | currently 121:8 |
| conflict 9:12 | 118:12 | 35:13 50:22 51:21 | |
| 122:14 | | 61:25 68:13 87:5 | |

[d - district]

| d |
| --- |

**d** 38:18 129:1
**date** 18:10,14,18
25:21 26:3,9
31:15,20 32:3
35:24 38:8,11
58:12,17 61:2,6,10
66:15 67:11,11
75:10 79:20 99:24
117:10 128:13
132:8 133:20
**dated** 18:8,12 19:8
19:17 22:4 23:8
26:2,21,25 27:5
32:20 35:22 36:4
37:14 58:10 59:5
61:4,8 62:7,10
75:8,22 76:13
79:19,25 100:23
116:3 129:9,12,23
130:18 131:2,9,11
131:13,16
**david** 1:12 2:3
3:11 4:18 7:1 11:1
11:20 12:1 13:1
14:1 15:1 16:1
17:1 18:1 19:1
20:1 21:1 22:1
23:1 24:1 25:1
26:1 27:1 28:1
29:1,9,16 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1,23 39:1
40:1 41:1 42:1
43:1 44:1 45:1
46:1 47:1 48:1
49:1 50:1,5 51:1
52:1 53:1 54:1
55:1 56:1 57:1,16
58:1 59:1 60:1

61:1 62:1 63:1,22
64:1 65:1,7 66:1
67:1 68:1 69:1
70:1 71:1 72:1
73:1 74:1 75:1,21
76:1,19 77:1,17,20
77:24 78:1 79:1
80:1 81:1 82:1
83:1 84:1 85:1
86:1 87:1 88:1
89:1 90:1 91:1
92:1 93:1 94:1
95:1 96:1 97:1
98:1 99:1 100:1
101:1 102:1 103:1
104:1 105:1 106:1
107:1 108:1 109:1
110:1 111:1 112:1
113:1 114:1 115:1
116:1 117:1 118:1
119:1 120:1 121:1
122:1 123:1 124:1
125:1 126:1 127:7
127:16 128:5
129:2 133:20
**day** 19:12 62:25
94:18 101:12
106:10 114:18
127:21 133:23
**days** 71:7 106:11
110:4 132:14
**deal** 60:24 62:3
63:21 66:25 80:13
109:9 131:6
**dealing** 92:8
113:14
**debtor** 1:8 5:3
8:10 9:4,13 16:17
**debtor's** 9:14
**december** 19:18
23:8

**decided** 29:13
47:24
**declaration**
116:25 117:19,21
119:16 120:16
**deed** 25:18,24 26:6
26:19,23 27:4
28:8,16 29:7,11,19
29:23 30:9 41:23
129:17,21,25
**deeds** 30:12 41:21
**deemed** 132:16
**defaults** 104:9
**definitely** 91:18
109:20 115:5
123:9,23
**delivered** 85:13
**deponent** 18:24
26:14 39:11 58:23
61:21 81:7
**deponent's** 69:14
**depose** 11:9
**deposing** 132:13
**deposit** 106:17
**deposition** 1:12
2:3 10:14 11:2
12:2 14:20 15:9
125:9,10 127:9
132:3,11,14,15
**describe** 47:21
**described** 55:16
**description** 45:7
110:8
**descriptions** 56:20
**designated** 75:13
79:23
**despite** 125:24
**details** 89:13
106:19
**determined** 34:3

**df** 38:9,14,22
130:23
**dfiveson** 4:19
**dicker** 2:5 3:13
**different** 49:15
100:25
**direct** 7:4 89:7
94:20 129:3
**directed** 13:7
**directing** 64:11,15
103:12
**direction** 79:18,25
84:24 85:6,9
86:19 88:16 89:24
101:15 131:15
**director** 52:7
**directors** 52:8
**directs** 13:3
**disagree** 10:1,3
**disbursed** 88:10
**disbursement**
112:25
**disbursements**
39:20 45:25 46:4
**disclosed** 105:10
105:16
**discuss** 90:16,20
90:23
**discussed** 118:11
**discussion** 93:2
110:2
**discussions** 65:20
91:19,22,23
109:21 114:14
115:4 116:18
**dispute** 81:10,17
**distribute** 84:25
85:7,9
**distributed** 86:13
**district** 1:1,2

David Feldman Worldwide
A Veritext Company

**[document - expectation]**

document 18:25
19:24 21:10,24
22:11,12 23:11,14
24:9 25:2 34:15
36:6,16 37:12
39:12 40:7 45:4
47:17 57:14 58:24
60:18 61:22 62:4
62:5,6,9 63:7
66:12 67:13 69:18
71:13 72:13,15
73:20 79:23 80:5
80:7,11,13,17,21
81:8 82:19 87:25
92:4 94:15 99:7
99:15 107:13
109:20 116:23,24
117:17 118:2
documenting 50:9
documents 13:20
17:25 18:21 19:6
19:20 26:13,15,17
27:7,22 31:8 32:6
32:24 33:3 37:4
37:11 38:25 42:14
58:19 59:2,10,24
62:2,11,15 72:8
83:13 87:18 88:3
88:5 92:14 112:7
112:10 118:4
doing 61:18 132:7
douglas 5:8 8:9
downloaded 97:25
dpick 5:9
draft 92:3
drafted 91:20 92:7
92:12,16
drafting 80:17
91:16
dropped 102:24

dsalamon 78:25
due 9:16 54:13
duly 7:2
duvis 77:16,21

**e**

e 3:1,1 4:1,1 5:1,1
6:1,1 16:2 30:14
50:14,14,14 55:17
75:8,13,20,21 76:2
76:12,12,21,25
77:6,8,25 78:6,13
78:14 79:4,5
84:23 92:17,21
93:21,22 96:3,8
97:13,15,17,20,22
97:23 106:10,20
113:23,25 128:1,1
129:1,7 131:12
133:1
earlier 37:16 42:2
43:10 59:15 65:9
67:20 74:7 76:25
easier 39:16
east 2:6 3:14 4:15
ecbs 49:12,13
edelman 2:5 3:12
effective 14:2 62:8
62:10
effectively 42:4
either 95:23
elie 52:10
elser 2:4 3:12 8:12
8:15
employee 128:16
128:19
entered 19:12
entire 66:11
entities 9:3 14:7
15:6,18 35:14
51:9 52:17 110:12

entity 17:21 22:5
25:5 35:2,8,11
41:18 52:18,20,21
63:9,14,18 89:19
89:21 104:10
123:15
entries 51:9 55:14
55:15
entry 104:18
environmental
51:11
equals 44:24
equity 41:3,7 56:7
56:16 60:9 81:13
83:15 105:24
106:9 107:16
111:3 121:25
errata 132:5,7,10
132:13
error 44:2 73:15
escrow 21:6 25:3
34:3 35:22 36:4
36:10,13 39:7
45:21 53:13 68:16
68:18 69:5,8 71:2
71:3,19,23,24 72:3
72:9 88:9 90:11
130:18
esq 3:8,17,19 4:9
4:18 5:8,16,18 6:9
6:13
esquire 29:16
51:23
estate 51:7 120:13
event 70:21 94:11
104:8
everybody 7:12
47:7 65:3 99:16
117:3,7
everybody's 83:7

exact 30:8 117:25
118:2
exactly 27:12
52:24 62:17
106:19 114:19
122:18
examination 7:4
87:3,10,20 124:19
125:25 128:5
129:3,4
examine 10:10
11:13
exception 40:11
excess 55:24 59:20
60:2
excuse 51:9 93:18
94:25 125:3
executed 104:13
exercised 82:6
exhibit 18:7,11,16
25:17,23 26:5
31:10,17,22 35:21
36:14,16 38:5,9
39:24 45:12 46:20
58:9,14 60:24
61:3,7 75:7 79:17
99:20 100:3,7
102:6 103:11
104:17,23 105:8,9
105:12 107:14
108:18 109:13,14
112:12 116:2
129:8,11,14,16,20
129:24 130:3,9,12
130:17,20,23,25
131:3,6,8,10,12,14
131:17
existing 46:19
expect 12:19
expectation 104:3

**expenditure** 70:22
  70:24 71:2
**expenses** 49:10
**expires** 133:25
**explain** 103:20
**extent** 14:3 89:5
  93:10 118:19
**eyes** 113:5

**f**

**f** 55:16,17,17
  128:1
**fact** 9:10 10:17
  112:23 114:24
  116:5
**facts** 13:15
**fail** 132:15
**fails** 94:17
**fairly** 18:6
**familiar** 16:16,19
  20:23 21:12 23:18
  28:19 34:21 52:10
  55:18 59:12,16
  63:3,9,14 122:25
**familiarity** 28:21
  64:8
**far** 27:21,22 33:18
  89:13 108:4
  114:15,16
**fee** 49:24 51:4,6,7
  58:3
**fees** 48:18 49:4
  50:4
**fifteen** 121:4
**fifth** 57:14 69:17
  69:25
**figure** 37:17
**file** 9:1
**filed** 10:20 114:18
  117:12,19 118:14
**filing** 32:2,20
  52:20 130:16

**final** 36:11 39:5
**finance** 30:19
**financial** 89:13
**financially** 128:21
**financing** 31:5,8
  34:11 62:19
**find** 33:20 36:16
  69:20
**finding** 97:21
**finish** 115:22
**firm** 7:7 28:19,22
  35:19 55:20 59:16
**firm's** 92:14
**first** 7:1 8:24
  11:16 19:6 28:11
  28:15 32:9 33:10
  37:12 46:11,17
  57:2,5 59:2 62:2
  73:20 74:3,6
  75:21 78:6 94:14
  95:7 109:25
  110:15
**firsthand** 23:3
  102:12
**fitzgerald** 4:13
**five** 13:10 55:14
  99:2 115:21 120:9
  120:10 121:3
  122:11
**fiveson** 4:13,18
  47:4 64:13 74:24
  82:13,25 83:3,4
  117:12
**fixed** 44:20
**fixture** 32:2,20
  130:16
**fleischmann** 1:12
  2:3 3:11 7:1,6
  8:13,16 11:1,10,17
  11:20 12:1 13:1
  14:1 15:1 16:1,4

17:1,24 18:1,7,11
  18:16,20 19:1,3,7
  19:15,23 20:1
  21:1,23,25 22:1
  23:1,6 24:1 25:1
  25:17,23 26:1,5,11
  26:16,18,22 27:1,2
  28:1,10,15 29:1,6
  29:9,16,18 30:1
  31:1,10,17,22 32:1
  32:5,10,14,17 33:1
  34:1 35:1,21 36:1
  36:2,3 37:1 38:1,5
  38:9,15,16,21,23
  39:1,4,7,14,15
  40:1,2 41:1 42:1
  43:1,14 44:1,14
  45:1,5,15 46:1
  47:1,9,11 48:1
  49:1 50:1,5 51:1
  52:1 53:1 54:1,21
  55:1,11 56:1 57:1
  57:5,16 58:1,9,14
  58:18,20,20,25
  59:1,3,6 60:1,7,12
  60:13,24 61:1,3,7
  61:14,16,17,17,24
  62:1,2,6,9 63:1,5
  64:1 65:1,24 66:1
  66:13,18 67:1,9
  68:1,23 69:1,16
  70:1,16 71:1 72:1
  73:1,6,19 74:1,20
  75:1,7,11,12,13,21
  76:1,19 77:1,24
  78:1 79:1,17,22,24
  80:1 81:1 82:1,18
  83:1,6,11,17,23
  84:1,16,20,23,24
  85:1,21 86:1 87:1
  87:2,11 88:1 89:1

90:1 91:1,7 92:1
  92:22 93:1 94:1
  95:1 96:1 97:1,11
  98:1 99:1,19,20,25
  100:1,3,7 101:1
  102:1 103:1 104:1
  105:1 106:1 107:1
  108:1 109:1 110:1
  111:1 112:1 113:1
  114:1 115:1 116:1
  116:2 117:1 118:1
  119:1 120:1 121:1
  122:1 123:1 124:1
  124:25 125:1,9
  126:1 127:7,16
  128:6 129:2
  133:20
**fleischmann1** 99:8
**fleischmann2** 99:8
**floor** 11:21
**flow** 54:22 56:18
**focus** 39:15
**focused** 46:3
**focusing** 60:9
**following** 15:17
  45:10 133:5,6
**follows** 7:3 76:14
**followup** 87:16
**font** 54:23
**force** 15:8 70:22
**foreclosure** 112:5
**foregoing** 127:8
  128:10
**form** 39:9 41:20
  44:17 50:25 52:21
  53:20 58:6 60:6
  60:17 62:23 64:22
  72:6,7 74:21 77:4
  78:9,12 79:12
  81:15 84:4,7 85:5
  85:16 89:2 93:8

95:5 103:24 106:3
118:8,13 119:13
**former**  5:3 8:10
**forth**  128:14
**forward**  75:20
114:22
**four**  12:25
**francoeur**  3:17
8:14,15,21 9:22
10:2,7,11 13:17
14:13,19 15:25
23:4 31:2 39:10
45:11 50:24 57:9
60:16 62:22 70:4
72:5 75:4 77:3
79:11 81:14 84:6
84:11,18 85:15
88:25 89:4 90:14
91:8 92:23 93:7
94:8 96:11,16,20
96:23 97:6,9,19
98:2,16,25 99:4,13
103:23 104:21
106:2 107:12
112:15,18 114:2
115:23 117:4,11
117:14 118:7
119:12 121:10,13
124:11 125:18
**freancoeur**  14:21
**friedman**  50:18,19
50:23 92:10
113:15,16 114:4
**front**  26:13,17
32:6 36:3 37:4
59:2 75:12,16
79:23 83:6 84:17
116:6
**full**  37:15 114:21
**fully**  62:12

**fund**  54:19 71:2,3
**funded**  43:3 44:13
**funds**  43:8 54:22
55:5,6,7 56:10,18
56:24 69:9 76:15
83:19,19 85:12
108:20 112:21
**further**  128:9,15
**future**  14:5

**g**

**ganz**  56:11,11,12
**general**  17:17
68:21
**generally**  13:6
40:6 48:22 49:6
49:22 54:17
**genuth**  15:23 63:8
64:24 77:23 78:18
79:8 88:22,23
89:3,11,25 90:6
91:2 93:6,9
101:14,16 103:8
117:2,19 119:5
123:5,13
**getting**  108:15
**give**  7:13 81:25
85:6,8 97:7 110:8
117:16
**given**  15:17 48:11
**giving**  103:13
**go**  13:5 32:7 34:17
45:3 48:16 58:21
60:7 66:18 77:12
82:17 86:23 87:16
93:20 95:25 96:24
103:17 104:5
113:22
**going**  7:11 10:4
17:24 18:2 27:16
32:7 33:21 37:25
38:3 73:19 75:19

77:22 86:20 91:6
97:4 98:15,19
99:17,25 103:10
105:7 109:12
115:19,20,25
116:22,24,25
**goldie**  15:21 17:5
23:18 35:3 47:25
64:23 67:19 68:6
72:19 82:6 89:12
89:15 93:4,11
110:19 111:9
118:20 120:4
121:17 122:22
**good**  7:5 33:12
**grable**  3:8 7:4,5,7
7:18 8:22,24 9:24
10:13 11:14 14:17
15:3,16 16:3
33:14,20 45:14
46:24 47:6 57:12
61:11 66:16,21
67:3,6 69:24 70:9
73:13,17 84:14
86:20,25 88:4
94:3 112:22
124:20,23 125:3,7
129:3
**greenwald**  51:23
51:24 108:3,9,24
**groundrules**  11:16
11:23
**guarantor**  82:7
110:21 111:10,13
111:15,21
**guess**  13:10 23:4
29:12 64:11 66:12
71:9 77:18 105:17
**guessing**  104:3
**gut**  118:12

**h**

**h**  30:14 38:18
50:14 129:7
**hahn**  3:4 6:15 7:7
**hahnhessen.com**
3:9
**hand**  73:25 74:9
98:14
**handed**  58:19
**handing**  99:7
**handled**  123:24
**handwriting**
29:15
**handwritten**  81:6
116:5,13,20
**happen**  81:19
111:11
**happened**  27:12
81:18 96:2 121:20
**happy**  14:22 98:16
**hard**  33:20 98:11
**haystack**  97:22
**head**  12:4
**header**  79:24
**heading**  62:3,5,7
62:10 71:19 94:4
**headings**  45:6,10
**hear**  69:11 74:24
96:19
**heard**  25:4 63:25
**heidi**  115:7,9,15
**held**  2:4 27:24
**help**  46:8 71:25
77:13 97:4
**hemion**  30:14
**herbst**  4:5
**hereinbefore**
128:14
**hereto**  36:14
**hessen**  3:4 6:15
7:8

[highlight - know]                                                    Page 10

**highlight** 40:12
**hirsch** 49:20,21
**hold** 97:6
**holding** 86:4
**hopeful** 18:5
**hopefully** 46:8
   54:23 77:12
**hud** 38:18
**husband** 120:20
   120:21

### i

**idea** 101:18 107:7
   109:2
**identical** 40:10
**identification**
   18:10,15,19 25:22
   26:4,10 31:16,21
   32:4 35:25 38:8
   38:12 58:13,17
   61:2,6,10 75:10
   79:21 99:24
**identified** 19:6
   38:17 44:14 54:21
   58:19 59:3 62:3
**identifies** 24:11
**ig** 63:7
**igenuth** 78:15
**ignorance** 94:25
**iii** 70:14,18
**imperative** 132:12
**important** 12:3,16
   12:20
**importantly** 83:17
**improvement** 71:3
**included** 51:11
   65:4
**including** 81:6
   106:14
**inclusive** 98:13
**incoming** 55:5,7
   56:10,15,20 83:19

**independent** 49:4
   52:7,8
**indicated** 34:19
   46:12 47:16 63:13
   67:20 83:14
   125:11
**indicates** 29:20
   33:11 35:3 40:18
   47:18
**indicating** 13:20
**indication** 66:2
**individual** 9:5
   10:17 17:10 59:13
   77:7 108:2 119:10
**individually**
   108:14 118:21
   119:5 123:14
**individuals** 9:3
   15:6,18
**initial** 41:18 66:5
   70:6
**initiating** 52:20
**inquire** 114:11
**inquiry** 114:23
**instances** 74:2
**instructed** 125:23
**instructing** 76:23
**instructions** 76:5
   76:9,18 132:1
**insurance** 25:12
   34:6 48:23 51:10
   51:11 70:25
**insurances** 51:16
**insure** 48:24
**intend** 9:20 10:9
   11:13
**intentional** 118:15
**interest** 43:25 44:6
   44:7 48:7 81:13
   82:9 108:6 109:7
   111:4,6 121:25

**interested** 128:21
**intermediary**
   74:13
**intern** 7:25
**intervening** 41:14
   74:17
**investments** 63:17
**involved** 16:22
   20:7 24:6,17 25:7
   28:24 30:22 33:2
   37:18 63:20 65:20
   71:12 91:18,22
   93:10 102:10,14
   102:15 113:8,11
   115:2 118:9
   121:21 122:19
   123:5,14,17,18
**involvement** 20:10
   21:7 27:13 29:3
   55:22 80:16
   109:16
**iola** 99:22 100:11
   101:3 131:18
**irrevocable** 79:18
   79:25 82:23
   131:15
**isaac** 15:23 63:8
   77:23 88:21,23
   89:3,11,24 101:13
   101:16 116:25
   117:18
**island** 122:23
**issue** 9:15,19
   13:18 15:11 25:12
**issues** 13:5
**item** 100:22
**items** 40:11 45:4,9
   52:25 100:21

### j

**j** 3:8 5:8,16
**jerusalem** 4:6
**join** 8:17 75:5
**joint** 65:18
**joseph** 3:17 8:14
**joseph.francoeur**
   3:18
**judgment** 58:16
   59:8 60:12 131:5
**july** 1:14 117:11

### k

**k** 4:18 7:20
**kacuba** 6:15 7:19
**kaufman** 22:17,18
   22:20,24 23:16
   65:10
**keep** 98:19
**key** 49:25
**keyword** 98:6
**knew** 101:21
**know** 7:14 12:11
   13:12,12,16 15:15
   17:10 21:17 22:18
   22:23 23:3 30:2
   37:6 43:7 44:2
   46:13 48:19,21
   49:13,20,22 50:2
   51:13,16 52:4
   53:5,8,25 55:24
   56:3,3,5,12,14,16
   60:11,23 61:14
   63:22 64:3,5
   66:10,12 71:8
   74:18,22,23 77:2,5
   77:10,13,18,21
   79:7 85:2,10,19
   91:19 92:18 93:16
   95:6,7 101:20
   102:3,4,5,8 103:2

David Feldman Worldwide
A Veritext Company

103:5,5 104:15
105:6,20 106:18
107:4,5,9,24 108:4
108:5,17 109:5,13
109:22,23 111:7,9
111:12,23 113:6
113:16 114:4,6,19
115:8 116:12,17
121:8,10,15,17,20
122:4 123:12,15
123:19,21 124:4
**knowledge** 102:13
103:4 109:8 111:8
**kyle** 6:16 7:24

**l**

**l** 3:17 55:18
**labarbera** 28:18
53:24 68:10 71:22
83:20 84:21 85:13
**lack** 65:18
**lamonica** 4:5,9 8:6
8:7 15:14 46:22
47:2 66:14,25
67:4,7 69:23
82:21 83:2 87:10
87:13 88:2 92:19
96:6,13,18,22,25
97:16 98:3,23
99:11,17 104:23
107:14 112:17
113:24 115:20
117:6,16 121:12
124:8,13 129:5
**land** 53:6 57:3
**landrigan** 5:11 8:3
28:18,24 53:25
68:10,17,17 69:4
71:22 72:2,23
75:15,22 76:10,13
78:3 83:21 84:21
85:14 90:24 92:9

107:22 115:7
**landrigan's** 29:2
68:11
**language** 91:11
94:22
**lastly** 78:25
**law** 7:2,7 16:12
22:24 28:19 38:22
50:4 51:22 55:20
57:15 59:16
**lawsuit** 16:21
**lay** 39:19 40:8
**leader** 95:4
**leading** 17:14 20:5
22:8 42:6 50:12
53:20 58:6 84:4
106:11
**learn** 101:22
**leases** 31:24 32:19
130:14
**lefkowitz** 121:16
121:21 122:3,4,7
122:15
**left** 118:10
**legal** 50:4,7 58:3
89:6
**lender** 34:3 35:17
42:24 45:23 47:24
51:17 70:24
105:24 106:8
110:19 112:2
**lender's** 51:21
106:15,16 110:20
**lenders** 4:12
**lending** 6:14 7:16
31:12 32:11 43:3
130:5
**letter** 79:18,25
82:23 131:15
**levine** 6:5,9 7:21
7:21 9:1,17,20

10:1,4,9 11:12
14:10,14,17,23
15:12 17:13 20:4
22:7 28:12 33:13
33:14,17 38:19
39:8 40:14 41:19
42:5 44:16 46:20
48:13 50:11 53:19
58:5 60:6 64:21
66:19,23 69:11
72:7 73:3 74:21
78:8,11 79:12,15
83:9 84:3 85:4,17
85:20 86:10 91:25
92:3,10 93:14,24
103:18 104:6
117:9 124:18,21
124:25 125:4,15
125:16,21
**levlaw.org** 6:10
**lewis** 5:12 8:20
**lewisbrisbois.com**
5:17,19
**lexington** 5:5
**lhmlawfirm.com**
4:10
**liability** 51:12
52:22 71:19
**license** 2:9,11
128:25
**licensed** 16:11
**lien** 49:18
**limited** 52:22
**line** 41:2 43:25
45:9 48:25 49:12
49:19 50:13 52:25
56:9 57:14 60:9
66:7 133:8
**lines** 42:18 54:6
**list** 48:17

**listen** 9:18
**listening** 7:16
**litigation** 101:25
102:2 111:15,16
112:3
**live** 49:5
**llc** 1:7 7:9 15:19
15:20,22 16:17,20
17:8,22 19:17,17
20:3 21:2,11,19
22:5,6,14,16 23:9
23:9,15,25 24:5,18
24:20 25:19,25,25
26:7,8,21,24,25
27:4,5 28:2,3,17
29:5 31:12,13,14
32:12,12,13 34:20
34:24 35:9 37:14
52:15 53:2 63:17
67:24 68:4 72:16
72:22 73:12,16,22
74:2,9,12 81:4,11
81:12,13 82:11
87:14 89:16 116:9
116:10 119:2,23
121:9 122:2
129:18,22,22
130:1,1,5,6,8
**llp** 2:5 3:4,13 4:5
5:4,12 6:15 7:8
28:19 53:25 68:10
71:23 83:21 84:22
**loan** 27:22 31:10
32:10,16,22 33:6
33:23 36:12 42:10
42:14,23 43:17
44:8 46:16,18,19
83:25 106:5,6
112:6,8,9 130:3
**located** 30:7

**lodged**  12:20
**lone**  63:16,20
  65:12 68:3 71:9
  73:2 80:25 81:12
  81:24 91:12 94:12
  94:15 110:11,22
  114:5
**long**  96:18
**look**  30:11 43:13
  54:5 56:11 58:21
  60:18 61:16 63:5
  67:9 73:9 83:12
  93:20 100:4
  103:11 104:16
  105:7 107:10
**looked**  37:12
  85:24
**looking**  33:23
  40:16 47:13 63:6
  70:8 77:6 81:2
  85:21 104:22
  106:17,20 108:18
**looks**  100:10
**lot**  12:18 37:3,6
  112:21 124:3
**louder**  64:14
**lowy**  55:16,17,19
  55:25 59:17,19
  60:2 76:18,24
  78:6 79:10 86:9
  86:11,13 88:11
  90:13
**lowy's**  55:21
**lpa**  71:6,6,8 72:25
  91:12 94:12

**m**

**m**  30:14 128:2,24
**ma**  3:19 8:11,11
**machinery**  51:12
**madison**  3:5

**mail**  16:2 75:8,13
  75:20,21 76:2,12
  76:12,21,25 77:6,8
  77:25 78:6,13,14
  79:4,5 84:23
  92:17 97:22
  131:12
**mailed**  96:3
**mails**  92:21 93:21
  93:22 96:8 97:13
  97:15,17,20,23
  106:16,20 113:23
  113:25
**majeure**  70:23
**making**  27:23
**manager**  21:19
  121:19
**managing**  34:25
  35:10 70:23 89:18
**maniscalco**  4:5
**marianne**  4:3
  87:13
**mark**  5:18 8:19
  15:23 38:3 63:13
  77:23 78:19 89:25
  99:10,18 119:9
**mark.anesh**  5:19
**marked**  18:9,14
  18:18 25:21 26:3
  26:9 31:15,20
  32:3,9 35:24 38:7
  38:11 58:12,16
  60:25 61:5,9 75:9
  79:20 91:7 99:23
  100:2 109:13
**marking**  17:25
**marty**  77:7,9 78:6
**maryann**  8:4
**matter**  10:16,19
**matters**  120:7,8

**matthew**  6:13
**maureen**  1:22 2:8
  128:2,24
**mccarthy**  4:14
**mean**  40:22 52:20
  53:10 96:15
  123:22
**means**  96:16
**meant**  66:10
**medications**  16:5
**meet**  110:25
**member**  35:2,10
  70:23 89:18
  121:18
**members**  110:11
  121:9,11,14
**membership**
  70:11 111:4,6
**memory**  33:8,11
  37:5 77:22 93:19
  95:25 115:19
**mentioned**  88:15
  102:13 108:9
**met**  21:20 22:20
  110:15
**michael**  6:9 7:15
  7:21 9:1 59:13
  125:16
**middle**  47:5 98:11
**mill**  1:7 6:3 7:22
  9:4,7 16:17,20
  17:22 20:2,25
  21:11,19 22:5,14
  25:19,25 26:20,24
  27:17 28:2,2,3,17
  29:5,7,8 30:13
  37:14 41:13,17
  42:3,3 54:4 72:22
  73:10,16,22 87:14
  101:10 114:9,13
  115:18 116:9

  118:25 120:5,24
  125:17 129:18,21
**million**  20:21,24
  21:5 24:15,16,23
  28:9 33:9 40:19
  42:10 45:20 47:19
  53:17 54:9 55:14
  55:15,25 56:10,15
  57:2 59:20 60:3
  66:4 74:20 84:20
  106:9 107:17
**mills**  19:16 22:6
  22:16 23:9,15
  24:18 25:25 26:7
  26:24 27:4,18
  29:19 67:24 73:11
  73:25 74:9,12
  81:4 116:9 117:14
  129:22,25
**minute**  18:21 57:8
  97:7 115:21
**minutes**  61:19
  98:21
**miscellaneous**
  48:17
**misspeak**  47:7
**mistake**  44:5
**mix**  109:10
**ml**  6:10
**moment**  26:12
  43:15 63:6 81:5
  82:18
**money**  82:8 85:7,9
  106:12,21,22,23
  106:25 107:3,20
  108:15 110:15
  113:7
**monies**  45:21 56:6
  86:8
**monsey**  95:3

**montebello**  30:14
**month**  37:20,22
**months**  96:2 102:4
**mortgage**  31:24
  32:18 36:12 48:8
  48:15 49:7 51:6
  130:14
**moses**  15:21 17:11
  120:15,19
**moses40600**  77:13
  78:22
**moshe**  64:5 66:4,9
**moskowitz**  2:5
  3:12
**motion**  10:21
**move**  28:12 79:15
  85:20 114:22
**multiple**  56:19

**n**

**n**  3:1 4:1 5:1 6:1
  30:14 35:20 56:11
  129:1
**name**  7:6,17 11:18
  17:11,15 23:18
  25:16 52:11 59:13
  59:16 63:19,20,25
  65:9 75:14 87:12
  95:7 115:8 122:14
  123:13 125:2,15
**named**  9:5 77:7
**names**  122:13
**national**  34:6
  49:25
**nature**  95:15
  107:2
**necessary**  15:2
  87:8 117:7 132:4
**necessitated**  70:22
**need**  12:5 13:8,11
  98:21 117:17

**needed**  49:16
  83:25 106:22
**needle**  97:22
**needs**  78:5
**negotiate**  31:7
**negotiating**  27:22
  33:3 65:18 71:11
  93:24
**negotiation**  71:12
  91:16 118:10
**negotiations**  71:15
  95:19
**neither**  128:16,19
**net**  42:18,23 43:17
  54:12
**never**  22:20
**new**  1:2,13,13 2:6
  2:6 3:6,6,15,15
  4:7,16,16 5:6,6,14
  5:14 6:7 11:22
  16:14,25 42:9
  99:21 110:20
  131:18
**nice**  10:12
**nicholas**  6:15
**nick**  7:19
**nine**  4:15
**nod**  12:4
**non**  28:13
**north**  15:19 17:7
  31:13 32:12 35:8
  46:15 110:17
  119:17,23 130:6
**nostrand**  11:21
**notarized**  49:23
  52:13
**notary**  2:11
  127:24 133:25
**note**  8:25 31:19
  32:15 58:10 59:4
  60:11 130:11

131:1
**noted**  132:10
**notes**  86:23
**notice**  2:7 9:1
  72:17 104:8 112:9
**notices**  103:13,17
  111:24,25
**novartis**  17:22
  20:2,25 25:18
  26:20 27:17,25
  28:16 37:13 41:12
  53:18 57:7 129:17
**november**  18:8,13
  19:8,13 20:8,11
  22:4 37:15 129:9
  129:12
**number**  11:24
  12:8,15,25 13:10
  24:15,15 42:21
  44:14 45:6,19
  48:20 51:8,9 53:8
  54:13 55:10,13
  56:21 57:4 110:16
  110:16,18
**numbered**  34:14
  67:14 94:7
**numbers**  24:14
  44:22 49:4 56:22
  82:22 85:3 99:9

**o**

**o**  30:14 55:18
**o'toole**  4:4 8:4,4
  87:14
**oath**  14:20
**object**  14:25 28:12
  84:6 92:20 124:20
**objection**  17:13
  20:4 22:7 38:19
  39:8 40:14 41:19
  42:5 44:16 48:13
  50:11,24 53:19,20

58:5,6 60:6,16
  62:22 64:21 72:5
  72:7 74:21 77:3
  78:8,11 79:11,12
  79:15 81:14 84:3
  84:4 85:4,15,17
  88:25 90:9 93:7
  103:23 106:2
  118:7 119:12
**objections**  12:19
**obligation**  66:9
**obviously**  11:24
**occurred**  16:23
  37:8 80:14
**occurring**  81:11
**offhand**  115:12
  120:2
**office**  6:16 8:1
  13:19 15:4 16:2
  39:25 40:3 50:5
  51:22 85:24 97:12
  105:14
**officer**  7:3
**offices**  2:4 38:23
  57:15
**okay**  12:13,14,23
  12:24 23:5 36:18
  37:25 39:3 42:17
  55:4 61:23 65:25
  69:21 70:20 81:9
  88:7 91:5 92:13
  93:13 94:10 95:6
  103:15,19 104:16
  104:24 113:13
  114:22 115:23
  116:8 119:4
  120:21 121:22
  122:19
**old**  1:7 6:3 7:22
  9:4,7 16:17,20
  17:22 19:16 20:2

[old - point]                                                                                     Page 14

20:25 21:11,19
22:5,6,13,16 23:8
23:15 24:18 25:19
25:24,25 26:6,20
26:24,24 27:4,17
27:18 28:2,2,3,17
29:5,7,7,19 30:13
34:5 37:14 41:13
41:17 42:2,3 54:4
67:24 72:22 73:10
73:16,22,25 74:9
74:12 81:4 87:14
101:10 114:9,12
115:18 116:9,9
117:14 118:25
120:5,24 125:17
129:18,21,22,25
once   103:11 121:6
ones   62:17
opened   52:17,19
opens   52:16
operating   13:24
opportunity   9:9
  61:16 83:12
option   82:3,5,10
  104:5 110:3,8,10
options   124:3
order   10:23 48:24
  49:17 91:9 114:18
  125:6
original   53:16
  99:18 132:12
originals   29:14
outgoing   55:5
  56:24 83:19
  108:19 112:20
outlay   71:4,4,7
  94:18
overall   109:21
owned   48:2 89:19

owner   89:18
owners   107:24
ownership   70:11
  104:7 110:13

**p**

p   3:1,1 4:1,1 5:1,1
  6:1,1 50:14,14
p.c.   6:5
p.m.   1:15 75:23
  76:14 126:3
page   20:15 21:10
  22:11 23:13 24:9
  24:10,13,13,13,25
  24:25 33:23 34:15
  36:9 47:5 54:21
  54:25 57:5 63:6
  65:22 67:8,13
  68:14 69:18,23,25
  70:7,7,13 71:18
  72:12 73:20 74:3
  74:6,7 83:18
  94:14 99:7,14
  100:10 101:2,6
  103:12,17 104:20
  108:19 112:20,21
  113:3 116:6
  127:13 133:8
pages   127:9
paid   21:5 28:7
  45:7,8,17,21 46:12
  49:2,4,12,16 53:24
  54:6,7,9 84:21
  85:11 113:7
  114:21,24
papers   10:20
paperwork   52:21
paragraph   33:24
  36:9 66:3 68:15
  81:3 94:4 103:13
parcels   30:13

parenthesis   54:16
part   54:4 68:19
  69:6 102:16
  105:18
participating
  95:18
particular   68:21
particularly   71:17
  72:11 91:20
parties   9:8 12:18
  13:22 34:18 78:4
  79:14 90:21 92:7
  92:12 94:19,20
  95:3 103:2,22
  104:2 106:14
  109:6 116:19
  123:4 128:18
partners   3:3 7:9
  15:5,19,22 17:5
  19:17 20:13 23:9
  23:25 24:5,19
  26:7 27:5,15,19
  28:5,7 29:20
  31:13 32:12 33:6
  34:20,24 53:2
  63:7,12,16 65:13
  67:18 72:16 81:11
  81:13 82:11 89:22
  105:18 108:5
  111:3 118:13
  121:9 122:2
  123:11 130:1,6
party   10:18,19
  11:7 74:17 112:11
passed   27:23
pasted   118:13
pay   46:18 52:9
payee   45:7
payment   25:3 41:3
  47:17,18 50:2
  54:2,3 57:3,6,15

82:8 83:24 84:12
  85:23 110:15
payments   51:4,14
  53:3
payoff   46:11 47:3
payoffs   47:5
pays   49:6,8
pc   4:14 73:3
pending   60:21
  82:15 84:9
people   122:15
percentage   104:7
period   62:20
  94:18 102:21
  110:5
person   12:15
  108:11 125:4
personal   119:6
personally   119:18
peruse   26:12
phone   7:15 98:17
pick   5:4,8 8:9,9
  73:9,14,18
picklaw.net   5:9
pine   63:16,20
  65:13 68:3 71:9
  73:2 80:25 81:12
  81:24 91:12 94:12
  94:15 110:11,22
  114:5
place   33:25 128:13
plan   74:16
please   12:10 36:17
  58:20 64:14 76:16
  83:6 100:4,6
  103:10,20 104:16
  132:3,7
pllc   55:16,18 56:2
plus   44:23
point   13:11 18:4
  55:9 87:8 102:24

David Feldman Worldwide
A Veritext Company

[point - read]

105:8
**portion** 81:6
**posed** 13:2
**position** 46:17
**possible** 58:2 92:5
 92:7,12 123:25
**possibly** 92:10,17
 96:5,5 111:10
 123:2 124:2
**post** 40:7 44:11,20
**practice** 16:12
**precedent** 111:2
**precedents** 82:5
 104:14 110:14
**preliminaries**
 10:14
**preparation** 40:4
**prepare** 105:12
**prepared** 39:21,24
 39:25 40:3 43:15
 105:14 109:14
**present** 6:12 92:2
**president** 35:4
**previously** 88:8
 91:11 116:4
**price** 20:16,20,24
 24:11,22 28:6
 40:19,24 53:11,16
 57:7
**primary** 105:18
**principal** 9:6,14
 23:24 24:4
**print** 98:12
**prior** 37:20,22
 107:6 119:25
 122:10 128:4
**priority** 48:7,11
**privilege** 13:6,19
 13:21,24 14:6
 117:22 119:19
 120:17

**probably** 37:20
 49:23 51:6 52:12
 52:17 69:17,24
 77:20 97:24 103:9
 110:4 118:12
 122:12
**procedure** 69:19
 70:3,12,14,19 94:5
 94:9
**proceed** 94:21
 98:23
**proceeding** 10:15
 14:8 103:3
**proceedings** 126:2
 128:11
**proceeds** 108:12
 109:3
**process** 27:14,16
**produce** 87:18,25
**produced** 113:25
**producing** 90:10
**production** 88:3
 92:21
**professional** 2:10
 128:3
**promissory** 31:19
 32:15 58:10 59:4
 60:11 130:11
 131:1
**properties** 30:16
 30:19,20 69:7
**property** 16:25
 19:25 20:14,20,25
 24:19 27:16 28:7
 30:4,7 46:15
 47:20,22 48:2,7,12
 49:16 51:12,16
 53:17 82:3,8
 105:20,22 110:13
 110:17 123:25

**proposed** 83:9
**provide** 96:8
 124:9
**provided** 15:4,24
 76:19 107:3
 110:13
**provision** 25:2
 71:16
**public** 2:11 127:24
 133:25
**purchase** 17:20
 20:16,20,24 24:11
 28:6 30:3,20
 40:24 41:15 43:6
 53:11,15,17 56:8
 56:17 57:7 69:6
 82:10 105:20,21
 123:2,20 124:2
**purchased** 30:6
 41:22 122:21,22
**purchaser** 23:17
 27:20 29:12,25
 45:8 46:12 49:6
 54:7,13,18
**purpose** 25:11
 39:17 40:4 101:23
**purposes** 15:8
 18:3 60:4
**pursuant** 2:7
 10:15 16:21 86:18
 101:13 104:4
 112:9
**put** 10:6 19:5
 26:13,16 33:15
 36:2 37:3 38:15
 49:18 75:12 84:16

**q**

**question** 12:9,12
 12:13 13:4 14:21
 20:5 22:8 24:3
 31:3 42:6 50:12

 53:21 58:7 60:20
 60:21 82:15 84:5
 84:8,9,15 95:24
 119:8 121:23
**questioning** 8:23
 9:23 98:20
**questions** 10:5
 11:3,8 13:2,9
 14:18 17:14 18:5
 47:12 87:16
 124:14,21
**quick** 11:24 16:10
 86:21 89:5 99:4
**quickly** 18:6 61:20
 87:17
**quite** 33:11

**r**

**r** 3:1 4:1 5:1 6:1
 50:14 55:17 128:1
 133:1,1
**rabbi** 94:19,24
 95:2,10 96:3,9
 97:18 102:7,9
**rabbinical** 103:3
**radar** 102:25
**rados** 5:16 8:2,2
**ratto** 1:22 2:8
 128:2,24
**rd** 19:16 22:6,16
 23:15 25:25 26:7
 26:24 27:4,18
 28:3 29:8,19 42:3
 81:4 129:22 130:1
**rdd** 1:8
**read** 30:9 54:24
 57:9 60:21 68:25
 69:12,14 75:2
 81:5 82:13,15
 84:8,9 127:8
 132:3

David Feldman Worldwide
A Veritext Company

[readily - represent]

**readily** 100:17
**reading** 66:11
**reads** 20:19 70:21
  76:14
**ready** 19:2
**real** 16:10 51:7
  120:13
**realistic** 97:14
**realized** 112:22
**really** 96:15
**realty** 15:20 17:8
  31:14 32:13 35:8
  130:7
**reason** 13:7 29:22
  87:22 105:5,15
  113:6 132:5
  133:10,12,14,16
  133:18
**reasons** 133:6
**recall** 21:22 22:19
  30:6,8 33:5 35:5,9
  35:16 36:22 50:15
  50:21 51:5,24
  55:21 57:18 62:18
  63:18 65:12 68:17
  69:4 71:11,15
  74:10 75:25 76:8
  77:15 80:9,10,12
  80:20 81:10 83:22
  83:24 86:7,16
  88:11,14 91:10
  106:4,10,25
  109:19,25 113:18
  115:14,17 116:17
  116:21 119:7
  120:2 123:22,23
**recalled** 57:6
**receipt** 57:23
  76:15 132:14
**receive** 69:9
  107:20

**received** 13:19
  18:9,13,17 25:20
  26:3,9 31:15,19
  32:2 35:23 36:11
  38:7,10 41:3,7
  57:18 58:3,11,16
  60:10,25 61:5,9
  75:9 79:20 83:15
  86:12 88:9 99:23
  105:3,10 107:16
  108:12
**receiving** 53:3
  109:3
**recess** 61:13 86:24
  97:8 99:3 115:21
  115:24
**recital** 33:10
**recognize** 77:8
**recollection** 59:25
  85:25 93:23 95:23
  113:20 121:3
  124:6
**record** 8:25 10:6,8
  11:18 12:20 28:17
  29:8 30:4 33:16
  45:12 87:2 89:5
  99:5,21 100:7
  112:4 121:15
  125:5,13,21,23
  131:18
**recorded** 12:5
  29:21
**recording** 26:18
  26:22 27:3 29:24
  49:7
**records** 57:22
  88:21 90:10 92:14
  97:10 98:18 99:6
  100:10 124:7
**red** 43:25

**redacted** 99:21
  100:21,22 131:17
**redacting** 90:11
**refer** 91:6 115:25
**reference** 18:4
  55:9 56:20 118:5
**references** 70:10
  73:21,22 102:7
**referencing**
  112:14
**referred** 93:2 94:3
**referring** 84:13
**refers** 71:8
**refinance** 119:25
  123:3 124:2
**reflect** 42:22 52:5
  54:14,17 56:6
  125:22
**reflected** 44:3,9
  48:20 49:14 54:2
  56:15
**reflects** 48:22
  51:19 53:9 56:19
  56:19
**refraining** 113:9
**refresh** 59:25
  93:23 95:22
  113:19 124:5
**refreshed** 85:25
**regard** 97:17,20
  119:9 120:23
**regarding** 116:20
  119:16
**registered** 2:10
  128:3
**reimbursable** 71:5
**reis** 50:13
**reisman** 13:23
  15:21,21 17:6,11
  23:19,24 24:4
  35:4,10,14 48:2

64:24 67:19 68:7
  72:20 82:7 89:12
  93:4,11 109:18
  110:19 111:9
  112:6 119:15
  120:4,16,19,22
  121:18 122:22
  123:5
**reisman's** 89:16
  118:20 120:20
**reiss** 50:15 112:25
  113:7
**relate** 60:13
**related** 14:7,12,16
  15:6 57:23 59:7
  86:2,5 123:24
**relates** 74:19
  84:22
**relationship** 21:16
  89:16 114:5
**relative** 128:16,19
**remember** 25:15
  71:25 72:10 80:19
  89:20 94:5 95:8
  106:19 115:12
**remind** 51:20
  68:10
**removal** 110:16
**remove** 110:19
**removing** 82:6,7
**rents** 31:25 32:19
  130:15
**repaid** 84:2
**reported** 1:22
**reporter** 2:9,10
  11:25 12:17 60:22
  69:15 75:3 82:16
  84:10 125:14,18
  125:22 128:3
**represent** 7:8 17:3
  17:7 27:19 42:22

44:21 45:10 46:10
98:8 104:5,6
118:17
**represented** 20:12
27:21 29:4,25
35:16 44:25 46:13
48:6 53:12 93:9
113:17 118:19,24
119:5,10,23 120:3
120:22 122:6,25
**representing** 7:22
9:12,13 50:20
51:25 72:14 93:3
93:6,15 103:21,25
115:16 125:16
**represents** 104:10
**republic** 34:5
**request** 88:5 99:6
125:24
**required** 51:17
79:9
**requirement** 52:8
105:23 106:8
**reread** 60:20
**reserve** 14:4,24
43:25 87:6
**reserves** 42:24
44:8
**resolve** 102:10
**response** 75:6 99:5
**responsibility**
71:6
**responsive** 28:13
**rest** 45:24
**restated** 31:18,23
32:15,18 130:10
130:13
**return** 28:18 29:8
132:12
**returned** 29:11,21
29:24

**reviewed** 109:22
**reviewing** 109:17
**reviews** 18:24
26:14 39:11 58:23
61:21 81:7
**right** 11:7,25
14:25 18:6 32:8
37:5 97:10,12
98:17 110:6,12,23
112:19 119:8
122:17 123:16
**rights** 14:4 87:7
**ring** 115:9
**rings** 64:3
**riverside** 25:5
34:4,9 38:6,13,17
39:4,23,24 40:16
42:9 43:11,18,22
44:13,25 45:5
47:9,13 48:18
60:3,8 83:8,16
85:22 104:17
107:25 108:7
109:7 112:13
130:21
**road** 6:6 23:9
24:18 30:13,14
67:24 73:11,25
74:9,12 116:9
**rockland** 16:25
**role** 47:21 65:17
68:11 91:15
121:24
**room** 7:12 11:7
12:18 58:22
**rottenberg** 94:20
94:24 96:10 102:7
**route** 30:15
**rpr** 1:22 128:24
**rs** 1:7 6:3 7:22 9:4
9:6 16:17,20

17:22 19:16 20:2
20:25 21:11,19
22:5,6,13,16 23:8
23:15 24:18 25:19
25:24,25 26:6,20
26:24,24 27:4,17
27:17 28:2,2,3,16
29:4,7,7,19 37:14
41:13,17 42:2,3
54:4 67:24 68:13
69:9 72:22 73:10
73:16,22,25 74:9
74:12 81:4 87:14
101:10 114:9,12
115:6,18 116:9,9
117:14 118:25
120:5,24 125:17
129:18,21,22,25
**rsom** 15:20 17:15
34:20,21,23 35:4
67:19 68:6 73:5
103:17
**run** 16:9 122:14

**s**

**s** 3:1 4:1 5:1 6:1,16
35:20,20 50:14,14
50:14 77:7 78:6
129:7
**salamon** 6:4 7:23
9:6 21:12,13,21
22:14,25 63:22
64:11,16,18 65:5,7
77:17,20 79:8
81:23 125:17
**salamon's** 21:15
**salamonduvid**
77:19
**sale** 10:21 17:21
18:8,17 19:7,16,25
23:7,8 24:22
25:18,24 26:6,19

26:23 27:4 28:16
29:7,10,19,23
30:12 37:13 129:9
129:15,17,21,25
**salvatore** 4:9 8:6
87:12
**saw** 36:22 39:6
42:14 43:22 45:20
57:4 59:19 62:18
65:9 73:8 74:7,20
80:10 83:23,23
**saying** 14:10,14
**says** 10:23 21:11
21:18 22:13 25:3
28:8 29:8 36:10
38:14,22 41:8
43:25 47:4 54:8
54:11 55:17 60:9
66:25 68:15 69:19
70:2 72:10 73:10
73:16 78:13 94:11
94:15 103:16
104:19 107:16
108:19
**scarsdale** 6:7
**schedule** 87:6
**screwed** 82:23
**search** 98:6,7
122:14 124:7
**second** 19:11
41:23 59:6 62:4,5
81:2 97:7
**section** 20:16 21:4
24:10 40:17 46:2
56:10 69:17 72:13
**sections** 70:5
**securing** 31:4
**security** 31:25
32:19 130:15
**see** 19:8,13,18
20:17,21 33:13

34:7 40:19 41:4
42:9,10,19 43:16
43:18 55:7 57:16
66:5,19 67:16,25
68:7 70:15 71:20
73:20 74:3 75:23
76:21 78:6,16,20
78:23 79:2 80:2,7
94:9,22,23 100:23
104:18 105:4,11
107:17 108:21
112:24 116:15
117:8
**seeing** 80:12
**seen** 14:23 15:10
19:20 21:24 23:10
27:7 32:23 36:6
36:19 38:24 54:25
59:9 62:14 80:4
80:21
**seller** 23:14 41:4,7
41:10,13,14 45:8
49:2,7,13 53:8
54:10,18 60:10
83:15 107:17,19
107:23
**seller's** 53:13
**sellers** 41:11
**send** 29:13 69:9
**sending** 75:25
76:5,9
**sense** 17:18 98:20
**sent** 40:7 76:24
86:9 101:11,13
**september** 16:24
25:20 26:2,8,21,25
27:6 31:11 32:11
32:21 34:2 35:23
36:4 37:8,21,22
58:11 59:5 62:19
75:8,22 76:10,13

79:19 80:2,8,14,21
90:5 100:23 102:8
114:8 129:19,23
130:2,4,19 131:2
131:13,16
**serve** 11:10
**served** 102:5
118:5
**service** 52:3,16
**services** 50:8 52:7
52:9,15,18
**serving** 27:14
68:18 69:5 72:2
**set** 82:19 128:14
**settlement** 40:18
54:6
**sgrable** 3:9
**sharing** 49:9
**shaul** 51:22 108:2
108:9,24
**sheet** 26:19,23
27:3 56:18 132:6
132:7,10,13
**sheppe** 50:13,15
112:25 113:7
**short** 87:6
**show** 90:13 92:15
100:2 103:10
105:24 109:12
116:22,24
**showed** 80:25
**shown** 18:2 105:3
107:6 127:12
**shows** 83:18
**side** 49:5 53:14
64:11,16,18,19,25
65:13,16 81:24
82:2 93:11 115:18
**siegelbaum** 108:3
**sign** 67:19 132:7

**signatory** 63:8
**signature** 21:11
52:13 67:13,23
74:7 128:23
**signatures** 49:24
**signed** 22:14,17
23:14,16 62:12
63:12,13 109:18
121:16
**signing** 132:9
**similar** 122:13
**simon** 56:11
**simultaneous** 42:7
45:17
**simultaneously**
41:24
**sir** 119:19
**sit** 118:23
**site** 122:23
**sitting** 11:25
118:16
**size** 54:23
**skip** 57:13
**skipping** 42:17
**sl** 4:10
**smith** 122:17
**sold** 24:19 27:25
**sole** 71:5
**somebody** 8:17
75:4 108:3 115:7
**somebody's** 52:13
**sorry** 14:13 24:10
69:12 73:9 82:21
112:17
**sort** 98:12
**sorvino** 115:9,15
**sounds** 115:11
122:24
**southern** 1:2
**space** 132:5

**speak** 12:21 62:13
64:13
**speaking** 13:6
**speaks** 68:23
**specific** 63:19
**specifically** 48:21
109:19,22
**spend** 38:2
**spoke** 42:2
**ss** 127:3
**start** 8:23 102:3
**starts** 66:4 67:14
**state** 11:17 16:14
100:6 127:2 132:4
**stated** 43:10
**statement** 36:13
36:20 38:3,7,10,18
38:22 39:5,6 40:5
40:17,18 42:9
43:14,22 45:2,6
47:10,14 55:11
60:8 83:8,10,16,18
85:22 100:11
112:14 130:22,24
**statements** 38:16
39:18
**staten** 122:23
**states** 1:1 20:16
**stating** 106:5
**status** 114:12
**stenographically**
128:12
**step** 37:2
**stephen** 3:8 7:6,17
8:22 50:18 92:10
113:15
**stern** 64:5,9,15
65:2 66:4,9 77:9
79:8
**steve** 82:21

[strain - title]                                                    Page 19

| | | | |
|---|---|---|---|
| **strain** 113:4 | **suffern's** 30:2 | **talks** 12:15 21:4 | 74:16 81:16,17 |
| **street** 2:6 3:14 | **suggest** 89:23 | 103:12 112:20 | 86:21 92:11 93:22 |
| 4:15 5:13 15:19 | **suggestion** 11:11 | **tax** 48:23 49:7,8 | 97:25 113:4 117:6 |
| 17:8 31:13 32:13 | **suite** 5:13 | **td** 46:11 47:18 | 119:14 122:25 |
| 35:8 46:15 119:17 | **sum** 21:5 | 48:5 | 124:14 |
| 119:23 130:7 | **summary** 104:19 | **technically** 41:22 | **third** 11:21 24:9 |
| **strike** 24:3 28:13 | 107:11 | **telephonically** | 63:6 113:3 |
| 63:4 79:16 80:11 | **supplied** 15:12 | 5:18 6:13 | **thirds** 43:16 66:3 |
| 85:20 | **support** 10:20 | **tell** 69:2 89:8 | **thirty** 132:13 |
| **structure** 17:18 | **sure** 22:21 27:23 | 100:16 104:25 | **thomas** 5:11 8:3 |
| 74:11,14 89:20 | 29:14 32:8 37:5 | 122:16 | 68:16 75:14 |
| **subject** 127:11 | 44:18,18 51:2 | **ten** 108:23 120:8 | **thought** 66:23 |
| 132:9 | 62:17 67:8 77:10 | 121:4 | **thousands** 97:15 |
| **submitted** 117:19 | 77:18,22 80:18 | **tenant** 71:2 | 97:17,20 |
| 117:25 119:16 | 84:14 93:16,19 | **tens** 97:14,16,19 | **three** 12:15 19:5 |
| 120:16 | 99:11 100:5 114:2 | **terms** 60:25 62:4 | 26:12,17 30:12 |
| **subpoena** 10:15 | 115:19 119:24,25 | 67:2 95:19 131:7 | 32:6,23 61:25 |
| 10:22 11:10 88:4 | 121:6 122:16 | **testified** 51:18 | 74:4,5,6 110:18,25 |
| **subscribed** 127:20 | 123:6 | 88:8 91:11 | **thumb** 18:21 |
| 133:22 | **sworn** 7:2 127:20 | **testifies** 7:3 | 36:15 61:20 |
| **substances** 16:5 | 128:6 133:22 | **testify** 16:6 59:15 | **thursday** 97:4 |
| **sued** 111:20 | | 128:6 | **time** 12:16 27:24 |
| **suffern** 3:3 7:9 | **t** | **testimony** 88:6,12 | 38:2 44:4 48:5 |
| 13:22 14:6,11,15 | **t** 55:17 128:1,1 | 90:16,20 101:8,11 | 56:4 62:21 74:23 |
| 15:5,18 17:5 | 129:7 133:1 | 127:9 | 87:3,9,15 93:5 |
| 19:17 20:12 23:9 | **take** 10:25 13:12 | **thank** 7:9 11:12 | 95:14 101:21 |
| 23:25 24:5,19 | 18:20 26:12 33:25 | 21:9 37:25 39:14 | 102:20 104:11 |
| 26:7 27:5,15,18,19 | 37:2 58:21 60:17 | 45:14 48:16 70:9 | 107:7 109:25 |
| 28:4,7 29:20 30:5 | 61:11,16,19 86:21 | 70:20 73:17 74:5 | 112:11 114:7 |
| 30:13,15,17,19,25 | 89:24 90:14 92:23 | 76:19 83:2 86:23 | 124:15 125:4 |
| 31:12 32:12 33:6 | 96:11,14 98:14,25 | 87:4,9,11,15 | 128:13 |
| 34:19,24 42:3 | 99:18 110:12 | 124:13,15,17 | **timeframe** 90:6 |
| 63:7,11 64:23 | 114:3 115:21 | 125:13 | **tina** 3:19 8:11 |
| 67:18 68:21 69:7 | 124:11 125:8 | **thanks** 24:10 | **tina.ma** 3:20 |
| 70:12 72:16 81:11 | **taken** 44:2,6 48:3 | **thing** 63:2 99:14 | **tired** 13:13 |
| 81:13 82:11 89:16 | 48:10 61:13 86:24 | 104:22 | **title** 20:13 25:9,10 |
| 89:22 105:18 | 97:8 99:3 115:24 | **things** 33:16 48:23 | 25:12,13 27:23,24 |
| 111:3 118:13 | 128:11 | 98:9 | 34:6,12 42:18 |
| 121:9,17 122:2 | **takes** 42:24 | **think** 19:22 22:21 | 43:9 45:24,25 |
| 130:1,6 | **talked** 116:4 | 39:16 44:10 45:13 | 46:4 48:18,22,23 |
| | **talking** 30:5 53:16 | 53:10 62:16 74:15 | 48:24 49:4,17,22 |
| | 66:20,24 | | |

[title - want]                                                                    Page 20

52:12 53:6 54:19
**today**  9:2,18 11:2
  11:8 12:18 13:9
  16:7 19:21 74:22
  80:5 87:15,19
  90:17 92:2 101:9
  102:9 107:6
  111:10,13 118:12
  118:16,23 121:13
**told**  23:2
**tom**  28:23 75:22
  76:13,20 107:22
  115:6
**tomorrow**  96:22
  96:23 97:2,13
**top**  38:23 62:3
  67:15 68:15 75:14
  104:18
**total**  24:16 54:6
**transaction**  16:23
  17:4,19 20:8 21:7
  21:16 24:6,12,18
  25:8 27:11 28:25
  29:3,5 34:11
  35:18 37:19 40:25
  41:10 42:4 43:4
  47:23 48:5 50:9
  50:16 53:14 54:4
  54:19 55:22 57:20
  57:24 59:21 60:4
  60:15 62:20 64:12
  64:16,18 65:2,14
  68:12,19,20,22
  69:3 74:12 81:25
  82:2 86:5 89:14
  90:5 93:12 96:2
  97:21 98:4 101:10
  101:12 104:19
  105:2,19,25
  106:12,21 107:10
  108:12,15 109:6

113:11,21 114:7
  118:18 119:2,22
  120:5 122:20,24
  123:19,24
**transactions**  98:9
  100:25 118:22,25
  120:13 121:4
**transcribed**
  125:20
**transcribing**  12:2
**transcript**  127:11
  128:11 132:14,15
**transfer**  28:3
  41:25 48:23 49:8
  56:21 85:23 86:2
  90:13 108:21,23
  121:25
**transferred**  28:4
**transition**  121:20
**treff**  55:17,19,21
  55:25 59:17,19,25
  76:17,24 78:5
  79:10 86:9,11,13
  88:11 90:13
**true**  12:22 72:19
  111:7 127:10  ʳ
  128:10
**trust**  99:22 100:11
  100:15 131:19
**trustee**  4:3 8:5,8
  10:25 11:5 87:14
  117:20 124:24
  125:8,11
**trustee's**  6:16 7:25
  9:24 16:2
**truth**  128:7,7,8
**truthful**  13:14
**truthfully**  16:7
**try**  12:21 33:18,22
  98:17

**trying**  27:10 37:17
  84:19 85:10
**turn**  20:15 21:9,23
  22:10 23:13 24:8
  24:12 34:13 54:20
  67:12
**turning**  19:23 23:6
  36:9 65:22 66:13
  68:14 71:18 72:12
**two**  9:2 12:8 24:14
  41:11,21 43:16
  44:22 49:3 52:25
  54:5 58:19,25
  66:3 70:5,10 74:2
  85:2 99:7,14
  100:24,25 102:4
  108:5 110:16
  120:7 121:6
**type**  62:25
**typed**  73:21
**typing**  73:15

**u**

**u**  7:20 38:18
**u.s.**  6:16 7:25
**ultimate**  27:20
**ultimately**  28:4
**umbrella**  51:13
**underlying**  41:12
**undersigned**  81:4
**understand**  12:9
  12:11 13:15 19:24
  22:3 34:18 40:12
  41:9 46:9 81:20
  84:19 85:8,10
**understanding**
  14:5,9 27:11
  44:12 89:9 90:2
  93:14
**understood**  12:7
  12:13 56:7 64:10
  72:25 81:22

114:21
**underwriter's**
  25:16
**united**  1:1
**unsigned**  23:17
**usually**  51:15 52:6
**utility**  40:4

**v**

**various**  15:5 45:16
  51:16 114:15
**vcorp**  52:15
**venture**  65:18
**verbally**  12:4
**version**  116:15
**vi**  68:15
**violations**  49:15
**virtually**  40:10

**w**

**w**  55:18
**wait**  31:2 96:19
**waiting**  18:22
**waived**  13:23 14:7
  119:15
**waivers**  13:25
  14:24 15:3,13,15
  15:16
**waiving**  117:21
  119:18 120:17
**walk**  7:11 27:13
  40:9 46:7 55:4
  56:25
**walking**  38:2
**want**  8:25 10:3,6,8
  16:9 34:17 36:15
  37:4 40:9,11
  43:13 46:7 48:16
  55:4 60:17,19
  62:12 67:7,12
  72:13 77:11 82:17
  83:13 86:22 99:10

[want - zero]

104:8 106:24

**wantagh** 4:7

**wanted** 17:17
46:16 47:25

**wants** 117:8

**wasteful** 33:15

**water** 5:13

**watermark** 51:3

**way** 30:3 44:22
56:23 66:3 74:19
84:22 85:3,18
98:24 116:11
123:17

**we've** 83:11 85:24
100:2

**wednesday** 97:2,5

**week** 102:22,23
110:4

**weeks** 102:23

**welcome** 9:18 83:4

**went** 83:20

**whereof** 67:15

**wilson** 2:4 3:12
8:11,15

**wilsonelser.com**
3:18,20

**wire** 42:18 44:10
54:19 56:15,20,21
57:19 76:5,9,23
85:23 86:2 101:2
101:6 107:21
108:23

**wired** 43:6,7,17
44:19 45:24 59:20
60:2 76:15,17
78:5

**wish** 133:5

**witness** 23:5 57:11
60:19 67:15 75:2
86:11 97:24 98:5
124:17 127:7

129:2 132:1

**word** 65:19

**words** 110:7

**work** 13:5,16 18:5
58:4 75:19 122:12

**working** 50:15
89:12 90:6

**writes** 78:16,19,23
79:2

**writing** 78:7

**written** 74:8

**wrote** 29:16 73:11

## x

**x** 1:4,10 129:1,7

**xi01165** 2:9

## y

**y** 55:18

**yeah** 79:6

**year** 37:15

**yehuda** 6:3 7:22
9:5 21:12,20
22:14,25 65:5
81:23 125:17

**york** 1:2,13,13 2:6
2:6 3:6,6,15,15
4:7,16,16 5:6,6,14
5:14 6:7 11:22
16:14,25 99:21
131:18

**yunger** 15:23
63:13 64:24 77:23
78:19 79:7 89:11
89:25 90:7 91:4
117:24 119:9,10
123:4,12

## z

**zabicki** 5:4

**zero** 41:3

David Feldman Worldwide
A Veritext Company

Federal Rules of Civil Procedure

Rule 30

(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.