# EXHIBIT II

Civil Action No. 20-cv-08905-CS
Affirmation of David K. Fiveson, Esq.

**UNITED STATES DISTRICT COURT**
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
**SUFFERN PARTNERS, LLC,**

                              **Plaintiff,**

            v.                          20 CV 8905 (CS)

**OLD REPUBLIC NATIONAL TITLE**
**INSURANCE COMPANY,**

                              **Defendant.**
---------------------------------x
                              U.S. Courthouse
                              White Plains, N.Y.
                              January 11, 2021
                              3:00 p.m.

**Before:    HON. CATHY SEIBEL,**
            United States District Judge

APPEARANCES

**IRA S. LIPSIUS, Esq.**
**DAVID BENHAIM, Esq.**
STEVEN R. AQUINO, Esq.
**STEPHEN J. GRABLE, Esq.**
**Attorneys for Plaintiff**

**BUTLER FITZGERALD FIVESON & McCARTHY, P.C.**
**BY:  DAVID K. FIVESON, Esq.**
      JAIME N. BURKE, Esq.
**9 East 45th Street, 9th Floor**
**New York, N.Y.  10017**
**Attorneys for Defendant**

**ROBERT J. BERGSON, Esq.**
**Attorney for Hahn & Hessen, LLP**

DAVID S. WILCK, Esq.
**AMANDA RAE GRINER, Esq.**
**Attorneys for Cohen, Labarbera & Landrigan**

**Sue Ghorayeb, R.P.R., C.S.R.**
**Official Court Reporter**

1              THE COURT:  Hi, Walter.  It's me.

2              THE CLERK:  Good afternoon, Judge.  Judge, this

3    matter — excuse me.  Did Mr. Lipsius just come on?

4              MR. LIPSIUS:  Yes, this is Mr. Lipsius.

5              THE CLERK:  Mr. Lipsius, excuse me.  Okay.

6              Good afternoon, Judge.  Judge, this matter is

7    Suffern Partners, LLC v. Old Republic National Fire Insurance

8    Company.

9              We have on the line representing Plaintiff Mr. Ira

10   Lipsius and Mr. David Benhaim, Mr. Steven Acquino, and Mr.

11   Stephen Grable.

12             Representing Defendant Old Republic, we have Ms.

13   Jaime Burke and Mr. David Fiveson.

14             Representing Cross-Defendant Hahn & Hessen, we have

15   Mr. Robert Bergson on.

16             Representing Third-Party Defendant, we have Ms.

17   Amanda Griner, and Mr. David Wilck on.

18             THE COURT:  All right.  Good afternoon everyone.

19             Let me remind counsel, if you say anything, the

20   first word out of your mouth must be your last name.  We have

21   a lot of lawyers on the call.  The court reporter needs to

22   know right upfront who is speaking.  Please do not say, "this

23   is Ira Lipsius for Plaintiff," just say your last name.

24   Don't worry about sounding rude or curt or short.  You would

25   be doing me and especially the court reporter a favor.  And

1   that goes even if you think it's obvious who is speaking or

2   even if I direct a question directly to you.  Just make sure

3   whenever you open your mouth, the first word that comes out

4   of it is your last name.

5           We have a couple of issues on the table.  We have a

6   request for a TRO.  We have a request for a motion to

7   dismiss.  The first issue I have is subject matter

8   jurisdiction.

9           Looking at the Complaint, Suffern Partners, LLC

10  pleaded that its sole member is a New York corporation, but I

11  can't tell if that New York corporation was itself an LLC; in

12  which case, I have to look to the domiciles of the members of

13  the LLC, or if it is a C corporation.  So, can someone on

14  Plaintiff's side help me out.

15          Who is the member of Suffern Partners, LLC?

16          MR. GRABLE:  Yes, Grable.  Good afternoon, Your

17  Honor.  Suffern Partners' sole member is a company called

18  Goldman RX, I believe it's LLC, a limited liability company,

19  and the sole member --

20          THE COURT:  And who was --

21          MR. GRABLE:  The sole member is, is Isaac Lefkowitz,

22  who resides in New York.

23          THE COURT:  All right.  Well, I've got subject

24  matter jurisdiction.  Then, let me turn to the TRO

25  application.

1          The Complaint in this case, there's —— is a

2    mystery.  It's completely unclear to me how it can be that ——

3    no, actually, it's not the Complaint, it's the

4    counterclaim —— completely unclear to me how it can be

5    that —— if I'm understanding the pleadings correctly —— that

6    Plaintiff bought this property and there was $30 million to

7    be distributed ballpark and 15 of it went to Novartis, who

8    sold the property, and the other 15 was supposed to go to

9    these Old Mill entities, and yet somehow the buyer directed

10   the lawyer who was closing the money —— who was holding the

11   money not to give it to the sellers but to give it to

12   somebody that the buyer owed money to, and there's gotta be

13   more to the story than that.

14          I don't know that I need to understand it today,

15   because that's not the money that the Defendants are seeking

16   to tie up, but, you know, it doesn't usually work that way

17   where the seller gets to dictate where the money goes.  So, I

18   feel like there's definitely a part of the story I'm missing

19   here.

20          But the part of the story that I need to understand

21   for today seems a little simpler.  The part that has me

22   scratching my head is:  If I understand correctly, everybody

23   was in hot water with the Bankruptcy Court because this

24   transaction occurred without Bankruptcy Court permission, and

25   to settle with the Trustee, Plaintiff offered or Plaintiff

1  agreed to put in two-and-a-half million dollars into the

2  estate and the Trustee would use it to pay the creditors of

3  the estate and whatever was left would go back to Plaintiff.

4          And if I'm reading the counterclaims correctly, Old

5  Republic chipped in $2 million of that two-and-a-half

6  million, and all there was was a verbal representation that

7  it would get its fair share of whatever monies were refunded,

8  which is surprising to me, because this will be the first

9  insurance company in the history of man that put $2

10  million -- wrote a check for $2 million without, without

11  paper.

12          Is that really what happened here, Mr. Fiveson or

13  Ms. Burke?

14          MR. FIVESON:  Judge, at the time that they wired the

15  money into the IOLA account, they were pressed for time to get

16  this settled.  The wiring and the agreement occurred August

17  16th.  The stipulation of settlement was three days later.

18  But that agreement is confirmed by the cross-performance of

19  the parties subsequently, because what happened was, is:  The

20  settlement agreement says that the monies are going to be

21  returned to Suffern care of its lawyers.

22          The monies went from the Hahn & Hessen escrow

23  account into the claim refund of the Trustee and the monies

24  are being put back.  I don't know, you know, what does it

25  mean?  It's going back to Suffern care of the lawyers.  Why

1    did they prepare the agreement it's going back to Suffern?

2    But that was their agreement with the Trustee, independent of

3    Old Republic.

4            Now, after that, this fact really became an issue,

5    because after the claim refund was being refunded, it

6    occurred to both myself, Mr. Grable and Mr. Backenroth that

7    the check was not being made to Hahn & Hessen, it was being

8    made to Suffern but delivered to Hahn & Hessen.  And I have

9    e-mails and, in fact, there were — not only did I, but the

10   Hahn & Hessen firm communicated with the Trustee's counsel to

11   get that check issued to Hahn & Hessen and she refused to do

12   that.  That was the understanding.  This was not a gift.

13           THE COURT:  My question was a different one.

14           Back in August, when your client wrote the $2

15   million check, because it's the title insurer for the

16   Plaintiff, you had no agreement at that time or even

17   afterwards in writing as to what was going to happen to the

18   rest of the money; you just had a verbal assurance that when

19   the money was returned to Suffern, that you'd get your cut?

20           MR. FIVESON:  Yes.

21           THE COURT:  And then the money was returned to

22   Suffern and you haven't gotten your cut?

23           MR. FIVESON:  No.  The check was issued to Suffern.

24   It was delivered to Hahn & Hessen.  Then we had a lot of

25   discussions:  "We want our portion of the proceeds.  Suffern

1    can keep its $500,000 that it made contribution to it, give us

2    the balance."  There were discussions.  In fact, there were

3    e-mails when we had attempts to issue out an escrow agreement

4    where they acknowledge that everybody reserved their rights to

5    these monies.

6            You see, we made the contribution to settle the

7    title claim.  Once the Bankruptcy Court approved nunc pro

8    tunc the transfer from Old Mill to "RD" (Road), the title

9    claim with Suffern, the first title claim, is resolved.

10           There is no basis to give them a 1.4 million gift

11   on top of what we've already performed.  We — the client has

12   retained counsel.  We got the title cured.  They get their

13   500 back, we get the balance; that was the understanding and

14   there's no question about it.  I mean, there are e-mails, and

15   I will subpoena the Trustee's counsel, Holly Holecek.  There

16   were discussions both not only with my firm but with Mr.

17   Backenroth to get that check issued to Hahn & Hessen's IOLA

18   account, she refused to do that.  And there were multiple

19   discussions and multiple e-mails leading up to this, and we

20   were trying to get it resolved and then they just delivered

21   the check to Suffern.

22           And, initially, in fact, Mr. Lefkowitz said in an

23   October 6th email that's annexed to the Maria Filippelli

24   affidavit, Exhibit D, he says, "We undertake to refund Old

25   Republic's monies after we are certain we have no claims

Sue Ghorayeb,  Official Court Reporter

1   against them."  That's, that's Suffern.

2            THE COURT:  Right, but then Suffern sued you.  So

3   now they think they have a claim against you.  So then --

4            MR. FIVESON:  Well, as set forth in my memorandum of

5   law, they have no right to offset a claim against a liquidated

6   claim.  These are my monies.  If they have an unliquidated

7   claim, they can't offset an unliquidated claim against a

8   liquidated claim.  And --

9            THE COURT:  You may be right about that, but what

10  you're asking for today, as far as I can tell, doesn't have

11  anything to do with Hahn & Hessen; it has to do with the party

12  that's holding this money --

13            MR. FIVESON:  Correct.

14            THE COURT:  -- which is Suffern, and you want me to

15  order them to give it to you now.

16            MR. FIVESON:  No.  I want them restrained from

17  dissipating it.  I'm not asking that they turn it over now,

18  Judge.

19            THE COURT:  Right, right.

20            MR. FIVESON:  And the reason is --

21            THE COURT:  You're right.

22            MR. FIVESON:  -- Your Honor, if you look at Mr.

23  Lefkowitz's email of October 6th, the status was, "I got your

24  money.  I'm going to hold it to make sure we have no other

25  claims."  When they filed their Answer on December 28th, they

Sue Ghorayeb,  Official Court Reporter

1    changed their position.  Now they're claiming it's their

2    money, and that's why we're making this motion to restrain the

3    dissipation of the monies.

4              I'm not asking you for you to adjudicate my

5    entitlement to those monies at this time.  I want to preserve

6    the status quo, because I claim I have a constructive trust

7    over those monies, which I have placed through an escrow fund

8    and which they acknowledge — Mr. Lefkowitz acknowledged that

9    he's holding.  And if —

10             THE COURT:  Can you — can you remind me, because

11   there was a lot of paper here, the Answer that was filed in

12   December that made you nervous, what litigation is that?

13             MR. FIVESON:  That's in this action.  It was a

14   response to my counterclaims.

15             THE COURT:  That there is — there's no damage to

16   your counterclaim.  Okay.  All right.

17             MR. FIVESON:  You know, that all of the sudden we're

18   getting a different set of circumstances, Your Honor.  Now

19   they claim they own it.

20             THE COURT:  Well, you know, it's just an Answer.

21   It's an Answer.  I mean, we all know what lawyers do when they

22   answer.  They throw in everything they can think of, including

23   the kitchen sink.  It doesn't necessarily mean much at all.

24             MR. FIVESON:  But Your Honor —

25             THE COURT:  If lawyers were held to what they said

10

1  in their Answers, there will be a lot of Rule 11 problems,

2  because people just –– they throw in whatever they can think

3  of.

4           MR. FIVESON:  But, Your Honor, the basis for their

5  motion ––

6           THE COURT:  Is it actually the Plaintiff's position

7  now that it gets to keep this 1.4 million?

8           MR. GRABLE:  Your Honor, these conversations have

9  been very clear and there have been a number of them with Mr.

10  Fiveson on behalf of Old Republic and Mr. Lefkowitz's email is

11  very clear.  When Suffern Partners is certain that it has no

12  viable claims against Old Republic, meaning this litigation is

13  concluded, if those monies are owed back, rather than Old

14  Republic owing us in excess of $30 million, those funds will

15  be returned.

16           MR. FIVESON:  Judge, the basis of their motion to

17  dismiss, the letter that they filed today, the reason why

18  Messrs. Grable and Backenroth and Hahn & Hessen feel they're

19  out of this case is because they claim the order approving the

20  settlement is res judicata, binds us, and therefore Suffern is

21  entitled to the monies.  They can't have it both ways.

22           THE COURT:  I think the letter that was filed today

23  was by Hahn & Hessen, not by Suffern.

24           MR. FIVESON:  Yeah, but the basis is that –– the

25  basis, Your Honor, is that that settlement entitles Suffern to

1    the monies, that they were entitled to the monies, and

2    therefore we have no possessory interest in the monies, and

3    therefore these Defendants committed no conversion or breach

4    of fiduciary duty.  They're taking alternate positions.

5            THE COURT:  Yes, they are, but they just said — and

6    I'm not saying they're right.  But what they just said is

7    consistent with what, you know, the gentleman's email that you

8    quote said all along, which is, "yeah, we're holding on to it

9    because we think you owe us more than that, but we acknowledge

10   that if you don't, then this money — if you don't owe us

11   anything, then this is your money."

12           Look, the — here is what I think based on what

13   I've seen in the papers and heard so far.  The claim that Old

14   Republic has against Suffern for this money is a constructive

15   trust claim.  There's also a claim for conversion, but that

16   is a legal remedy.  See, for example, Starr International v.

17   American International Group, 623 F.Supp.2d 497, at 501

18   (Second Circuit 2009), and, therefore, under Grupo Mexicano,

19   527 U.S. 308, at 333, not an appropriate basis for a

20   preliminary injunction, because I can't issue a PI preventing

21   the disposal of assets pending adjudication of a claim for

22   money damages.

23           So, the constructive trust, you know, is arguably

24   an equitable claim.  It's apparently a matter of some debate

25   whether a constructive trust is a cause of action at all as

1    opposed to a remedy.  See Shaw v. Empire Stock Transfer, 381

2    F.Supp.3d 286, at 292 (Southern District 2019).  But assuming

3    for the sake of argument that it's a cause of action, there

4    are four elements:  A confidential or fiduciary relationship;

5    a promise, express or implied; a transfer of the subject res

6    made in reliance on the promise, and unjust enrichment.  In

7    Re First Central Financial, 377 F.3d 209, at 212.

8            Here, Defendant has not even alleged a confidential

9    or fiduciary relationship between itself and the Plaintiff,

10   let alone established one, and, therefore, isn't likely to

11   prevail on the merits of its constructive trust claim.  There

12   might be some argument that the insurer has a fiduciary duty

13   to the insured but not the other way around, but even, again,

14   even if you plead such a relationship.  See DLJ Mortgage

15   Capital v. Kontogiannis, 594 F.Supp.2d 308, at 329 (Eastern

16   District 2009), which denied a PI in a constructive trust

17   claim where the plaintiff had not pleaded the existence of

18   confidential or fiduciary relationship with any of the

19   defendants against whom it asserted the constructive trust

20   claim.

21           You know, it could be that there might have been a

22   fiduciary relationship with Hahn & Hessen while it was

23   holding the money, but it doesn't have the money anymore, and

24   I don't see how Defendant and Suffern are in a confidential

25   or fiduciary relationship.  Also, Defendant is unlikely to

1    succeed on that issue as it alleged the absence of an

2    adequate remedy at law.  See Anwar v. Fairfield Greenwich,

3    826 F.Supp.2d 578, at 594 (Southern District 2011), and

4    Bytemark v. Xerox, 342 F.Supp.3d 496, at 512 (Southern

5    District 2018).  It is possible that could be fixed by better

6    pleading.  I don't know.  And, further, I don't see a strong

7    argument for irreparable harm.  I understand it might cost

8    them a little more harm, but there is a big difference

9    between that and being insolvent.  So, I'm not going to sign

10   the TRO.  We can talk about a briefing schedule for the PI.

11            I also have Hahn & Hessen's motion for — motion

12   letter for a motion to dismiss it would like to make.  Off

13   the top, they're right that procedurally the Defendant didn't

14   go about this the right way.  You can't assert a counter —

15   as I remember from civil procedure, if you want to sue the

16   party that's suing you, that's a counterclaim.  If you want

17   to sue a co-defendant, that's a cross-claim.  If you want to

18   sue somebody who is not in the case at all, you gotta bring a

19   third-party claim.

20            MR. FIVESON:  Fiveson.

21            THE COURT:  Yes.

22            MR. FIVESON:  Your Honor, may I just respectfully

23   respond.  First, if I can do it sequentially, on the issue of

24   fiduciary duty, the constructive trust claim is you need

25   reliance on a fiduciary duty.

1                    THE COURT:  I've ruled on the TRO on your papers.

2            You know, I didn't say you didn't have reliance.  I

3   said you didn't have a confidential or a fiduciary

4   relationship.  But, you know, I'm moving on.

5                    MR. FIVESON:  With respect to the joinder of

6   parties, I'm looking at Rule 20, and Rule 20 allows me to

7   add — may join to one action the defendant, and I'm looking

8   at Rule 20(b) — (a).  It doesn't require me to get a court

9   order.

10                   THE COURT:  I didn't say you need a court order.

11                   MR. FIVESON:  And —

12                   THE COURT:  I just said it's not a counterclaim if

13  the party you're suing isn't a party.

14                   MR. FIVESON:  It's a cross-claim.  My claim against

15  Hahn & Hessen, Grable and Backenroth is a cross-claim.

16  They're co-defendants.

17                   THE COURT:  But they weren't — they're not

18  co-defendants.

19                   MR. FIVESON:  Well, I contend that Rule 20 allows me

20  to add —

21                   THE COURT:  If Suffern had sued them, then they'll

22  be co-defendants.  Has Suffern sued them?

23                   MR. FIVESON:  No, Suffern did not sue them, but I

24  contend that Rule 20 — 20(a), 20 Subsection (2)(a) allows me

25  to add them, because my claim against them is connected in the

1    same series of transactions, occurrences as Suffern's claim is

2    against me, and Rule 20 does not require me to obtain a court

3    order to add them as a co-defendant.

4            THE COURT:  I'm not, I'm not saying they can't be in

5    this case and I'm not saying you need a court order to add

6    them.  I'm just saying that they wouldn't be plaintiffs, they

7    would be third-party defendants.

8            MR. FIVESON:  Well, if I may — if I may, Your

9    Honor, the reason why they're not third-party defendants is

10   because I'm not seeking indemnity contribution.  I'm not

11   claiming that they're liable to me if Suffern succeeds on its

12   claims.  Suffern's claims against me are an alleged failure to

13   pay their second title claim.  If Suffern succeeds on that

14   claim, I don't claim that Bakenroth, Hahn & Hessen and Grable

15   owe me money to indemnify me for that claim.  The claim

16   against these Defendants is independent of the claim of

17   Suffern against Old Republic, but it arises out of the same

18   series of transactions, and that's why they are not,

19   respectfully, a third-party defendant.  They're co-defendants

20   on cross-claims.

21           THE COURT:  Well, this is a Gordian knot of a civil

22   procedure problem.  I'm not going to rule on it off-the-top of

23   my head, but I have to say I've never seen — I've never seen

24   anything like this, put it that way.

25           You know, Rule 20(a) says:  "Persons may join in

1    one action as plaintiff if they assert any right to relief
2    jointly or there is a common question of law and fact common
3    to all plaintiffs."  That's not what you're relying on.
4              You're relying on the part that says:  "Persons can
5    be joined in one action as defendants if a right to relief is
6    asserted against them jointly, severally, or in the
7    alternative."  And, you know, maybe you're right, maybe that
8    means you can join them as counterclaim defendants, but I
9    don't think you can do it just by changing the caption
10   yourself.  You know, I've just never — I've never seen
11   anything like this.  Maybe you're right.  Obviously, the
12   parties are going to brief it.
13             I'm guessing that Hahn & Hessen isn't the only — I
14   don't know what to call them — counterclaim defendant,
15   cross-claim defendant, third-party defendant, whatever you
16   want to call them, who is going to want to move to dismiss.
17             MR. LIPSIUS:  Your Honor, we have a letter prepared
18   that I just haven't gotten a chance to personally look over
19   also requesting a briefing schedule on a similar basis.  You
20   are correct that Hahn & Hessen are not the only one.
21             THE COURT:  This is what I always do.  And, you
22   know, Old Republic hasn't asked to move to dismiss, but — and
23   maybe they want to as well.  I don't know.
24             What I always do before I entertain a motion to
25   dismiss is allow the parties making a claim to amend because

1    I don't want to have to grant a motion to dismiss, then grant

2    leave to amend, and then have to deal with another motion to

3    dismiss.  So, I certainly would do that here, and then we can

4    set a motion schedule.  Old Republic can make a motion for PI

5    and there can be a cross-motion to dismiss, that's probably

6    the most efficient way to proceed, but I'm open to other

7    suggestions.

8              MR. WILCK:  Your Honor, this is Wilck.  We represent

9    Thomas Landrigan.  We also intend to move to dismiss the

10   claims by Old Republic, and we will be bringing a cross-claim

11   as well.

12             THE COURT:  Maybe you can help me out here.

13             If I'm understanding the claim against your client,

14   Old Republic is saying that it paid $30 million for the

15   property.  Your client had it.  At the seller's direction, it

16   gave a chunk of it to Novartis, and at Suffern's direction,

17   it gave a chunk of it to this party from whom Suffern had

18   borrowed money?

19             I mean, it just doesn't -- you know, unless Mr.

20   Landrigan is a huge crook, that doesn't sound like it could

21   be right.

22             MR. WILCK:  We just got -- we just got retained and

23   we're reviewing the files, which is why we're going --

24   we're -- I didn't submit any motion yet.  But the claim

25   against -- by Old Republic can't exist against Landrigan in

1    any event.  It's a claim against their policy.  Landrigan is

2    not a party to the policy.  So, irrespective of what role he

3    played — and we'll get to the bottom of that — the reality

4    is that he can't be sued.

5              Old Republic is being sued under — for a

6    declaration of its policy coverage on a certain amount of

7    claims, Landrigan is not a party to that, and they didn't pay

8    anything, so they can't be subrogated for Suffern's rights,

9    so that claim can't exist against Landrigan in any event.

10             THE COURT:  Mr. Fiveson, is it your client's

11   contention that Mr. Landrigan took a chunk of money that

12   should have gone to the sellers and gave it to the buyer's

13   creditor?

14             MR. FIVESON:  Yes.  In fact, it was Suffern who got

15   the wire instructions that implemented this transaction, and,

16   yes, Mr. Landrigan is a crook, and he took $15 million and

17   change that should have went to "RD," the seller, and he is

18   the attorney for the seller, and he paid off Treff & Lowy,

19   which was Suffern's short-term loan which was put up just to

20   put in capital so the lender would lend the funds.

21             MR. WILCK:  I will just —

22             MR. FIVESON:  And the reason why — I'm sorry.

23             MR. WILCK:  You just need to be careful pursuant to

24   Rule 11 for claiming or asserting that someone being a crook.

25             MR. FIVESON:  I'm just adopting the Judge's

1  characterization.

2          MR. WILCK:  No.  She — with all due respect, the

3  Judge — it's not fair.

4          THE COURT:  The record will reflect what the Judge

5  said.  The record will reflect what I said.  I said, unless he

6  is a huge crook, this doesn't make sense.  I didn't say he was

7  a huge crook.

8          MR. FIVESON:  Okay.  Okay.  Judge, that's exactly

9  what happened here.  The documents make it very clear, and the

10  reason why there is a third-party claim against Landrigan is

11  because Old Republic issued a policy on, you know, at let's

12  say 12:00 o'clock a.m., a $30 million policy insuring

13  Suffern's title and leaves the closing, and then Landrigan —

14  the money is in escrow in Riverside Abstract, and Landrigan

15  gets the money, receives it on behalf of the seller, and then

16  he diverts the money around and we're now involved in this

17  litigation.

18          MR. WILCK:  Depends on your policy whether it covers

19  it or it doesn't.  If it's fraud and he's a crook, then your

20  policy potentially doesn't cover it.

21          MR. FIVESON:  It's your position.

22          MR. WILCK:  It has nothing to do — you have no

23  claim against him.

24          THE COURT:  And, Mr. Fiveson, what is your theory

25  as to why Mr. Landrigan would rip off his own clients at the

20

1    behest of Suffern Partners?

2              MR. FIVESON:  Because Suffern are very shady people,

3    they are not honorable people.  They've engaged in multiple

4    frauds.  This transaction was without Bankruptcy Court

5    approval, which they orchestrated, and Mr. Landrigan was part

6    of it.  In fact, I was reading —

7              MR. WILCK:  Is he part of your contract?

8              Was Landrigan — does he owe a fiduciary obligation

9    to Old Republic?

10             Is he a party of the agreement or is the agreement

11   between Old Republic and Suffern?

12             So, I don't understand the basis for the claim

13   against him.

14             THE COURT:  All right.  We're not, we're not

15   debating that now.  I'm just trying to understand the theory.

16   You'll make your motion to dismiss, and if you're right,

17   you'll win.

18             I'm just trying to — I don't know, you know, but

19   I'm just trying to understand why a lawyer who is

20   representing clients on the other side of a transaction, even

21   if the people on the other side are shady, why he would, you

22   know, risk his life and liberty to take $15 million from his

23   client and give it to somebody else, but I guess I'll stay

24   tuned.

25             Here is what I think should happen.  Anybody who

21

1    wants to make a motion should submit a pre-motion letter

2    stating the general grounds so that the opposing parties can

3    amend knowing, generally speaking, what the grounds are,

4    because, as I said, I don't want to have to grant a motion to

5    dismiss, then grant leave to amend, then have to deal with it

6    again.

7                   So, let's say, anybody who wants to move to

8    dismiss, send the pre-motion letter in — let's keep it

9    fairly tight — why don't we say by the 22nd.  And then Mr.

10   Fiveson can amend after that knowing what the arguments are

11   going to be.  Would you be able to do that within three

12   weeks?

13                  MR. FIVESON:  Yes.  Yes.

14                  THE COURT:  All right.  So that would be February

15   12th.  And, then, 30 days for the motion.  That will take us

16   to — oh, actually, let me back up.

17                  I was going to — I had proposed that Old Republic

18   make its motion for a PI and the opposing parties' motion to

19   dismiss or —

20                  MR. FIVESON:  Your Honor, respectfully, we have a

21   motion for preliminary injunction.  This was just for the TRO.

22   But the motion, that request today is ancillary for a PI.  So

23   there is a motion.

24                  THE COURT:  Well —

25                  MR. FIVESON:  We just don't have a return date.

1              THE COURT:   I'm giving you the opportunity, after

2     you amend, if you want to move again, you know, supplement or

3     whatever, your papers is fine.  If you don't —

4              MR. FIVESON:  Thank you.

5              THE COURT:  Or let's do it this way.  February 12th

6     is going to be the Amended Complaint.

7              The motion for the PI, if you're going to

8     supplement it — and, really, I don't mean supplement.  I

9     mean make a new one, even if it's mostly the same.  Why don't

10    we say — let's see, three weeks from that will be March 5th,

11    either, either a new motion or you can just tell me you're

12    resting on the previous one.

13             And, then, opposition and cross-motion, 30 days

14    after that would be April 5th.

15             And reply and opposition — let's see, we're really

16    getting now into the spring — would be May 5th, and then

17    reply let's say May 19th.

18             Let me give you these dates again:

19             Pre-motion letters by January 22nd.

20             Amended Complaint by February 12th.

21             Either a new motion for a PI or an indication that

22    Old Republic is going to rest on its previous one by March

23    5th.  Then opposition to the PI motion and cross-motions to

24    dismiss April 5th.

25             Reply on the PI motion and opposition to the motion

1    to dismiss May 5th.  Reply on the motion to dismiss May 19th.

2         Let me offer you the option of bundling the motion

3    papers, by which I mean you serve each other, but you don't

4    file anything on the ECF system until the date the reply is

5    due.  I offer this option because it allows me to be more

6    generous with extensions should one side or the other or both

7    need them.  The reason for that relates to the six months

8    list, which requires me to confess my sins every six months

9    and tell the world if I've had any motions sitting around for

10   more than six months.  I like to be able to truthfully say

11   that I don't.

12        The six months starts to run from when the motion

13   is filed.  So, if you file the motion and then one side or

14   the other runs into trouble and you need extra time, I'm

15   going to be reasonable, but I may not be generous because

16   it's coming out of my six months.

17        If you agree to bundle and then one side or the

18   other or both needs extra time, I'm probably going to give

19   you whatever you want, because it's not coming out of my six

20   months.  But I don't require bundling.  Only if all parties

21   like the idea should you do it.  And if you do need to write

22   me and say, "I need extra time for my papers," and the

23   parties have agreed to bundle, make sure you put that in the

24   letter so I know to be not merely reasonable but generous

25   with extra time.

1           All right.  I gather there is no point in trying to
2    resolve all this.  I mean, do we — Mr. Wilck just got in the
3    case.  It seems to me like his client is kind of the key
4    here.
5           So, maybe, Mr. Wilck, when you're more up to speed
6    and, you know, you have some explanation for what your client
7    did with the money, maybe there's something that can be
8    worked out.  But right now, while the theory is, he's a —
9    he's a thief in cahoots with the Plaintiff, it doesn't sound
10   like there's going to be a business solution here.  But
11   should the parties get to the point where they do want to
12   talk about resolving it either with a court mediator or with
13   a Magistrate Judge, I'm happy to make that happen.
14          Is there anything else we should do this afternoon?
15          MR. GRABLE:  Your Honor, thank you.  I just want to
16   correct one item, and I apologize.  Goldman RX is actually a
17   New York corporation, not an LLC.  I just wanted to correct
18   the record.  It does not affect the subject matter
19   jurisdiction, the hard work that you did this afternoon, so
20   thank you, but I did want that to be clear for all the
21   parties.
22          THE COURT:  Okay.  So, Goldman RX is the sole member
23   of Plaintiff and that's a New York corporation.
24          MR. GRABLE:  Correct, Your Honor.  Correct, Your
25   Honor.

Sue Ghorayeb,  Official Court Reporter

1              THE COURT:  Okay.  All right.  Well, sometimes I

2      like it when I don't have subject matter jurisdiction, but,

3      look, I can only do so much about that.

4              All right.  Everybody stay healthy and I will look

5      for your papers, and if there's any possibility of working

6      this out, I'm happy to facilitate it, so let me know.

7      Otherwise, I will get to these motions as soon as I can.

8      Thank you all.

9              MR. FIVESON:  Thank you.

10             MR. LIPSIUS:  Thank you.

11             MR. GRABLE:  Thank you.

12             MR. WILCK:  Thank you, Judge.

13             (Case adjourned)

14

15

16

17

18

19

20

21

22

23

24

25